## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE HARRINGTON, On Behalf of<br>Herself and All Others Similarly Situated,<br><br>    Plaintiff<br><br>vs.<br><br>BAYSTATE MEDICAL CENTER,<br>BAYSTATE HEALTH SYSTEM, INC.,<br>AMERICAN HOSPITAL ASSOCIATION, and<br>JOHN DOES 1 THROUGH 10.<br><br>    Defendants. | Civil Action No.: _____<br><br>COMPLAINT-CLASS ACTION |

**04 11663 RCL**

MAGISTRATE JUDGE _____

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

### COMPLAINT
### (JURY TRIAL DEMANDED)

### I.    INTRODUCTION

1.    Defendants Baystate Medical Center and Baystate Health System, Inc. ("the Baystate Health Defendants") have operated free from federal and state taxes because they promised the government that they would operate as a charity provider of health care for the uninsured and that they would not engage in business "directly or indirectly, for the benefit of private interests." In reality, the Baystate Health Defendants do just the opposite: they charge their uninsured patients significantly more than those who have means, generally pursuing the poor or uninsured relentlessly by aggressive and humiliating collection techniques, and through physicians whose for-profit businesses are favored and subsidized by the "tax-free" organization, are rampantly violating the federal and state prohibition against profiteering by "private interests."

2.    The Baystate Health Defendants have inflated charges for patients without insurance for the purpose of boosting subsidies received from federal and state governments.

Higher charges for the uninsured have led to higher reimbursements to the Baystate Health Defendants from the federal and state governments.

3.    At the expense of uninsured patients, the Defendants have been "gaming" the system to inappropriately maximize payments under federal and state medical funding programs.

4.    The Baystate Health Defendants' conduct is an unconscionable, discriminating, misleading, and deceptive creation and collection of inflated debts from uninsured patients.

5.    The Baystate Health Defendants and their "nonprofit" confederates across the country who employ the same business model have thereby amassed and hoarded billions of dollars in cash and marketable securities, which otherwise should be available to provide charity care to those who were contemplated by the tax exemption. Moreover, enormous property and revenues have been isolated from taxation, the effect of which has bestowed upon the Baystate Health Defendants and their confederates greater liquidity than that possessed by most state and local governments. This Complaint asks the Court to certify a Class of the intended beneficiaries of the Baystate Health Defendants' commitment to the government, more fully defined below, and to require the Baystate Health Defendants to honor the commitments for which it received its unique freedom from taxation.

6.    The Baystate Health Defendants, a Massachusetts based healthcare provider, tell their patients that they operate a charitable hospital system on a nonprofit basis and that all excess profits are reinvested into patients. Despite these representations and their tax exempt status as not-for-profit charitable institutions, collectively, the Baystate Defendants and the affiliates they own and operate have reported net assets in excess of a quarter of a billion dollars. The Baystate Health Defendants operate one of the most "profitable" hospitals in Massachusetts, with net assets of hundreds of millions of dollars. In particular, Baystate Medical Center, where

the Plaintiff received medical care, reported net assets of $204,622,334.00 on its Form 990 for the fiscal year ending on September 30, 2002. These profits were accumulated because the Baystate Health Defendants have enjoyed tax exemptions as "nonprofit" charitable institutions, while charging their patients anything but charitable rates.

7.    Despite their surplus revenues and substantial federal, state, and local tax exemptions, the Baystate Health Defendants have engaged in the pattern and practice of charging inordinate and inflated rates for medical care to the Plaintiff and the Class, who are uninsured Baystate Health patients. The Baystate Health Defendants charge the Plaintiff and the Class significantly more for medical services than they charge their insured patients or patients covered by Medicare or Medicaid for the same services. They also utilize aggressive, abusive and humiliating collection practices to recover these inflated medical debts from the Plaintiff and the Class.

8.    Such charging and collection practices violate the Baystate Health Defendants' agreements with the United States Government, the State of Massachusetts, and local governments to provide mutually affordable medical care to the Plaintiff and the Class in return for substantial federal, state and local tax exemptions. Moreover, the Baystate Health Defendants have breached their duty of good faith and fair dealing toward the Plaintiff and the Class. The Baystate Health Defendants' abusive, discriminatory and unfair conduct toward the Plaintiff and the Class is also in violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, the Fair Debt Collection Practices Act and the Constitution of the United States. The Baystate Health Defendants have been unjustly enriched at the Plaintiff's and Class' expense, warranting the imposition of a constructive trust on its wrongfully obtained tax savings, assets, and profits.

-3-

## II.  UNINSURANCE IN MASSACHUSETTS

9.     Uninsurance is a prevalent problem for many citizens in Massachusetts. About 530,000 Massachusetts residents do not have health insurance. This is about 10 percent of Massachusetts's population.

10.    For most uninsured Massachusetts residents, at least one person in the family works either full-time or part-time. Many have family members who work full-time all year.

11.    Because the Medicare program provides health insurance for most people age 65 and over, the uninsured are almost entirely under the age of 65. The largest number of uninsured are those aged 30-49, but the rate of uninsurance is highest for young adults, aged 19-29.

12.    The uninsured are disproportionately racial and ethnic minorities.

13.    Employer-based coverage is often unavailable or unaffordable. Uninsured people who have jobs may face one or more of the following barriers:

- Smaller employers are less likely to offer health insurance to their employees, because premiums are prohibitively expensive.

- Service and labor jobs are less likely to provide workers with health insurance.

- Part-time workers are often not eligible for insurance.

- Even when employers offer health insurance to low-wage workers, the premiums tend to be higher than for higher-paid workers. Low-wage workers have a harder time affording these premiums, and are more likely to remain uninsured.

14.    People who lose their jobs often lose their health insurance.

15.    Some workers who lose their jobs may be eligible to keep their health insurance through COBRA. To obtain COBRA coverage, workers must pay the entire cost of the premium. Premiums are expensive, and newly unemployed workers have generally had their incomes dramatically reduced.

16.    Buying coverage in the private individual market is often prohibitively expensive. In 2002, a typical standard individual health insurance policy in Massachusetts cost $3,529 per year for a healthy 25-year-old woman and $6,836 per year for a healthy 55-year-old woman. A healthy single woman with earnings equal to the poverty level of $8,980 per year would have to spend about 40 to 80 percent of her entire income on health insurance to buy such a policy.

17.    People with any sort of health problem or risk factor, from hay fever to HIV, must pay significantly more for private insurance, or may not be able to obtain insurance at all.

18.    The health care safety net leaves many people uncovered, especially adults. Many low-income people, especially adults, cannot qualify for health insurance through safety net programs like Medicaid. More than 80 percent of all uninsured adults nationwide with incomes below 200 percent of the federal poverty level are ineligible for Medicaid and other public health insurance programs.

### III.    PARTIES

19.    Plaintiff Ms. Diane Harrington is an adult resident citizen of Suffolk County, Massachusetts, residing in Boston.

20.    Defendants Baystate Medical Center and Baystate Health System, Inc. are Massachusetts not-for-profit corporations with their principal place of business in Springfield, Massachusetts. Defendant Baystate Medical Center may be served at its registered address: 759 Chestnut St., Springfield, MA 01107. Defendant Baystate Health System, Inc. may be served with process at its registered address: 759 Chestnut St., Springfield, MA 01199. The Baystate Health Defendants are subject to the jurisdiction and venue of this Court.

21.    Defendant American Hospital Association ("AHA") is the national trade association for the nonprofit hospital industry. The AHA may be served with the Summons and

-5-

Complaint through its registered agent who is James A. Henderson, 1 North Franklin Street, Suite 2700, Chicago, Illinois 60606-3470.

22.    The various Defendants, designated John Does 1 through 10, are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include but are not limited to agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-conspirators, joint adventures, partners, stockholders, and any other person or entitled of the named Defendants and/or any other persons who may be liable to the Plaintiff for the claims asserted herein.

## IV.    JURISDICTION AND VENUE

23.    This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1331 and 1367, because Plaintiff's claims arise out of a federal contract between the Baystate Health Defendants and the United States Government in which the Baystate Health Defendants agreed to provide mutually affordable medical care to its uninsured patients in exchange for a tax exempt status under 26 U.S.C. §501(c)(3). This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. § 1983, the Fifth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution. This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. §1395 dd because the Baystate Health Defendants failed to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such emergency medical care. This Court also has subject matter jurisdiction of the controversy under 15 U.S.C. §1692a(5). This Court further has subject matter jurisdiction of this controversy under 28 U.S.C. §1340 because

Plaintiff's claims arise out of the Baystate Health Defendants' duties and obligations under 26 U.S.C. §501(c)(3).

24.    Venue in this district is proper pursuant to 28 U.S.C. §1391(b). All of the parties reside in the District of Massachusetts and all of the Plaintiffs reside in the Eastern Division of the District of Massachusetts.

V.    <u>FACTS</u>

25.    The Baystate Health Defendants represent themselves as a Massachusetts based, tax-exempt, charitable, nonprofit hospital system.

26.    Baystate Health System is the largest healthcare provider in western Massachusetts. The Baystate Health Defendants control the highest market share of medical care in western Massachusetts.

27.    The Baystate Health Defendants operate one of the most financially lucrative hospitals in Massachusetts. For example, in their Form 990s the Baystate Health Defendants together reported net assets, including cash, securities, and property, of hundreds of millions of dollars.

28.    The Baystate Health Defendants entered into express and/or implied Agreements with the United States Government, the State of Massachusetts, and local governments to provide mutually affordable medical care to all of its patients in return for substantial tax exemptions. An express and/or implied contractual relationship was thereby created between the Baystate Health Defendants and the United States Government, the State of Massachusetts, and local governments to accomplish such purpose. The Baystate Health Defendants' uninsured patients were the express and/or implied intended third party beneficiaries of such Agreements.

-7-

29.    The Baystate Health Defendants have applied for and received a federal income tax exemption as a purported "charitable" institution under 26 U.S.C. §501(c)(3).  Under §501(c)(3), the Baystate Health Defendants are required to operate "exclusively" in furtherance of a charitable purpose, with no part of its operations attributable directly or indirectly to any noncharitable commercial purpose.  By accepting this favorable tax exemption, the Baystate Health Defendants explicitly and/or implicitly agreed: to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its patients; to charge its uninsured patients only a reasonable cost for medical care; not to charge its uninsured patients the highest and full undiscounted cost for medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

30.    The Baystate Health Defendants have applied for and received state and local income, property and sales tax exemptions from the State of Massachusetts and local governments.  By accepting these favorable state and local tax exemptions, the Baystate Health Defendants explicitly and/or implicitly agreed: to provide mutually affordable medical care to all of its patients; to charge its uninsured patients only a reasonable cost for medical care; not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

31.    Despite their favorable tax exempt status and their substantial net revenues and asset reserves in the hundreds of millions of dollars, the Baystate Health Defendants have breached their Agreements with the United States Government, the State of Massachusetts, and local governments by: failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care; charging its uninsured patients the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services; and by engaging in aggressive efforts to collect such medical debt from its uninsured patients through abusive, harassing, and humiliating collection lawsuits, liens, and garnishments.  The Baystate Health Defendants' uninsured patients have therefore not received the benefit of the Agreements between the Baystate Health Defendants and the United States Government, the State of Massachusetts, and local governments.  These uninsured patients primarily consist of the working class who do not qualify for Medicaid but cannot afford private health insurance and/or cannot obtain health insurance coverage through their employers.

32.    The Baystate Health Defendants set their charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service.  While the Baystate Health Defendants give private insurance companies and governmental third party payors like Medicare and Medicaid discounts off this gross or "sticker price," their uninsured patients are charged 100% of the full sticker price, or at least substantially more than the Medicare rates.

33.    The Baystate Health Defendants offer substantial discounts for noncharitable private insurers.  These discounts violate 26 U.S.C. §501(c)(3)'s prohibition against operating directly or indirectly for non-charitable commercial purposes.

34.    The Baystate Health Defendants realize substantial revenues from this discriminatory charging practice.

35.    Despite sizeable net revenues and its asset reserves in the hundreds of millions of dollars, the Baystate Health Defendants provide insufficient charity care to their uninsured patients. The Baystate Health Defendants' level of charity care constitutes only a small percentage of its gross charges.

36.    Before the Baystate Health Defendants admit any patient, including their uninsured patients, into their hospitals and/or emergency rooms for emergency medical care, they require their patients to sign a form contract promising to pay the Baystate Health Defendants in full for unspecified and undocumented charges for medical care that are set by the Baystate Health Defendants in their sole discretion. The Baystate Health Defendants will not admit a patient into their emergency rooms for emergency medical care unless that patient agrees to pay the Baystate Health Defendants in full for such unspecified and undiscounted charges.

37.    Not only do the Baystate Health Defendants charge their uninsured patients the highest rates for medical care, which they cannot afford to pay, they have also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts, such as collection lawsuits, liens, and garnishments. Such lawsuits have driven many Baystate Health patients to bankruptcy and/or financial ruin.

38.    While the Baystate Health Defendants charge their uninsured patients inflated amounts for medical care, upon information and belief, they provide substantial discounts off the gross charges to entities owned, controlled or connected to their Board of Directors. These discounts violate the Baystate Health Defendants' obligations under 26 U.S.C. §501(c)(3).

-10-

39.    The Baystate Health Defendants also allows numerous outside for-profit physician groups and service providers to use its tax-exempt hospital to derive a profit. These for-profit physician groups and service providers practice in Baystate Health's taxpayer subsidized hospital and then bill patients for work done at this tax-exempt hospital. These for-profit physician groups and service providers are non-charitable entities which do not have a charitable mission or purpose. By allowing noncharitable for-profit entities with no charitable mission to derive a profit from its charitable tax-exempt hospital, the Baystate Health Defendants have not operated actually and exclusively for charitable purposes in violation of its obligations under 26 U.S.C. §501(c)(3), which specifically prohibits charitable tax-exempt property to be used for noncharitable purposes.

40.    The Defendant AHA is the national trade association for the nonprofit hospital industry, and serves as the representative for the Baystate Health Defendants and its nonprofit hospital members. According to its website, the AHA "ensures that members' perspectives and needs are heard and addressed in national health policy development, legislative and regulatory debates, and judicial matters."

41.    The Defendant AHA, the self-proclaimed representative of the Baystate Health Defendants and the nonprofit hospital industry, provides substantial assistance and guidance to the Baystate Health Defendants and the nonprofit hospital industry on their billing and collection practices for uninsured patients. The AHA has conspired with and aided and abetted the Baystate Health Defendants with their billing and collection practices described above.

42.    AHA, through internal memos called "white papers" and other publications, provides substantial assistance and guidance to the Baystate Health Defendants and the nonprofit hospital industry on its billing and collection practices for uninsured patients. For example, on

-11-

December 17, 2003, the AHA sent out a "white paper" entitled "Federal Regulations Hamper Hospitals' Efforts to Assist Patients of Limited Means" to the Baystate Health Defendants, which advised such hospitals that the Medicare laws and regulations prevented them from offering discounts to uninsured patients and required them to aggressively collect medical debt from the uninsured through collection lawsuits, liens, and garnishments. In these publications, the AHA encourages the Baystate Health Defendants and its nonprofit hospital members to inflate its chargemaster prices. These inflated chargemaster prices applied by the Baystate Health Defendants only to uninsured patients have the intended effect of increasing the amount of subsidies that the Baystate Health Defendants receive from state and federal governments.

43.    The AHA actively conceals and misrepresents from the government and regulatory agencies the amount of charity care provided by the Baystate Health Defendants to the uninsured. According to a June 21, 2004, article in <u>Modern Healthcare</u> entitled "Well Kept Secret," "the AHA collects charity care data [from its members] in its annual hospital survey but does not report the total. Instead, it reports uncompensated care which includes bad debt as well as charity care."

## VI.    **PLAINTIFF**

44.    In approximately April of 2002, Ms. Harrington traveled from New Jersey to Massachusetts to visit her ailing mother. At the time, Ms. Harrington worked as a temporary employee and had no health insurance coverage through work. She could not afford a private health insurance policy.

45.    She was seen at Baystate Medical Center for traumatic injuries she suffered during a fall during her visit to Massachusetts. As a condition of her treatment, forms were

-12-

required to be signed upon admission which guaranteed payment of unspecified and undiscounted medical charges.

46.    After her discharge, the Baystate Medical Defendants sent her numerous collection notices and repeatedly called her home in an attempt to collect over three thousand dollars in medical bills. The Baystate Medical Defendants charged Ms. Harrington full undiscounted rates which significantly exceeded the rates charged for insured patients or patients with insurance, Medicaid or Medicare coverage.

47.    The Baystate Medical Defendants threatened to sue Ms. Harrington for her medical debt. In January of 2002, the Baystate Medical Defendants obtained a judgment against Ms. Harrington for her inflated medical debt in the amount of $2,983.00.

48.    Ms. Harrington moved to Massachusetts in 2002 to be closer to family members, around the time of her mother's death in July of 2002. She has been a resident of Massachusetts since that time.

49.    Ms. Harrington is currently unemployed and lives with her adult daughters.

50.    She was never offered financial assistance by the Baystate Health Defendants.

51.    The Defendants' actions and inactions have caused economic damages to Plaintiff and the Class.

## VII.    CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all persons who received any form of healthcare treatment from the Baystate Health Defendants and who were uninsured at the time of treatment.

53.    Excluded from the Class are Defendants, Defendants' officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

54.    Plaintiff is a member of the Class she seeks to represent.

55.    The Class consists of thousands of individuals and therefore is so numerous that joinder is impracticable.

56.    Plaintiff's claims are typical of the claims of the Class because she and all of the Class sustained damages as a result of the Baystate Health Defendants' unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

57.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)    whether the Baystate Health Defendants entered into express and/or implied Agreements with the United States Government, the State of Massachusetts, and local governments that in return for substantial tax exemptions, they would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to seek to collect outstanding medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(b)    whether the Baystate Health Defendants breached said Agreements with the U.S. Government, State of Massachusetts, and local governments by: failing to operate exclusively for charitable purposes; failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiff and the Class; and by seeking to collect outstanding medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(c)    whether the Plaintiff and the Class are express and/or implied intended third party beneficiaries to said Agreements between the Baystate Health

-14-

Defendants and the United States Government, the State of Massachusetts, and local governments;

(d)    whether the Baystate Health Defendants charged the Plaintiff and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax-exempt status;

(e)    whether the Baystate Health Defendants charged the Plaintiff and the Class higher amounts for medical care than their insured patients in violation of its charitable, nonprofit, tax-exempt status;

(f)    whether the Baystate Health Defendants profited by charging the Plaintiff and the Class the highest rates for medical care;

(g)    whether the Baystate Health Defendants billed the Plaintiff and the Class unreasonable charges for medical care;

(h)    whether the Baystate Health Defendants failed to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(i)    whether the Baystate Health Defendants conditioned emergency room medical screening and/or treatment to the Plaintiff and the Class on their ability to pay or financial guarantees to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(j)    whether the Baystate Health Defendants should have utilized their sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiff and the Class pursuant to its charitable, nonprofit, tax-exempt status;

(k)    whether the Baystate Health Defendants have utilized aggressive, unfair, abusive, and harassing collection practices, lawsuits, liens, and garnishments to collect medical payments from the Plaintiff and the Class in violation of their charitable, nonprofit, tax-exempt status;

(l)    whether the Baystate Health Defendants violated the anti-inurement provision under 26 U.S.C. §501 (c)(3);

(m)    whether the Baystate Health Defendants failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entities to derive a profit from its use of its tax-exempt hospitals in violation of 26 U.S.C. §501(c)(3);

(n)    whether the Baystate Health Defendants breached their duty of good faith and fair dealing to the Plaintiff and the Class;

-15-

(o)    whether a charitable trust was created for the benefit of the Plaintiff and the Class;

(p)    whether the Baystate Health Defendants' actions as alleged in the Complaint violated the Massachusetts Regulation of Business Practice and Consumer Protection Act;

(q)    whether the Baystate Health Defendants have been unjustly enriched at the Plaintiff's and the Class' expense;

(r)    whether the AHA conspired with the Baystate Health Defendants to breach their contracts with the United States government, State of Massachusetts, and local governments;

(s)    whether the AHA aided and abetted the Baystate Health Defendants in breaching their contracts with the United States government, the State of Massachusetts, and local governments;

(t)    whether the AHA also aided and abetted the Baystate Health Defendants' violations of the Massachusetts Regulation of Business Practice and Consumer Protection Act and the Baystate Health Defendants' breach of its duty of good faith and fair dealing toward the Plaintiff and the Class;

(u)    whether the AHA aided and abetted the Baystate Health Defendants' violations of 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and the Fifth Amendment of the United States Constitution;

(v)    whether the Baystate Health Defendants, either directly or through their Collection Agencies, have utilized false, misleading or deceptive practices to create and collect inflated medical charges from Plaintiff and the Class in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.;

(w)    whether the Baystate Health Defendants acted under color of state law and are liable to Plaintiff under 42 U.S.C. § 1983 for violations of their constitutional rights under the Fourteenth Amendment of the United States Constitution;

(x)    whether the Baystate Health Defendants acted under color of federal law and are liable to Plaintiff for violating their constitutional rights under the Fifth Amendment of the United States Constitution;

(y)    whether the Baystate Health Defendants should be enjoined from continuing their unfair, discriminatory, deceptive and abusive conduct; and

(z)    whether Defendants are liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

58.    All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

59.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff has retained competent and experienced counsel in complex class actions, and mass tort and products liability litigation.  Counsel is committed to the vigorous prosecution of this action.

60.    The prosecution of separate actions by the Plaintiff and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

61.    A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.

62.    The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights.  In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

63.    Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

64.    Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, the Baystate Health Defendants have acted and/or refused to act on

-17-

grounds generally applicable to the Plaintiff and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## VIII.  CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

65.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

66. The Baystate Health Defendants, as purported charitable entities under 26 U.S.C. §501(c)(3), entered into an express and/or implied Agreement with the United States Government pursuant to 26 U.S.C. §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

67.    The Baystate Health Defendants, as a purported institution of public charity, also entered into express and/or implied Agreements with the State of Massachusetts and local governments that in return for substantial state income, property, and sales tax exemptions valued in the millions of dollars, they would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; not pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive,

-18-

abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

68.     The Plaintiff and the Class are the express and/or implied intended third party beneficiaries of the Baystate Health Defendants' Agreements with the United States Government, the State of Massachusetts, and local governments.

69.     The Baystate Health Defendants breached the above-mentioned Agreements with the United States Government, the State of Massachusetts, and local governments by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class more than its insured patients for the same medical services; failing to use its net assets and revenues in the billions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals. As a result of such conduct, the Plaintiff and the Class have not received the benefit of the Baystate Health Defendants' Agreements with the United States Government, the State of Massachusetts, and local governments.  Such conduct is also contrary to the Baystate Health Defendants' purported charitable purpose and its nonprofit status.

## COUNT TWO
### BREACH OF CONTRACT

70.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

71.    Alternatively, upon admission, the Plaintiff and the Class entered into express form contracts with the Baystate Health Defendants whereby the Plaintiff and the Class were required to agree to pay unspecified and undocumented charges for medical care set by the Baystate Health Defendants in their sole discretion. Imputed in these contracts is the express and/or implied contractual obligation by the Baystate Health Defendants that they would charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care.

72.    Similarly, by accepting and admitting the Plaintiff and the Class into their hospital for medical care, the Baystate Health Defendants undertook an express and/or implied contractual obligation to charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care services.

73.    The Baystate Health Defendants breached their contractual obligations under these form contracts by charging the Plaintiff and the Class inflated rates for medical care. These charges are unfair, unreasonable, and bear no relation to the actual cost of providing such services. The abovementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT THREE
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

74.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

75.    The Baystate Health Defendants' conduct as alleged above also constitutes a breach of its duty of good faith and fair dealing.

76.    The Plaintiff and the Class are express and/or implied intended third party beneficiaries of Agreements between the United States Government, the State of Massachusetts

-20-