and local governments wherein the Baystate Health Defendants agreed to provide mutually affordable medical care to the Plaintiff and the Class in return for substantial federal, state, and local tax exemptions.

77.     Alternatively, the Plaintiff and the Class entered into an express and/or implied contractual relationship with the Baystate Health Defendants wherein the Plaintiff and each Class member was admitted to the facilities of the Baystate Health Defendants for the purpose of receiving medical care.

78.     The Baystate Health Defendants breached their duty of good faith and fair dealing to the Plaintiff and the Class by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class a higher amount for medical services than they charged their insured patients or their Medicare patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiff and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

79.     Such unfair and bad faith conduct by the Baystate Health Defendants proximately caused economic injury and other damages to the Plaintiff and the Class.

## COUNT FOUR
### BREACH OF CHARITABLE TRUST

80.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

81.     By accepting federal, state and local tax exemptions under 26 U.S.C. §501(c)(3) and state laws, the Baystate Health Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients.

82.     The Plaintiff and the Class are the intended beneficiaries of this charitable trust created by virtue of the Baystate Health Defendants' acceptance of federal, state and local tax exemptions.

83.     The Baystate Health Defendants have breached its charitable trust obligations to the Plaintiff and the Class by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class significantly more than their insured patients for the same medical services; failing to use their net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospital.  As a result of such conduct, the Plaintiff and the Class have not received the benefit of the charitable trust created for their benefit.

84.     The aforementioned breaches of charitable trust have caused the Plaintiff and the Class economic injury and other damages.

## COUNT FIVE
## Massachusetts Regulation of Business Practice and Consumer Protection Act

85.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

86.    The Massachusetts Regulation of Business Practice and Consumer Protection Act, G. L. c. 93A, §1 et al. was enacted to prohibit and protect Massachusetts citizens from deceptive, fraudulent and unfair conduct.

87.    The Massachusetts Regulation of Business Practice and Consumer Protection Act, G. L. c. 93A, §1 et al., is a statute of broad impact and basic policy, which is to ensure the equitable relationship between consumers and businesses.  Hospitals and health systems fall within the scope of this statute.

88.    As alleged above, the Baystate Health Defendants' conduct in charging the Plaintiff and the Class the inflated rates for medical care and its charging the Plaintiff and the Class a higher amount than its insured patients for the same medical services, despite its charitable, nonprofit, tax exempt status, is in violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive.  Such conduct is against public policy and has caused substantial economic injury to the Plaintiff and the Class.  The Baystate Health Defendants have willfully engaged in the trade practice knowing it to be deceptive.

89.    Moreover, as alleged above, the Baystate Health Defendants' aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive.  Such conduct is also against public policy and has caused substantial economic injury to the Plaintiff and the Class, including but not limited to bankruptcy and/or financial ruin.

-23-

90.    The abovementioned violations of the Massachusetts Regulation of Business Practice and Consumer Protection Act have caused the Plaintiff and the Class economic injury and other damages.

**COUNT SIX**
**VIOLATIONS OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT**

91.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

92.    Under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395 dd, a "participating hospital" must provide a medical screening examination to any individual that comes into its emergency room for an "emergency medical condition" in order to determine whether such emergency medical condition exists. If such an "emergency medical condition" does in fact exist, the "participating hospital" must provide sufficient medical examination and/or treatment necessary to stabilize the condition. The express intent of the EMTALA is to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status.

93.    The Baystate Health Defendants are a "participating hospital" as defined in 42 U.S.C. §1395 cc and §1395 dd.

94.    Before the Baystate Health Defendants would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiff and the Class, they first analyzed their ability to pay for such medical care and required the Plaintiff and the Class to sign form contracts agreeing to pay the Baystate Health Defendants in full for unspecified and undiscounted medical charges. The Baystate Health Defendants would not provide emergency medical screening and/or treatment to the Plaintiff and Class unless they

-24-

were able to pay for such medical care or until they agreed to sign a form contract guaranteeing

payment in full for sum medical care.  By conditioning medical screening and/or treatment for

"emergency medical conditions" on the Plaintiff's and the Class' ability to pay and financial

guarantees, and refusing to provide emergency medical screening and/or treatment until such

guarantees were given, the Baystate Health Defendants violated the EMTALA, 42 U.S.C. §1395

dd.  Such conduct in failing to provide emergency room medical care to the Plaintiff and the

Class without regard to their ability to pay for such medical care is also in violation of 26 U.S.C.

§501(c)(30).

95.    Such violations of 42 U.S.C. §1395 dd have proximately caused the Plaintiff and

the Class economic injury and other damages.

**COUNT SEVEN**
**UNJUST ENRICHMENT/CONSTRUCTIVE TRUST**

96.    Plaintiff hereby incorporates and adopts by reference each and every allegation

set forth in paragraphs 1 through 64 of this Complaint.

97.    The Baystate Health Defendants have been unjustly enriched at the Plaintiff's and

the Class' expense.  As alleged above, the Baystate Health Defendants have failed to provide

mutually affordable medical care to the Plaintiff and the Class despite receiving millions of

dollars in federal, state, and local tax exemptions for such purpose.  Moreover, contrary to its

charitable, nonprofit, tax exempt status, the Baystate Health Defendants have failed to utilize its

substantial net assets and revenues, valued in the hundreds of millions of dollars, to provide

mutually affordable medical care to the Plaintiff and the Class.  The Baystate Health Defendants

have also realized profits in the millions of dollars by charging the Plaintiff and the Class the

-25-

highest and full undiscounted cost for medical care and by charging the Plaintiff and the Class a higher amount for medical care than their insured patients.

98.     The Plaintiff and the Class have suffered severe economic injury and other damages as a proximate consequence of the Baystate Health Defendants' unjust enrichment.

99.     As a result of the Baystate Health Defendants' breach of contract along with their wrongful, unfair, discriminatory, abusive, and noncharitable conduct, they are in possession of tax savings, profits and other assets that they in good conscience and equity should not be entitled to retain.  The Plaintiff and the Class are therefore entitled to all damages resulting from the Baystate Health Defendants' unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of the Baystate Health Defendants' federal, state and local tax exemption savings.  The Plaintiff and the Class are also entitled to the imposition of a constructive trust on all profits the Baystate Health Defendants wrongfully obtained by charging the Plaintiff and the Class the highest and full undiscounted cost of medical care.  The Plaintiff and the Class are further entitled to the imposition of a constructive trust on the difference between the amount the Baystate Health Defendants have charged the Plaintiff and the Class and the amount they have charged their insured patients.  Lastly, the Plaintiff and the Class are entitled to the imposition of a constructive trust on the Baystate Health Defendants' net assets and revenues in an amount sufficient to provide to the Plaintiff and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

## COUNT EIGHT
## INJUNCTIVE/DECLARATORY RELIEF

100.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

-26-

101.   As a result of the Baystate Health Defendants' wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiff and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

102.   Accordingly, Plaintiff and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, in accordance with FRCP 23(b)(2), ordering the Baystate Health Defendants to cease and desist: charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiff and the Class.

103.   Plaintiff and the Class also seek a protective Order from the Court, in accordance with FRCP 26(b)(2), requiring the Baystate Health Defendants: to provide mutually affordable medical care to the Plaintiff and the Class; to charge the Plaintiff and the Class no more for medical services than they charge their insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiff and the Class until they have complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiff and the Class through a graduated payment plan or other means.

## COUNT NINE
## CIVIL CONSPIRACY/CONCERT OF ACTION

104.   Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

105.   The AHA advised the Baystate Health Defendants and other nonprofit hospital members on its billing and collection practices concerning the uninsured through various internal

-27-

memos and/or "white papers." In these internal memos, such as the December 17, 2003, memo entitled "Federal Regulations Hamper Hospitals Efforts to Assist Patients of Limited Means," the AHA advised the Baystate Health Defendants and its member nonprofit hospitals that they were prevented from providing discounts to the Plaintiff and the Class and were required to subject Plaintiff and the Class to abusive collection practices. The AHA, through these internal memos, conspired and acted in concert with the Baystate Health Defendants to charge the Plaintiff and the Class the highest undiscounted inflated cost for medical care and aggressively collect such inflated medical debt through abusive lawsuits, liens and garnishments.

106.    The AHA also falsely justifies to the public and governmental entities the reasoning for the outrageous billing and collection practices employed by the Baystate Health Defendants. In a December 16, 2003, letter to the United States Department of Health and Human Services Secretary Tommy Thompson, the AHA, while admitting that the Baystate Health Defendants and other nonprofit hospital members of the AHA charge their uninsured patients the full price for medical care, falsely represented to the Secretary that the Baystate Health Defendants and other member nonprofit hospitals were required by federal and state laws to charge and aggressively collect such grossly inflated medical expenses.

107.    On February 19, 2004, Secretary Thompson exposed the falsity of the AHA's representations, stating that the Medicare regulations have never required nonprofit hospitals to charge their uninsured patients inflated prices for medical care nor prevented such hospitals from offering discounts to its uninsured patients. Moreover, on June 24, 2004, in testimony before the House of Representatives Energy and Commerce Subcommittee on Oversight and Investigations, the Director of the Center for Medicare and Medicaid Services testified that Medicare billing requirements did not prevent discounting medical care to uninsured patients and did not require

-28-

aggressive collection efforts toward the uninsured. Similar testimony was provided by the Chief

Counsel of the Office of Inspector General of the Department of Health and Human Services,

who testified that the federal regulations were clear and that there was no justification for

interpreting such regulations as preventing discounts to the uninsured.

108.    Moreover, the AHA  actively conspired and acted in concert with the Baystate

Health Defendants to wrongfully retain its tax exempt status and breach the Baystate Health

Defendants' contracts with the United States Government, State of Massachusetts, and other

local governmental bodies, the Plaintiff and the Class by: advising the Baystate Health

Defendants that they charge and collect undiscounted rates for medical care from the Plaintiff

and the Class; falsely representing to Secretary Thompson that the Baystate Health Defendants

were required to charge and collect undiscounted rates for medical care from the Plaintiff and the

Class; and concealing and misrepresenting the true amount of charity care the Baystate Health

Defendants provided to the Plaintiff and the Class.

109.    Through such acts, the AHA also conspired and acted in concert with the Baystate

Health Defendants to violate the Massachusetts Regulation of Business Practice and Consumer

Protection Act and to breach the Baystate Health Defendants' duty of good faith and fair dealing

to the Plaintiff and the Class.

110.    Such advice, assistance, false justification, concealments and misrepresentations

have allowed and enabled the Baystate Health Defendants to: fail to provide emergency room

medical care to the Plaintiff and the Class without regard for their ability to pay for such medical

care; charge the Plaintiff and the Class the highest and full undiscounted cost of medical care;

fail to provide mutually affordable medical care to the Plaintiff and the Class; charge the Plaintiff

and the Class substantially more than its insured patients for the same medical services; fail to

-29-

use its net assets and reserves in the hundreds of millions of dollars to provide mutually affordable health care to the Plaintiff and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class.

111.    Such acts of conspiracy and concert in action by the AHA have proximately caused the Baystate Health Defendants to be unjustly enriched at the Plaintiff's and Class' expense and have also proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT TEN
### AIDING AND ABETTING

112.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

113.    The AHA, through its internal memos and other advisory assistance, aided and abetted the Baystate Health Defendants in charging the Plaintiff and the Class inflated rates for medical care and in seeking to collect such grossly inflated medical debt from the Plaintiff and the Class through abusive collection lawsuits, liens and garnishments.

114.    The AHA aided and abetted the Baystate Health Defendants' breach of its tax exempt contracts with the United States Government, State of Massachusetts, other local governmental bodies, the Plaintiff and the Class by advising the Baystate Health Defendants that federal regulations prevented it from providing discounts to the Plaintiff and the Class and required it to aggressively collect such grossly inflated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments.

-30-

115.    The AHA also aided and abetted the Baystate Health Defendants' breaches of contract by falsely justifying and representing to Secretary Thompson and other government entities that the Medicare regulations prevented the Baystate Health Defendants from providing discounts to the Plaintiff and the Class and required the Baystate Health Defendants to aggressively collect such grossly inflated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments.

116.    The AHA further aided and abetted the Baystate Health Defendants' breaches of contract by falsely representing and concealing the true cost of charity care provided by the Baystate Health Defendants to the Plaintiff and the Class.

117.    Through these acts, the AHA also aided and abetted the Baystate Health Defendants' violations of the Massachusetts Regulation of Business Practice and Consumer Protection Act and the Baystate Health Defendants' breach of its duty of good faith and fair dealing toward the Plaintiff and the Class.

118.    The AHA also aided and abetted the Baystate Health Defendants' violations of the Fair Debt Collections Practices Act.

119.    The AHA also aided and abetted the Baystate Health Defendants' violations of 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and the Fifth Amendment of the United States Constitution.

120.    Such substantial assistance by the AHA allowed and enabled the Baystate Health Defendants to: fail to provide emergency room medical care to the Plaintiff and the Class without regard for their ability to pay for such medical care; charge the Plaintiff and the Class inflated rates for medical care; fail to provide mutually affordable medical care to the Plaintiff and the Class; charge the Plaintiff and the Class substantially more than its insured patients for

-31-

the same medical services; fail to use its net assets and revenues in the hundreds of millions of dollars to provide mutually affordable health care to the Plaintiff and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class.

121.    The AHA's substantial assistance has proximately caused the Baystate Health Defendants to be unjustly enriched at the Plaintiff's and Class' expense and has also proximately caused the Plaintiff and the Class economic injury and other damages.

**COUNT ELEVEN**
**VIOLATIONS OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

122.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

123.    Plaintiff and the Class were and are pursued for debts allegedly owed to the Baystate Health Defendants. Such debts are covered by 15 U.S.C. §1692a(5).

124.    Under the Fair Debt Collection Practices Act, a "debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt."

125.    The Defendants have conspired with and directed their collection agents and debt collectors which have committed violations of the Fair Debt Collections Practices Act. Defendants are liable for their creation of unconscionable inflated debts and the actions of their collection agents who Defendants directed to collect such deceptive debts.

126.    The Baystate Health Defendants have required uninsured patients to guarantee payment of unspecified charges as a condition of treatment. The Baystate Health Defendants then charged inflated, excessive, and discriminatory rates to uninsured patients and aggressively

-32-

attempted to collect such rates despite the Defendants' obligations as "nonprofit" and "charitable" institutions.

127.    At the expense of uninsured patients, the Baystate Health Defendants have overcharged uninsured patients to distort the amount of charity care they provide to their uninsured patients. The Baystate Health Defendants report the amount of charity care they provided as the amount of gross charges[1] (i.e., the sticker price) – which are greatly inflated – rather than the cost of actually providing the service. By charging inflated rates for "charity" care, the Baystate Health Defendants are able to receive larger state and federal subsidies.

128.    The Baystate Health Defendants have inflated charges for patients without insurance for the purpose of boosting subsidies received from federal and state governments. Higher charges for the uninsured have led to higher reimbursements to the Baystate Health Defendants from the federal and state governments.

129.    At the expense of uninsured patients, the Baystate Health Defendants have been "gaming" the system to inappropriately maximize payments under federal and state medical funding programs.

130.    The Baystate Health Defendants' conduct is an unconscionable, discriminating, misleading, and deceptive creation and collection of inflated debts from uninsured patients.

131.    Through their actions and inactions, the Defendants have violated the Fair Debt Collections Practices Act. Plaintiff and the Class have suffered damages as a result of the Baystate Health Defendants' violative collection practices.

---

[1] Gross charges represent the hospital's "list price" for products and services and are a key variable in determining actual reimbursement from a number of payers, including Medicare, Medicaid, HMO, contractual agreements and Worker Compensation programs.

-33-

COUNT TWELVE
## VIOLATIONS OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT AND VIOLATIONS OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

133.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

134.    As voluntary participants in the Medicaid program, participating hospitals such as the Baystate Health Defendants are obligated to comply with the requirements of the Medicaid Act and corresponding regulations. Medicaid is a cooperative federal and state program designed to finance health care services for the indigent. It was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* ("Medicaid Act"), and is administered in Massachusetts by the Department of Community Health, *see* O.C.G.A. § 49-4-142(a).

135.    As voluntary participants in the Medicare program, participating hospitals such as the Baystate Health Defendants are required to comply with Medicare's laws and regulations.

136.    Medicare and Medicaid provide billions of dollars in funding for "uncompensated" care. The primary source of funding for "uncompensated" care is government dollars. The projected federal, state and local spending available to pay for the care of the uninsured in 2004 is 34.6 billion dollars.

137.    Disportionate Share Hospital (DSH) payments are payments in the Medicaid and Medicare programs that, along with local tax appropriations, help hospitals finance care to low-income and uninsured patients.

138.    Medicare DSH payments total billions of dollars annually.

139.    Hospitals qualify for Medicare DSH based on their "disproportionate share patient percentage," which is a proxy for how much care hospitals provide to low-income patients.

-34-

140.    Medicaid DSH payments also total billions of dollars annually.  Medicaid DSH payments grew out of federal legislation in 1981 that required state Medicaid agencies to make allowances when determining reimbursement rates for hospitals that serve a disproportionate number of Medicaid or low-income patients.

141.    The purpose of the federal Disproportionate Share Hospital (DSH) Program and related state funding and distribution programs is to provide compensation to qualifying hospitals for services provided without charge or for a reduced charge to medically indigent patients.

142.    In addition to enjoying the benefits of federal, state and local tax exempt status, the Baystate Health Defendants have received charity care subsidies from the State of Massachusetts.

143.    Under Medicare and Medicaid federal and state programs, the Baystate Health Defendants claim that federal and state laws compelled them to charge inflated undiscounted rates for uninsured patients.

144.    For example, the AHA's publication "Federal Regulations Hamper Hospitals' Efforts to Assist Patients of Limited Means" contains the following statements blaming federal and state legal requirements for the Baystate Health Defendants' and other nonprofit hospitals' practice of overcharging patients without insurance.

- The difficulties created by the Medicare billing rules are related to the practical requirement that each hospital maintain a uniform charge structure that applies to all patients.  In other words, each patient must be charged the same amount for identical services.  Such uniformity remains crucial to determining payments for some hospitals, such as critical access hospitals, and also to the submission of accurate cost reports for all hospitals.

- [F]ederal and state antikickback laws also contribute to the regulatory confusion. Those laws prohibit hospitals from offering inducements to patients.

-35-

- [H]ospitals must levy uniform charges for all patients to ensure compliance with Medicare cost report requirements.

- Because of the Medicare rules described above and the lengths to which CMS has gone to enforce the rules, hospitals continue to believe that the Medicare cost reporting rules require them, in practice, to develop and maintain uniform charges for all patients.

- State and federal antikickback laws also create incentives for hospitals to aggressively seek repayment from uninsured patients of limited means.

145.    The Baystate Health Defendants claim that they charged uninsured patients the rates which are allegedly required by federal and state statutes and regulations.

146.    In determining the rates charged to uninsured patients, the Baystate Health Defendants have allegedly acted pursuant to contracts with the federal and state governments.

147.    The Baystate Health Defendants have acted under color of federal and state law and deprived Plaintiff of rights secured by the Constitution and laws of the United States.

148.    The constitutional deprivations committed by the Baystate Health Defendants resulted from the exercise of rights allegedly based in federal and state authority.

149.    The Baystate Health Defendants extensively rely upon government assistance and benefits.  The Defendants implement the federal and state government functions embodied in the Medicare and Medicaid programs and other government programs addressing public access to essential medical care.

150.    The Baystate Health Defendants have overcharged uninsured patients and collected or attempted to collect such overcharges with the assistance of state procedures and laws.  The Baystate Health Defendants have used and abused state law and procedures to enforce their discriminating charging system against their uninsured patients.

151.    The Baystate Health Defendants' billing and collection practices with uninsured patients have a disparate impact on racial minorities who are disproportionately represented among the uninsured population.

152.    The Baystate Health Defendants' conduct has violated 42 U.S.C. § 1983 and the constitutional rights of the Plaintiff and the Class under the Fourteenth Amendment of the United States Constitution.

153.    The Baystate Health Defendants' conduct has also violated the constitutional rights of the Plaintiff and the Class under the Fifth Amendment of the United States Constitution. The equal protection component of the Fifth Amendment confers on the Plaintiff and the Class federal constitutional rights. Under color of federal law, the Baystate Health Defendants have violated those rights through their discriminatory excessive overcharges for uninsured patients.

154.    Under color of federal and state law, the Baystate Health Defendants' conduct has violated the Plaintiff's and Class' constitutional rights to equal protection of the laws and caused economic injuries to the Plaintiff and the Class.

155.    Based on alleged federal and state law requirements, the Baystate Health Defendants have overcharged uninsured patients and then used state collection laws to obtain judgments and garnish patients' wages or seize bank accounts.

156.    The Baystate Health Defendants have used federal and state laws and regulations for improper motives and purposes described in this Complaint.

157.    The Baystate Health Defendants have engaged in invidious discrimination against uninsured patients. The Baystate Health Defendants have directly or indirectly placed obstacles in the way of citizens trying to obtain health care. Charging uninsureds considerably more for their health care than insured patients results in a demoralizing relative barrier for obtaining care.

-37-

Uninsureds who have gone to the hospital for treatment only to face inflated disparate charges and endure subsequent harassing collections efforts, judgments, and property liens are discouraged from returning to hospitals for needed care. Even uninsureds who have never gone to such hospitals but who are aware of the exorbitant bills associated with medical care are discouraged from obtaining reasonable care in the first place.

158.    The end result of uninsured status, discriminatory price gouging, and aggressive collection efforts are well-documented. A recent National Academy of Science's Institute of Medicine Report, entitled Coverage Matters: Insurance and Health Care (2001), details how uninsured patients obtain less medical care, have higher rates of infant mortality, and die at earlier ages. Placing pricing obstacles in between uninsureds and necessary medical care jeopardizes the fundamental values of life, liberty and property. Even for those who never pay their bills, life and liberty are impinged by the barriers to healthcare erected by the disparate hospital billing practices.

159.    Charging the uninsured multiple times what insured patients and Medicare patients are charged is arbitrary and bears no relationship to the actual cost of such care. The pricing scheme does not further a legitimate "government interest."

160.    Furthermore, aside from not promoting a legitimate government interest, the widely disparate pricing system actually serves to frustrate government goals. Specifically, when viewed in context, the disparate pricing scheme is antithetical to the government interest of promoting health and increasing access to medical care. Government funding – through Medicare, Medicaid, Disproportionate Share Hospital reimbursements and tax exemptions – is aimed at improving societal health generally and, in particular, encouraging access for indigent and uninsured patients.

-38-

161.    By overcharging uninsured, fewer uninsured patients are able to pay their bills and more of them become dissuaded (directly and indirectly) by their hospitals from seeking further care.

162.    Study after study has shown that uninsurance and the associated medical care avoidance undermines public health, preventative medicine, and the control of both acute and chronic diseases. The inarguable result is the spread of communicable diseases and the unchecked progression of chronic ones. The end points are premature death, unnecessary suffering, and, when a particular uninsured becomes poor enough or disabled enough to qualify for Medicaid or old enough to qualify for Medicare, a greatly inflated cost to society at large.

163.    The Baystate Health Defendants' violations of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Fifth Amendment of the U.S. Constitution have caused economic injuries to the Plaintiff and the Class.

## IX.    DAMAGES

164.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 163 of this Complaint.

165.    As a direct and proximate result of the Baystate Health Defendants' breaches of contracts, breaches of duty of good faith and fair dealing, violations of the Massachusetts Regulation of Business Practice and Consumer Protection Act, violations of EMTALA, breaches of charitable trust, unjust enrichment, violations of the Fair Debt Collections Practice Act, violations of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, and violations of the Fifth Amendment of the United States Constitution, the Plaintiff and the Class have suffered economic injury and damages.

-39-

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that upon a trial of this action, judgment will be entered against the Defendants for:

1)     all economic, monetary, actual, consequential, and compensatory damages caused by the Defendants' conduct;

2)     a constructive trust to be imposed on:  the Baystate Health Defendants' federal, state and local tax exempt savings; the Baystate Health Defendants' profits obtained from charging the Plaintiff and the Class the highest and full undiscounted cost for medical care; and the Baystate Health Defendant's net assets and revenues in an amount sufficient to provide the Plaintiff and the class mutually affordable medical care; and

3)     injunctive and/or declaratory relief.
        Jury trial requested.

Respectfully submitted, this the 27ᵗʰ day of July, 2004.

Respectfully Submitted,

DIANE HARRINGTON, On Behalf of Herself and All Others Similarly Situated
By her Attorneys,

**Dated: July 27, 2004**

Thomas M. Greene, Esq. (BBO#210020)
Ilyas J. Rona, Esq. (BBO#642964)
Greene & Hoffman, P.C.
125 Summer Street, Suite 1410
Boston, MA 02110
Tel:  (617) 261-0040
Fax: (617) 261-3558

CO-COUNSEL:

John W. Crongeyer, GA Bar No. 197267
Bryan A. Vroon, GA Bar No. 7298086
Vroon & Crongeyer, LLP
1230 Peachtree Street, Suite 2450
Atlanta, Georgia 30309
Telephone: (404) 607-6710
Facsimile: (404) 607-6711

Keith M. Fleischman, KF-0199
Ronald J. Aranoff, RA-4690
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 799-1414
Facsimile: (212) 799-3218
(Petition for Admission to Plead and Practice Has Been Filed)

Don Barrett, Esq.
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, Mississippi 39095
(662) 834-2376

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Diane Harrington, on behalf of Herself and All
    others Similaryl Situated v. Baystate medical Center, Baystate Health System, Inc.
    American Hospital Association and John Does 1 through 10.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See
    local rule 40.1(a)(1)).

    [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [X]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    [ ]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    [ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,       11663 RCL
               690, 810, 861-865, 870, 871, 875, 900.

    [ ]  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

               N/A

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                 YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
    28 USC §2403)

                                                                 YES [ ]    NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                 YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                 YES [ ]    NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                                                                 YES [ ]  .  NO [X]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

    B.  if no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
        agencies, residing in Massachusetts reside?

        Eastern Division [X]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
    yes, submit a separate sheet identifying the motions)

                                                                 YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Thomas M. Greene, Esq., Greene & Hoffman, P.C.

ADDRESS  125 Summer Street, 14th Floor, Boston, MA  02110

TELEPHONE NO.   (617) 261-0040

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Diane Harrington, On Behalf of Herself and All Others Similarly Situated

**DEFENDANTS**

Baystate Medical Center, Baystate Health Systems, Inc., American Hospital Association, and John Does 1 through 19

(b) County of Residence of First Listed Plaintiff __Suffolk__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed __Hampden__
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Thomas M. Greene, Esq.,   (617) 261-0040
Greene & Hoffman, P.C.
125 Summer Street, Boston, MA   02110

Attorneys (If Known)

**II. BASIS OF JURISDICTION**  (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN**   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**  (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is a class action challenging rights of Defendant hospital to charge uninsured patients excessive charges on contractual, constitutional and statutory grounds. Plaintiff alleges such practices violate 42 U.S.C. §§1395, 1983, 26 U.S.C. §501(c)(3) as well as the United States Constitution and the common law.

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $**    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):    JUDGE    DOCKET NUMBER

DATE  7/27/04

SIGNATURE OF ATTORNEY OF RECORD   Thomas M. Greene

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____