UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| DIANE HARRINGTON, On Behalf of Herself and All Others Similarly Situated, Plaintiff, v. BAYSTATE MEDICAL CENTER, et al. Defendants | ) ) ) ) ) ) ) ) ) | Civil Action No. 1:04-cv-11663-RCL  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS BAYSTATE MEDICAL CENTER, INC. AND BAYSTATE HEALTH SYSTEM, INC. |

Defendants Baystate Medical Center, Inc. ("BMC") and Baystate Health System, Inc. ("BHS") (collectively "Baystate") have moved this Court to dismiss all counts against them set forth in the Complaint-Class Action ("Complaint") in this matter for failure to state a claim upon which relief can be granted. The reasons why the motion should be granted are set forth below.

**I.   *STATEMENT OF FACTS***

BHS is a non-profit corporation and the sole member of BMC, the largest hospital serving the western Massachusetts community.[1] As non-profit corporations, Baystate qualifies for federal tax-exempt status pursuant to section 501(c)(3) of the Internal Revenue Code. *Complaint,* ¶¶ 20, 26, 29. Plaintiff Diane Harrington ("plaintiff") alleges that she was treated at Baystate in April 2002 for injuries suffered during a fall while visiting Massachusetts. *Id.*, ¶¶ 44-45. She alleges that she was charged the full, undiscounted rates for her care, which exceeded the rates charged to insured patients. *Id.,* ¶ 46. Plaintiff did not pay for the medical treatment she received, and further alleges that Baystate obtained a judgment against her for $2,983.00. *Id.*, ¶ 47. Plaintiff now sues Baystate on behalf of herself (and seeks to proceed on behalf of a

---

[1] Plaintiff lumps BMC and BHS together and collectively refers to them as "the Baystate Health Defendants." *Complaint,* ¶ 1. Since BMC and BHS must treat plaintiff's allegations as true for the purpose of this motion to dismiss, they will use the same collective reference to both entities of "Baystate." BHS and BMC are separate entities, however, and they reserve any individual defenses they may have to these allegations. BMC and BHS dispute many, if not all, of plaintiff's allegations and treat them as true for the purposes of this motion only.

class of "uninsured" patients), not regarding the quality of treatment, but regarding the amount billed to her and the efforts undertaken to collect that bill. *See, e.g., Complaint, ¶56.* Her complaint sets forth twelve counts. As is explained below, none of the counts against Baystate in plaintiff's Complaint states a claim upon which relief can be granted.

**II.     ARGUMENT**

**A.     *All of Plaintiff's claims are barred by claim preclusion.***

Plaintiff's claims are barred by the judgment issued against plaintiff in the prior collection action. Federal courts look to state law to determine the *res judicata* effect of a state court judgment in federal court. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982); *Cruz v. Melecio*, 204 F.3d 14, 18 (1st Cir. 2000). The term "res judicata" describes doctrines by which a judgment in one action has a binding effect in future actions, and comprises both claim preclusion and issue preclusion. *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988).[2] Three elements are required for claim preclusion to exist: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits." *Id.* at 390 (citation omitted). The existence of all three elements in this case is demonstrated by plaintiff's allegation that "the Baystate Medical Defendants obtained a judgment against" her for amounts due for the medical care she received. *Complaint,* ¶ 47. The first two elements are easily disposed of: The parties to both actions are the same, and the prior action was to recover payment for the medical care she received at Baystate, the same transaction or occurrence that is at issue in this Complaint. With respect to the third element, the "Supreme Judicial Court has unequivocally held that even a default judgment is entitled to finality." *In re*

---

[2] Claim preclusion "makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Id.* at 23. "[C]laim preclusion bars not only relitigation of all matters decided in a prior proceeding but those that could have been litigated as well." *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 36 Mass. App. Ct. 386, 391 (1994).

2

*Brennan*, 275 B.R. 172, 176 (Bankr. D. Mass. 2002) *citing MacEachern v. S.S. White Dental Mfg. Co.,* 304 Mass. 419, 421 (1939). Otherwise, a defendant could choose not to assert and prove her defenses in the original action, allow it to go into default, and then file an affirmative action anytime within the statute of limitations period. *MacEachern*, 304 Mass. at 421-22. Such a practice would subvert the finality of a default judgment.

Plaintiff was required to bring the claims she seeks to bring here in the prior collection action because the claims constitute compulsory counterclaims under both the Massachusetts and Federal Rules of Civil Procedure 13(a). Massachusetts Rule of Civil Procedure 13(a) provides that a counterclaim must be asserted "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." The Federal rule is similarly worded. *See* Fed. R. Civ. P. 13(a). "Courts have held claims to be compulsory counterclaims to earlier actions, and thus precluded, even though the later actions involved a different body of law and different remedies." *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 139 (D. Mass. 2002), *aff'd on other grounds, Tapalian v. Tusino*, 377 F.3d 1 (1st Cir. 2004) (citation omitted). All of plaintiff's claims here pertain to the charges for her medical care and the efforts to collect those charges. Plaintiff was required to assert these claims in the prior action, and she is now barred by claim preclusion from raising them.

**B.    *All Counts fail to state a claim upon which relief can be granted.***

Alternatively, if this Court should find that any of plaintiff's claims are not barred by *res judicata*, the claims should be dismissed for the reasons set forth below.

   **1.  *Count One (Breach of Contract)***

Plaintiff alleges in Count One of the Complaint that she is the express or implied third-party beneficiary of a contract between Baystate and the federal, state, and local governments

with respect to tax exemptions, and that Baystate breached those agreements entitling plaintiff, and the class she purportedly represents, to damages and injunctive relief.  *Complaint*, ¶¶ 65-69.  There are numerous reasons why plaintiff's claim fails as a matter of law.

### a. There is no contract between the government and entities, such as Baystate, which qualify for tax-exempt status.

First, and most fundamentally, plaintiff's claims fail as a matter of law because there is no contract between the federal, state, or local governments and Baystate as a result of BMC's and BHS's tax-exempt status.  A particular entity's tax-exempt status is the result of the operation of law.  A statute defines whether a particular entity is tax-exempt or not.  *See, e.g.,* 26 U.S.C. § 501(c)(3); M.G.L. c. 59, § 5, clause 3.  The IRS does not confer tax-exempt status, nor does it enter into a contract with respect to such tax-exempt status.  The Internal Revenue Service merely "recognizes" that a particular entity is tax-exempt under the applicable statute.  *See* 26 U.S.C. § 508(a) (to be treated as 501(c)(3) corporation, organization must give notice to Secretary that it is "applying for **recognition** of such status . . .") (emphasis added); IRS Form 1023 (Application for Recognition of Exemption).[3]  Indeed, § 501(c)(3) contains absolutely no language indicating that a contract is formed based upon this statutory section.  Absent an intent to be contractually bound, courts have consistently held that federal and state statutes do not constitute "contracts."[4]

---

[3] Any analogy in this case to cases involving the so-called Hill-Burton Act (42 U.S.C. § 291, *et seq.*), which provided federal funds to the states to assist them with the construction and modernization of hospitals and other medical facilities, is inappropriate.  First, plaintiff's Complaint in this matter contains no claim under the Hill-Burton Act.  Second, under the Hill-Burton Act, unlike under § 501(c)(3), hospitals enter into specific written agreements with the government to provide a specific amount of care to "persons unable to pay therefor" (42 U.S.C. § 291c) in exchange for receiving a specific amount of money for construction and modernization of their facilities.  *See, e.g.,* 42 CFR §§ 124.4 and 124.503.  Section 501(c)(3) involves no such contractual relationship.

[4] *See, e.g., Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 466 (1985) ("a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise") (citation omitted); *Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente through Ins. Comm'r*, 125 F.3d 9, 13 (1st Cir. 1997) (to find that state has committed itself to contractual obligation, there must be a "clear indication that the legislature intends to bind itself in a

> **b. Section 501(c)(3) does not provide private plaintiffs with the right to file a legal action to enforce obligations under that statute.**

Even if Baystate had entered into a contract with the government based on its tax-exempt status, plaintiff would be barred from bringing this claim because § 501(c)(3) provides no private right of action, express or implied, allowing a private citizen to sue. For example, unlike several other sections of the Internal Revenue Code,[5] § 501(c)(3) does not contain an express provision allowing private suits, and no court has ever implied one. *See Fulani v. Bentsen*, 862 F. Supp. 1140, 1146 (S.D.N.Y. 1994) (noting that in prior case court found that "plaintiffs did not have a claim under Section 501(c)(3), as that section does not create a private right of action to challenge an entity's tax-exempt status"); *see also McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002) ("like substantive federal law itself, private rights of action to enforce federal law must be created by Congress") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

The Internal Revenue Code makes clear that the enforcement of § 501(c)(3) is reserved for the federal government alone.[6] There is no basis in the text of § 501(c)(3), its legislative history, or the overall statutory scheme to imply that Congress intended for private citizens to be able to enforce any obligations imposed by § 501(c)(3) through a private cause of action. *See*

---

contractual manner") (citation omitted); *Jones v. Pepsi Cola Bottling Co.*, 822 F. Supp. 396, 404 (E.D. Mich. 1993) ("applying for and being granted a tax exemption . . . does not involve the formation of any contractual relationship"). *See also Demes v. United States*, 52 Fed. Cl. 365, 369 (2002) (plaintiffs not third-party beneficiaries because they "have identified no provision that would satisfy the elements of offer and acceptance").

[5] *E.g.*, 26 U.S.C. § 7405 (government may bring civil action to recover taxes refunded in error); 26 U.S.C. § 7431 (private right of action exists where IRS improperly discloses taxpayer information); 26 U.S.C. § 7432 (private right of action exists when IRS fails to release a lien in violation of Section 6325 of the Internal Revenue Code); *and* 26 U.S.C. § 7433 (private right of action where IRS disregards Internal Revenue Code).

[6] *See* 26 U.S.C. § 7401 (no civil action for collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary of Treasury authorizes or sanctions proceedings and Attorney General or his delegate directs that action be commenced); 26 U.S.C. § 7801 (Secretary of Treasury to administer and enforce the internal revenue laws).

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (outlining the four factors to be considered in determining whether private right of action may be implied under federal statute); *Falzarano v. United States*, 607 F.2d 506, 509 (1st Cir. 1979) ("impropriety of inferring a federal cause of action [from section of National Housing Act] seems clear" from fact that language of statute did not create federal rights in favor of any private party and did not proscribe conduct complained of).

### c. Plaintiff is not an intended beneficiary of any alleged implied contract.

Third parties cannot generally recover as beneficiaries of government contracts. *Restatement (Second) of Contracts* § 313(2).[7] *See Falzarano*, 607 F.2d at 511 (relying on Restatement of Contracts §145 [current §313], court found no federal jurisdiction on third-party beneficiary theory, because regulatory agreements between HUD and landlords did not "disclose an intent to benefit the tenants, except as they might be incidental beneficiaries"); *Restatement (Second) of Contracts*, § 313 Reporters Notes (noting that § 313(2) is "former § 145 rephrased in more general terms").[8] Here, plaintiff is not an intended beneficiary of any alleged government contract; there is no express reference to plaintiff or anyone else as a beneficiary in any alleged contract between Baystate and the government, nor does any alleged contract provide for liability to plaintiff or anyone else.[9]

---

[7] Restatement (Second) of Contracts §313(2) states: "(2)  In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless (a)  the terms of the promise provide for such liability; or (b)  the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach."

[8] *See also Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 580 (D.R.I. 1996)(stating that third-party beneficiary "claims on government contracts elevates the level of scrutiny the Court will apply when determining the parties' intentions").

[9] *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000) ("[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary,") (citation omitted); *Montana v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997) (in situation where members of the public bring suit against promisors who contract with the

### d. *Plaintiff lacks standing to challenge Baystate's tax-exempt status.*

Plaintiff lacks standing to assert claims based on Baystate's tax-exempt status. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 42-46 (1976) (dismissing challenge by patients to hospital's tax exempt status because it was too speculative whether hospital would have provided free care to plaintiffs, even if required to provide more charity care in exchange for its tax exemption); *Zimmerman v. Cambridge Credit Counseling Corp.*, 322 F. Supp. 2d 95, 100-01 (D. Mass. 2004) (plaintiff lacked standing because injury not fairly traceable to defendant's tax-exempt status; the "only strand connecting [defendant's] tax-exempt status to plaintiffs' alleged injury is the statement that they chose [defendant] because they assumed a nonprofit would charge lower rates").[10] Here, plaintiff has asserted no causal connection between the alleged overcharging and aggressive collections and Baystate's tax-exempt status. She lacks standing to assert Count One because her alleged injuries are not "fairly traceable" to Baystate's tax-exempt status.

### 2. *Count Two (Breach of Contract)*

Count Two alleges that plaintiff and the purported class entered into express form contracts with Baystate, which required them to agree to pay the "charges for medical care set by [Baystate]." *Complaint,* ¶ 71. She further asserts that "[i]mputed in [this contract] is the express and/or implied contractual obligation by [Baystate] that they would charge . . . no more than a fair and reasonable charge for such medical care" *Id*.

---

government to provide a public service, "members of the public are considered to be incidental beneficiaries [of the government contract] unless they can show a direct right to compensation") (citation omitted).

[10] *See also Nilavar v. Mercy Health Sys.,* 142 F. Supp.2d 859, 889 (S.D. Ohio 2000) (plaintiff's alleged injury not fairly traceable to hospital group's tax exempt status); *Orient v. Linus Pauling Institute of Science & Medicine*, 936 F. Supp. 704, 707-08 (D. Ariz. 1996).

Count Two asserts that the express contract contained a term stating that plaintiff agreed to pay the charges set by Baystate. The express contract alleged by plaintiff, therefore, speaks directly to the amount that plaintiff was to be charged -- she would be charged in accordance with Baystate's rates. The law will not imply a contract term in an express contract that already covers the same subject matter. *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85, 134 N.E.2d 141 (1956). Plaintiff's assertion of an implied term is at odds with the alleged unambiguous, express contractual obligation to pay the charges set by Baystate. As the alleged contract addresses the payment basis, plaintiff's alleged implied term cannot stand. *Zarum,* 334 Mass. at 84. *See also Gans & Pugh Assocs. v. Technical Communications Corp.,* 1993 U.S. App. LEXIS 32005, 5-6 (4th Cir. 1993) (ignoring express contract term and implying covenant of good faith and fair dealing would deprive parties of their bargain and be contrary to Massachusetts law) (citations omitted) (copy of unpublished opinion attached as Exhibit A); *Balzer/Wolf Associates, Inc. v. Parlex Corp.*, 753 F.2d 771, 774 (9th Cir. 1985) (holding that "the contract unambiguously provides for the contingency that gives rise to this case and that, in the absence of unconscionability or illegality, Massachusetts law requires the enforcement of the contract as written").

   3. ***Count Three (Breach of Implied Covenant of Good Faith and Fair Dealing)***

Plaintiff's inability to establish the existence of a contract with the government, or the existence of the implied contractual term upon which she relies in Count Two, also dooms her claim that Baystate breached the implied covenant of good faith and fair dealing. The obligations of the implied covenant of good faith and fair dealing extend only to the parties' duty to perform their specific obligations under the contract. *Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 427 Mass. 509, 525-26 (1998). "As a matter of law, there cannot be a

breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Bateman v. FDIC*, 112 F. Supp. at 97 (D. Mass. 2000) (citing *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991). "The implied covenant of good faith cannot override the express terms of a contract." *Dunkin' Donuts, Inc. v. Panagakos*, 5 F. Supp. 2d 57, 64 (D. Mass. 1998). Plaintiff has alleged only that Baystate charged her undiscounted rates, and used the legal process in an effort to collect this debt. *Complaint,* ¶¶ 46-47. She has not alleged that Baystate "engaged in behavior evincing 'an aspect of fraud, deceit, or misrepresentation," or attempted to use a "discretionary right . . as a pretext" to gain financial concessions from her. *Dunkin' Donuts*, 5 F. Supp. 2d at 63 (citation omitted); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991).

### 4. Count Four (Breach of Charitable Trust)

In Count Four, plaintiff alleges that "[b]y accepting federal, state and local tax exemptions . . . , [Baystate] created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients." *Complaint,* ¶ 81. This claim is without merit.

### a. No public charitable trust exists.

For a charitable trust to exist, plaintiff must demonstrate the existence of "a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." 4A Scott, *Law of Trusts* §348 (4th ed. 2001)(citing Restatement on Trusts). *See also Hillman v. Roman Catholic Bishop of Fall River*, 24 Mass. App. Ct. 241, 242 n.3 (citing Scott §348 with approval). "Whether a trust or obligation is imposed is a matter of interpretation of the particular instrument and determination of the particular donors' intent." *Cohen v. Lynn,* 33 Mass. App. Ct. 271, 275 (1992)(quotations

9

omitted). Plaintiff's Complaint contains no allegation of any such intent to create a public trust, nor does it identify the property allegedly held in trust. 4A Scott, §363 ("A charitable trust...cannot be created unless there is trust property of such a nature as to be the proper subject of a trust."). Rather, plaintiff claims that a public trust arises simply by operation of law. No Massachusetts court has ever recognized the type of claim for breach of an unwritten, implied charitable trust that plaintiff is advancing in Count Four.[11]

### b. Even if a public charitable trust existed, plaintiff lacks standing to bring suit to enforce the trust.

Even if a public charitable trust had been created, plaintiff lacks standing to bring this claim. "It is well settled that it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings." *Ames v. Attorney Gen.*, 332 Mass. 246, 250-51 (1954) (quotation omitted); *see also* M.G.L. c. 12, § 8. Plaintiff's status as an uninsured patient at Baystate does not confer upon her "an interest . . . sufficiently distinct from that of the general public to grant [her] standing." *Garland v. Beverly Hosp. Corp.*, 48 Mass. App. Ct. 913, 914 (1999). *See also Weaver v. Wood*, 425 Mass. 270, 277-78(1977) (no standing because plaintiffs were not beneficiaries of trust, and status as members of Church did not give them enforceable legal interest in administration of charity).

---

[11] The language of section 501(c)(3) does not express an intent to create a charitable trust; it simply provides a tax exemption for organizations meeting the requirements of that section. Under plaintiff's theory, some undefined portion (or all) of the assets of every 501(c)(3) corporation would be the subject of a public trust, simply by virtue of the tax exemption. These corporations would have the affirmative, fiduciary duties of a trustee for some vague and undefined portion of their assets, to some indeterminate and amorphous group of beneficiaries, as a result of accepting a tax exemption. This is not the law. The law requires a definite expression of intent to create a charitable trust before such an extraordinary result should occur. *Cf. Board of Selectmen v. Attorney Gen.*, 15 Mass. App. Ct. 639, 648 (1983) (carefully evaluating terms of settlor's devise to determine whether general charitable intent existed). Indeed, it would be unreasonable to conclude that a public trust to provide "mutually affordable" health care arises from the mere receipt of a tax exemption. Massachusetts law expressly allows hospitals to charge for their services and retain their charitable status. *See Conners v. Northeast Hosp. Corp.*, 439 Mass. 469, 475-76 (2003) ("no requirement that a hospital provide free care to retain its charitable status"); *Barrett v. Brooks Hosp., Inc.* 338 Mass. 754, 757-58 (1950)(fact that fees are charged for services does not "destroy the public character of its purpose"). No public charitable trust can be implied from the receipt of tax exemptions, and Baystate has no fiduciary relationship with plaintiff.

### 5. Count Five (M.G.L. c. 93A)

In Count Five of the Complaint, plaintiff alleges that Baystate violated chapter 93A by charging plaintiff "inflated rates" and by using alleged "aggressive, abusive, and harassing efforts to collect" payment. *Complaint*, ¶¶ 88-90. Count Five fails for several reasons.

First, a written demand for relief, sent at least thirty days prior to the filing of any action, is a prerequisite to filing suit under chapter 93A. *Slaney v. Westwood Auto Inc.*, 366 Mass. 688, 704 (1975); *Labovitz v. Feinberg*, 47 Mass. App. Ct. 306, 308 n. 5 (1999) (same). Plaintiff has not alleged that she sent a written demand to Baystate, nor has she attached a copy of any written demand. *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000) (citing numerous cases) (written demand "is a absolute prerequisite to an action asserted under G.L. c. 93A, § 9").

Second, chapter 93A does not apply to actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the Commonwealth or of the United States. M.G.L. c. 93A, § 3. Hospital rates, eligibility for free or reduced-cost care, hospital reimbursement for uncompensated care, and required efforts to collect unpaid bills, are all part of a complex system that is highly regulated by the federal and state governments.[12] The conduct of which plaintiff complains (i.e., the amount she was charged and the methods used to collect those charges) clearly is expressly permitted by the applicable comprehensive regulatory scheme. *See Bierig v. Everett Square Plaza Assocs.*, 34 Mass. App Ct. 354, 368 (1993) (finding no c. 93A violation because regulatory scheme permitted the alleged excessive rents charged to certain tenants in publicly financed housing development).

---

[12] *See, e.g.,* 114.1 CMR 42.01, *et seq.* (relating to hospital reporting requirements, including the reporting of rates, which reports are subject to audit by the Division of Health Care Finance and Policy); M.G.L. c. 118G, § 18 (establishing Massachusetts uncompensated care pool); 114.6 CMR 7.00, *et seq.* (governing, for acute care hospitals, the administration uncompensated care pool); 114.6 CMR 10.00, *et seq.* (governing the eligibility for free care under the uncompensated care pool); 114.6 CMR 10.03(4) and 10.05 (requiring hospital to make same collection efforts for uninsured patients as for other patient classifications); 114.6 CMR § 10.09 (requiring hospitals to file their credit and collection policies); 114.6 CMR § 11.00 *et seq.* (further regulations governing the uncompensated care pool).

Third, BMC and BHS are not subject to c. 93A because hospitals are not engaged in "trade or commerce" for the purposes of chapter 93A. *All Seasons Servs. v. Commissioner of Health & Hosps.,* 416 Mass. 269, 271 (1993). In *All Seasons Servs*, the Court held that chapter 93A was inapplicable to the hospital's transaction with a food service vendor, concluding that "the hospital's conduct did not take place in a business context. The hospital is a charitable organization operated by the board. As such, it did not seek to profit from its 'transaction' with All Season." *Id.*[13]

Finally, the conduct alleged simply does not, as a matter of law, amount to a violation of § 2 of c. 93A. Conclusory labels such as "inflated" and "aggressive, abusive and harassing" are insufficient. Stripped of all the rhetoric, plaintiff alleges simply that she should not have been charged Baystate standard rates, and that Baystate should not have used lawful legal process in order to recover payment of the medical debt she incurred. Mere breach of contract is insufficient to constitute an unfair or deceptive act or practice. *Pepsi-Cola Bottling Co. v. Checkers*, 754 F.2d 10, 18 (1st Cir. 1985). Plaintiff has alleged no pretextual behavior, nor has she claimed that the rates were charged in violation of any known contractual obligation, or that Baystate took any action to secure or extort an unfair advantage over her. *See Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (listing conduct that violated c. 93A). She has not challenged Baystate's right to obtain a judgment against her for the amount of the debt, nor has she alleged a lack of opportunity to challenge the amount of the debt in that legal proceeding. *Wornat Dev. Corp. v. Vakalis*, 403 Mass. 340, 348 (1988) (affirming directed verdict for plaintiff on defendant's c. 93A counterclaim); *Olson v. Guaranty Bank & Trust Co.*,

---

[13] *See also Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 26 (1997) (stating that "[i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.").

12

26 Mass. App. Ct. 1026, 1029-30 (1989) (no violation of c. 93A when defendant took possession of the collateral used to secure loan and sold it).

### 6. Count Six (Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395 dd

Plaintiff's EMTALA claim is barred by the applicable statute of limitations. "No action may be brought under [EMTALA] more than two years after the date of the violation with respect to which the action is brought." 42 USCS § 1395dd(c). Plaintiff alleges that she was seen at Baystate in April 2002, more than two years before the suit was filed on July 27, 2004. *Complaint*, ¶ 44.

In any event, plaintiff has not alleged an EMTALA violation. Plaintiff must show, among other things, that the hospital emergency department either (a) did not afford the patient an appropriate screening to determine if she had an emergency medical condition, or (b) discharged or transferred the patient without first stabilizing the emergency medical condition. *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995); 42 C.F.R. § 1395dd(a)&(b). Plaintiff does not allege that she was denied a medical screening examination or stabilizing treatment, or that there was any delay in her receiving treatment.[14]

Moreover, plaintiff must show that she suffered a "personal harm as a direct result of a … violation [of EMTALA]." 42 U.S.C. § 1395dd(d)(2)(A). Plaintiff alleges only that BMC's conduct caused her "economic injury" and unspecified other damages. *See Complaint,* ¶ 95. Economic injuries are not the type of harm EMTALA was intended to address. *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir. 2000) (citing cases) (EMTALA is limited statute

---

[14] Plaintiff alleges here that before Baystate provided treatment to her, she was required to sign a "form contract[] agreeing to pay [Baystate] in full for unspecified and undiscounted medical charges." *Complaint* ¶ 94. Requiring patients to sign a standard intake form does not violate EMTALA. Hospitals may "follow reasonable registration processes for individuals for whom examination or treatment is required . . ., including asking whether an individual is insured and, if so, what that insurance is, as long as that inquiry does not delay screening or treatment." *See* 42 C.F.R. § 489.24(d)(4)(iv).

enacted to ensure that hospitals provide an adequate "first response to a medical crisis" for all patients).

### 7. *Count Seven (Unjust Enrichment/Constructive Trust)*

Count Seven alleges that Baystate has been unjustly enriched at plaintiff's expense, and asks the Court to impose a constructive trust on "the amount of the Baystate Health Defendants' federal, state and local tax exemption savings." *Complaint,*¶ 99. This Court should dismiss this claim, as plaintiff has suffered no injury. She has given nothing of benefit to Baystate upon which a constructive trust could be imposed.

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Consedine v. Consedine,* 39 Mass. App. Ct. 65, 67 (1995) (*quoting Restatement of Restitution* § 1 (1937)). "A constructive trust [is] a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation . . . ." *Barry v. Covich*, 332 Mass. 338, 342 (1955). Plaintiff has not alleged any fraud or violation of any fiduciary relationship that resulted in the alleged unjust enrichment of Baystate. More importantly, plaintiff has not paid anything for the medical care she received. She has no claim, therefore, that Baystate has been unjustly enriched. Where, as here, "[t]here is nothing to indicate that the defendant possesses anything to which the plaintiff has a legitimate claim[,]. . . . unjust enrichment is absent" and no constructive trust can be imposed. *Robinson v. Hathaway,* 277 Mass. 82, 86 (1931).[15]

---

[15] As plaintiff has not shown that Baystate was unjustly enriched, she is not entitled to the remedy of imposition of a constructive trust. In any event, she would not be entitled to the requested constructive trust on the value of the tax exemption savings, as she did not confer this benefit.

### 8-10.   *Count Eight (Injunctive/Declaratory Relief), Count Nine (Civil Conspiracy/Concert of Action), Count Ten (Aiding and Abetting)*

Counts Eight, Nine and Ten are not independent claims. They are viable only if other claims asserted by plaintiff can be sustained. As is explained in this memorandum, plaintiff's other claims fail as a matter of law, and therefore plaintiff is not entitled to the remedy of a permanent injunction as sought in Count Eight.[16] No argument is required on Count Ten, which is an "aiding and abetting" claim directed against the defendant American Hospital Association alone.

Plaintiff's claim of civil conspiracy in Count Nine also fails, because the underlying predicate claims fail. "Civil conspiracy is recognized as a 'very limited cause of action in Massachusetts.'" *Kibbe v. Potter*, 196 F. Supp. 2d 48, 76 (D. Mass. 2002) (internal quotations and citations omitted). "It requires 'a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.'" *Id*. (quoting *Maryland Cas. Co. v. Hosmer*, 93 F.2d 365, 366 (1st Cir. 1937)). The plaintiff must also "show that the 'defendants, acting in unison, had some particular power of coercion over plaintiff that they would not have had if acting independently.'" *Id*. (quoting *Tennaro v. Ryder System*, Inc., 832 F. Supp. 494, 499 (D. Mass. 1993)). In addition, "an unlawful or tortious act is a necessary requirement to a civil conspiracy claim." *Id*. (citations omitted).[17] Finally, plaintiff must allege and prove that the defendants acted with a malicious intent to harm plaintiff. *Robitaille v. Morse*, 283 Mass. 27, 34-35 (1933). In this case, plaintiff has not alleged an unlawful purpose or an attempt to accomplish a lawful purpose by unlawful or tortious means. She has not alleged

---

[16] Plaintiff has not moved for a preliminary injunction. Any such motion would fail, in any event, because plaintiff is unable to show likelihood of success on the merits or irreparable harm. *Itek Corp. v. First Nat'l Bank*, 730 F.2d 19, 22 (1st Cir. 1984)).

[17] All, or virtually all, of plaintiff's claims are contract claims. Civil conspiracy requires a tortious act, and thus her contract claims cannot provide the basis for a conspiracy claim.

that the defendants had any particular coercive power over plaintiff that would not have existed had they been acting independently or that they acted with malicious intent. There is nothing unlawful or tortuous alleged in this count; no statute or common law prevents Baystate from providing discounts to groups of insured patients, or from attempting to recoup payment from uninsured patients who do not pay for the treatments they receive. Plaintiff's civil conspiracy claim cannot be maintained.

11. *Count Eleven (Fair Debt Collections Practices Act)*

Count Eleven asserts that Baystate violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5) (hereinafter "the Act"), by charging inflated rates to uninsured patients and conspiring to collect such rates despite their status as nonprofit organizations. Plaintiff's claim under the Act fails, as neither BMC nor BHS is a "debt collector" within the meaning of the Act, nor has plaintiff alleged a violation of the Act.

The Act prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. A "debt collector" is defined by the Act to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). By its terms, the Act applies only to entities collecting the debts of "another" and not to creditors attempting to collect their own debts. *Camara v. Fleury*, 285 F. Supp. 2d 90, 93 (D. Mass., 2003) ("attorneys who do not regularly or principally engage in debt collection" are not debt collectors); *Beck v. Alliance Funding Co.*, 113 F. Supp. 2d 274, 275 (D. Conn. 2000) ("The [FDCPA] is . . . directed at independent debt collectors and not creditors attempting to collect on their own debts."). In *Bleich v. Revenue Maximization Group,*

*Inc.*, 239 F. Supp. 2d 262, 264 (E.D.N.Y. 2003), the court found that the defendant hospital was not a debt collector under the Act when it was attempting to collect its own debt and not the debt owed of "another." Plaintiff's claim must fail, because she does not allege that the primary purpose of Baystate is to collect the debts of "another," or that Baystate did anything more than attempt to collect its own debt.[18]

### 12.   Count Twelve (Civil Rights Violations)

Plaintiff alleges that Baystate acted under color of federal and state law in overcharging uninsured patients and collecting, or attempting to collect, such overcharges. *Complaint*, ¶ 150. Plaintiff further alleges that these charges have a discriminatory and disparate impact on racial minorities, which violates the constitutional right of Plaintiff and the Class to equal protection of the law, and discourages uninsureds from obtaining health care. *Complaint*, ¶¶ 151, 157.

#### a.   *Baystate was not acting under color of state law*

Section 1983 "prohibits interference with federal rights, under color of state law." *Rendall-Baker v. Kohn,* 457 U.S. 830, 838 (1982); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir. 1996). The statute does not reach private conduct. When private defendants are sued, such as in the case at bar, this Court must determine whether "the alleged infringement of federal rights [may be] 'fairly attributable to the State?'" *Rendell-Baker*, 457 U.S. at 838 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). To show state action, plaintiff must "point to the specific act or actions of the government which in fact

---

[18] Even if Baystate were considered a "debt collector" under the Act, plaintiff would still fail to state a claim, because she has not alleged a violation of the Act. A claim under the Act arises from the methods used to collect a debt, not from the transaction creating it. *See Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995). In addition, it is not a violation of the Act to threaten or use lawful legal process. *See* 15 U.S.C. §1692e(5). Plaintiff does not allege that Baystate communicated with her in a manner prohibited by section 1692c, engaged in any of the harassing or abusive conduct proscribed by section 1692d, or made a "false, deceptive, or misleading representation in connection with the collection of any debt," in violation of section 1692e. Plaintiff challenges the amount of the debt itself, and the lawful use of legal process to collect the debt. This is insufficient to state a claim under the Act.

17

motivated the private action." *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 450 (1st Cir. 1983).

Following established Supreme Court precedent, the First Circuit has used the following tests to determine whether a party is a state actor: "(1) whether there was an elaborate financial or regulatory nexus between appellants and the government ... which compelled appellants to act as they did, (2) an assumption by appellants of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits." *Ponce v. Basketball Federation of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985) (citations omitted). With respect to the nexus test, plaintiff has failed to identify any state regulation that compelled the defendants allegedly to overcharge uninsureds.[19] Further, the First Circuit has squarely and consistently rejected the position that receipt of governmental funding or susceptibility to extensive government regulation converts a private party into a state actor. *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994 (citations omitted); *Mendez v. Belton,* 739 F.2d 15, 18 (1st Cir. 1984).[20]

Plaintiff's claim fails the traditional public function test, because the "courts do not classify health care services as either an exclusive or traditional government function." *Ahmed v. Berkshire Medical Center*, 1998 U.S. Dist. LEXIS 21631 *30 (D. Mass. 1998) (citing *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 98 (1st Cir. 1990)) (copy attached as Ex. B). The symbiotic relationship test is equally unavailing, because plaintiff is unable to demonstrate that the state

---

[19] Plaintiff cannot rely on federal statutes and regulations as the basis for her claim under § 1983. *Rogers v. Vicuna*, 264 F.3d 1, 4 (1st Cir. 2001) ("§ 1983 cannot form the basis of an action against individuals acting under color of federal law" and applies only to individuals acting under color of state law) (emphasis added) (citations omitted).

[20] In *Mendez*, the First Circuit noted that "[e]very circuit that has addressed the issue has decided that extensive government regulation and the receipt of Hill-Burton construction funds, Medicare and Medicaid funds, and tax-exempt status do not transform an otherwise private hospital into a governmental actor." *Id.* at 18 (citing *Loh-Seng Yo v. Cibola General Hospital*, 706 F.2d 306, 307-08 (10th Cir. 1983); *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563, 564 (3d Cir. 1978); *Modaber v. Culpeper Memorial Hospital, Inc.*, 674 F.2d 1023, 1025-26 & n.10 (4th Cir. 1982)). "[T]he receipt of government funds does not render the government responsible for a private entity's decisions concerning the use of those funds." *Id.* (citing *Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d at 450, *Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982); and *Rendell-Baker v. Kohn*, 457 U.S. at 840)).

profited from the alleged overcharging, or has otherwise "so far insinuated itself into a position of interdependence with [the defendants] that it must be recognized as a joint participant in the challenged activity." *Barrios-Velazquez*, 84 F.3d at 494 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)); *see also Ponce v. Basketball Federation of Puerto Rico*, 760 F.2d 375, 382 (1st Cir. 1985). Plaintiff is unable to demonstrate that Baystate acted "under color of state law."

### b. *Plaintiff has not shown that she was deprived of a right guaranteed by the Constitution.*

Plaintiff has also failed to allege that she has been deprived of a right guaranteed by the U.S. Constitution. Allegedly placing "obstacles in the way of citizens trying to obtain health care" -- is not the deprivation of a fundamental right guaranteed by the Constitution. *Complaint*, ¶157. *See Maher v. Roe*, 432 U.S. 464, 473 (1977); *Harris v. McRae*, 448 U.S. 297, 316-17 (1980); *see also Wideman v. Shallowford Comm. Hosp. Inc.*, 826 F.2d 1030, 1034 (11th Cir. 1987) ("there exists no ... general [constitutional or statutory] right to the provision of medical care and services by the state").

### c. *Plaintiff has not stated a claim for violation of the Equal Protection Clause.*

To succeed on her Equal Protection claim, plaintiff must show that she is a member of a protected class of individuals warranting "strict scrutiny," and that their membership in the "suspect class" occasioned the alleged constitutional violation. *See San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973). She is unable to do so, because her lack of health insurance -- the characteristic that forms the basis of her discrimination claim -- is not a suspect classification. Discrimination on the basis of wealth does not provide a basis for strict scrutiny of alleged discriminatory conduct and cannot support claims for violation of the equal protection

clause.[21] *See id.* Moreover, the fact that plaintiff obtained health care is fatal to her claim that she was deprived of this alleged fundamental right. Count Twelve must be dismissed.

### C. *Claims against John Doe Defendants must be dismissed.*

As is explained above, no claim exists against Baystate in this matter. Accordingly, plaintiff's claims against unidentified "John Doe" defendants, to the extent such claims are based on any conduct of, or relationship with, Baystate must be dismissed as well. *Complaint,* ¶ *22.*

### III. CONCLUSION

For the reasons set forth above, BHS and BMC respectfully request this Court to dismiss all claims asserted against them in the Complaint.

                                    Respectfully submitted,
                                    The Defendants
                                    Baystate Medical Center, Inc.
                                    and Baystate Health System, Inc.
                                    By Their Attorneys:

                                    /s/ Francis D. Dibble, Jr.
                                    Francis D. Dibble, Jr.
                                      BBO No. 123220
                                    J. Michael Scully
                                      BBO No. 555460
                                    Carol E. Kamm
                                      BBO No. 559252
                                    Bulkley, Richardson and Gelinas, LLP
                                    1500 Main Street, Suite 2700
                                    Springfield, MA  01115
                                    Tel.:  (413) 781-2820
                                    Fax:  (413) 272-6804

Dated:  September 9, 2004

278185

---

[21]*See also Maher v. Roe*, 432 U.S. 464, 473 (1977) (equal protection clause does not require state to fund abortions to indigents); *Harris v. McRae*, 448 U.S. 297, 317-318 (denial of public funding to indigents for medically necessary abortions does not violate equal protection clause; *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) ("wealth ... alone is not a suspect criterion").