IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE HARRINGTON, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff<br><br>vs.<br><br>BAYSTATE MEDICAL CENTER, BAYSTATE HEALTH SYSTEM, INC., AMERICAN HOSPITAL ASSOCIATION, and JOHN DOES 1 THROUGH 10.<br><br>Defendants. | Civil Action No.: 04-11663RCL<br><br>**SPECIAL ACTION REQUESTED** |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STAY PENDING TRANSFER TO THE MDL

**I.   INTRODUCTION**

The Baystate Medical Center and Baystate Health System, Inc. ("Baystate Health Defendants") have operated free from federal and state taxes because they have promised the government that they would operate as a not-for-profit charity provider of health care for uninsured indigent patients and that they would not engage in business "directly or indirectly, for the benefit of private interests." In reality, Baystate Health Defendants have charged inflated rates to uninsured patients that significantly exceeded the rates charged to patients with health insurance or patients covered by Medicare or Medicaid. The Baystate Health Defendants have inflated the charges for patients without health insurance in order to boost the subsidies received from federal and state governments. The profits from these practices have come at the expense of uninsured patients.

In justification of their discriminatory pricing scheme, the not-for-profit hospital industry has blamed federal and state laws and regulations governing Medicare and Medicaid pricing rates. Under color of federal and state law, Baystate Health Defendants have imposed a discriminatory and unconscionable pricing scheme on their uninsured patients who are least able to pay such rates. This suit has been brought in part pursuant to settled federal case law bestowing standing on indigent patients as third party beneficiaries of implied contracts between the government and the hospitals whereunder the hospitals are given freedom from all taxation in exchange for delivering indigent health care.[1] This case is one of approximately 40 similar cases filed recently across the country in approximately 21 federal jurisdictions. The hospital systems named in these suits to date operate approximately 400 not-for-profit hospitals. These suits challenge the common pricing practices of not-for-profit hospitals charging inflated rates to their uninsured patients. On July 23, 2004, a motion to transfer and consolidate these related proceedings was filed with the Judicial Panel on Multi-District Litigation ("JPMDL"). The JPMDL has designated this litigation, "In re Not-For-Profit Hospitals/Uninsured Patients Litigation," MDL No. 1641. See Exhibit A to Plaintiff's Motion To Stay Proceedings Pending Transfer To Multidistrict Litigation ("MDL").

Access to healthcare is a critical issue facing the American population. According to a recent study, approximately 80 million people in America have been uninsured in the last two

---

[1] See Flagstaff Medical Center, Inc. v. Sullivan, 962 F.2d 879, 892 (9th Cir. 1992) (holding that hospital's receipt of Hill Burton funds from federal government constitutes agreement between hospital and government to provide uncompensated medical care to indigent patients and indigent patients denied such uncompensated care had cause of action against hospital as "third party beneficiaries" to contract); Saine v. Hospital Authority of Hall County, 502 F.2d 1033, 1034 (5th Cir. 1974) (holding that indigent patient had cause of action against hospital receiving funds under Hill Burton Act for hospital's failure to provide uncompensated medical services to indigent patients unable to pay); Euresti v. Stenner, 458 F.2d 1115, 1118 (10th Cir. 1972) (holding that civil remedy implied for those within protective realm of federal regulation or regulations in public interest and such right not dependent on formal contractual relationship); Cook v. Ochsner Foundation Hospital, 319 F. Supp. 603, 606 (E.D. La. 1970) (holding that indigent patients were beneficiaries of hospitals' obligations under Hill Burton Act to provide uncompensated medical care and had standing to sue hospital for breach of such obligation).

2

years. Uninsurance is likewise a prevalent problem in Massachusetts with approximately 530,000 under the age of 65 — or about 10 percent of the overall population—lacking health insurance. The uninsured are disproportionately racial and ethnic minorities.

In filing its request for tax-exempt status, Baystate Health Defendants, along with other non-profit hospitals in the United States, vowed to provide charitable care to the indigent uninsured. These cases raise a crucial national question about the obligation of wealthy, supposedly charitable, tax-exempt hospitals to contribute to that care. While Plaintiff is anxious for this important litigation to proceed, common sense and practical case management demand that the Court stay its hand, pending judicial organization of the approximately forty other similar cases nationwide challenging the common pricing practice of not-for-profit hospitals with their uninsured patients. The JPMDL has scheduled a hearing for this the not-for-profit hospital litigation, designed "In re Not-For-Profit Hospitals/Uninsured Patients Litigation," MDL No. 1641, for hearing on September 30, 2004. Until the Panel's ruling is made, and this case's status as a potential tag-along action is determined, it would be premature for this Court to expend the extensive judicial resources necessary to manage and adjudicate this case. The Plaintiff has attached stay orders similar to the one being sought by the Plaintiff as Exhibits 1 through 5 herein.

## II.   ARGUMENT AND CITATIONS OF AUTHORITIES

The purpose of MDL consolidation is to permit the orderly and efficient resolution of common issues pending in multiple districts. As the Panel stated in an Order establishing consolidated proceedings in the Welding Rod litigation:

> [T]he Panel finds that these... actions involve common questions of fact, and that centralization under Section 1407 in the Northern District of Ohio will serve the convenience of the parties and witnesses and promote the just and efficient

3

conduct of this litigation....Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.

In re Welding Rod Products Liability Litigation, 269 F. Supp. 2d 1365 (JPML, 2003). The filing of a motion before the Judicial Panel on Multi-District Litigation to consolidate proceedings does not automatically terminate the District Court's authority to decide matters pending before it. See JPML Rule 1.5. Nevertheless, the District Court has the authority to exercise its own discretion and judgment to stay the case while the MDL Panel considers how cases should be managed. In the context of a remand motion pending before a District Court prior to transfer to the MDL, Judge Blake in the District of Maryland wrote:

> The Judicial Panel on Multidistrict Litigation has held that a district court judge has the authority to either wait for a transfer order without ruling on a motion to remand, or to rule on the motion before a transfer order has been issued."

Moore v. Wyeth-Ayerst Laboratories, 236 F. Supp. 2d 509 (D. Md. 2002); see also In re Ivy, 901 F.2d 7 (2d Cir. 1990); In re Asbestos Products Liability Litigation, 170 F.Supp.2d 1348 (JPML, 2001). The Court in Board of Trustees v. Worldcom, Inc., 244 F. Supp. 2d 900 (N.D. Ill. 2002) wrestled with the question of staying a motion to remand, in the face of multiple cases pending transfer to an MDL proceeding. In that case, Judge Gottschall, one of the proposed transferee Judges in the pending Non-Profit Hospital MDL motion, wrote:

> The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding. Plainly, the answer is yes. It appears that the same issues have been raised in cases pending in California and West Virginia, which the Banks have requested the JPML to treat as "tag-along" actions. Given the magnitude of the WorldCom debacle the number of comparable cases may very well increase. The court therefore proceeds to consider the Banks' request for a stay of proceedings.
>
> **Judicial economy favors a stay. Having one court rather than three decide complex jurisdictional issues obviously saves judicial resources...On balance,**

4

> this court believes that the interests of judicial economy and the threat of inconsistent rulings outweighs the prejudice to the Funds from delay.

Board of Trustees, supra. (emphasis added).

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants. See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 20-21 (1st Cir. 1986); Cannavo v. Enterprise Messaging Servs., 982 F. Supp. 54 (D. Mass. 1997). Granting a stay of an action pending a decision by the JPMDL is "within the court's discretion and it is appropriate when it serves the interest of judicial economy and efficiency." Rivers v. Walt Disney, Co., 980 F.Supp. 1358, 1360 (C.D. Cal. 1997) (citations omitted); see also Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1077 (3d Cir. 1983). The issuance of a stay pending JPMDL action is a common approach. See, e.g., Rivers, 980 F. Supp. at 1360; Scott v. Bayer Corp., 2004 WL 63978 (E.D. La. 2004) (granting stay); Board of Trustees of the Teachers' Retirement System of the State of Illinois v. Worldcom, Inc., 244 F.Supp.2d 900, 906 (N.E. Ill. 2002); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 48 F.Supp. 2d 37, 43 (D.D.C. 1999).

Three factors are relevant to Plaintiff's request: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. See e.g., Rivers, 980 F. Supp. 1360 (citing American Seafood, 1992 WL 102762 at *1-2); Meyers v. Bayer A.G., 143 F.Supp. 2d 1044 (E.D. Wis. 2001). Each factor weighs in favor of a stay. It is well settled that a motion to stay should be granted when there is the potential for an inefficient use of judicial resources, as is the case where a motion to consolidate and transfer is pending. See, e.g., Rivers, 980 F. Supp. at 1362 ("[A] majority of courts have

concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved.") Tench v. Jackson Natl. Life Ins. Co., 1999 WL 1044923 at *1 (N.D. Ill. Nov. 12, 1999) (when a Section 1407 (a) transfer is likely, courts frequently grant a stay "to avoid duplicate efforts and preserve valuable judicial resources"); Good v. Prudential Ins. Co., 5 F.Supp. 2d 804, 809 (N.D. Cal. 1998) (courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case). In Rivers, the court described the adverse effect of denying a stay when a motion to transfer is pending before the JPMDL:

> First . . . this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge. And second, any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation . . . In addition, even if this Court denied [the] motion to stay, ruled upon more substantive motions, such as class certification, and then the matter was transferred to another court, there are not guarantees that an order by this Court would not later be vacated and this Court's investment of time and resources would not have been vain.

Rivers, 980 F.Supp. at 1360-61. The concerns outlined above support the issuance of a stay in the instant case. In the absence of a stay, the Court faces the prospect of considering a variety of pre-trial issues, including the anticipated motion to dismiss, which are likely to be addressed by a transferee court. Without a stay, the parties could encounter conflicting decisions from different courts — an outcome that would frustrate the purpose of Section 1407. Early in its history, the JPMDL stated that the "remedial aim" of the statute is "to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." In re Plumbing Fixture Cases, 298 F.Supp. 484, 491-92 (J.P.M.D.L. 1968). The long-run benefits of a stay greatly outweigh the minimal short-run costs of a delay. See Egon v. Del-Val Fin. Corp., 1991 WL 13726 at 1 (D.N.J. Feb. 1, 1991) ("[E]ven if a temporary

stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay.")

In the case before this Court, the same "interests of judicial economy" apply. There are dozens of similar lawsuits pending throughout the United States, all of which raise the complex, common and significant issues raised before this Court. There are motions to dismiss pending before some of the other courts in this litigation; it is anticipated that the Defendants will file a motion to dismiss that closely parallels the legal arguments of those motions. A motion for consolidation is pending before the MDL Panel. The interests of judicial economy and the threat of inconsistent rulings outweigh any prejudice to the Defendants from delay that might result from a stay.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court to stay the proceedings in this case pending transfer to the MDL.

DIANE HARRINGTON, On Behalf of Herself and All Others Similarly Situated
By her Attorneys,

**Dated: September 8, 2004**

Thomas M. Greene, Esq. (BBO#210020)
Ilyas J. Rona, Esq. (BBO#642964)
Greene & Hoffman, P.C.
125 Summer Street, Suite 1410
Boston, MA 02110
Tel: (617) 261-0040
Fax: (617) 261-3558

CO-COUNSEL:

John W. Crongeyer, GA Bar No. 197267
Bryan A. Vroon, GA Bar No. 7298086
Vroon & Crongeyer, LLP
1230 Peachtree Street, Suite 2450
Atlanta, Georgia 30309
Telephone: (404) 607-6710
Facsimile: (404) 607-6711

Don Barrett, Esq.
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, Mississippi 39095
(662) 834-2376

Keith M. Fleischman, KF-0199
Ronald J. Aranoff, RA-4690
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 799-1414
Facsimile: (212) 799-3218

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first-class mail, postage pre-paid, and facsimile on September 9, 2004.

_____
Ilyas J. Rona

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Ilyas J. Rona, hereby certify that, pursuant to Local Rule 7.1, I have conferred with J. Michael Scully, counsel for the Baystate Defendants, by telephone and have attempted in good faith to resolve or narrow the issue that is the subject of this motion, but was unable to do so.

_____
Ilyas J. Rona