## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **DIANE HARRINGTON, On Behalf of** | ) | |
| **Herself and All Others Similarly Situated,** | ) | |
| | ) | **Civil Action No.: 04-11663RCL** |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **COMPLAINT-CLASS ACTION** |
| | ) | |
| **BAYSTATE MEDICAL CENTER,** | ) | |
| **BAYSTATE HEALTH SYSTEM, INC.,** | ) | |
| **AMERICAN HOSPITAL ASSOCIATION, and** | ) | |
| **JOHN DOES 1 THROUGH 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff's counsel submits the attached Memorandum Opinion and Order dated January 6, 2005 from the case styled <u>Phyllis Servedio v. Our Lady of the Resurrection Medical Center</u>, in the Circuit Court of Cook County, Illinois, Case No. 04 L 3381 (See <u>Exhibit A</u>). If the Court elects to exercise supplemental jurisdiction over Plaintiff's state law claims, this Memorandum Opinion and Order is directly on point. [1]

The Court in <u>Servedio</u> found that the alleged disparate pricing imposed upon uninsured patients violates "public policy" and "can be construed as immoral, unethical or oppressive" and is "certainly injurious to consumers." The Court in <u>Servedio</u> further found, '[I]f the allegations in the plaintiffs' complaint are proven true, it would follow that [the hospital's] practice of giving

---

[1] Additionally, the nonprofit hospital in the <u>Servedio</u> case argued that federal "Medicare regulations prevent hospitals from systematically giving discounts to uninsured patients." (<u>Exhibit A</u>, Memorandum Opinion and Order, at 3). The Court in <u>Servedio</u> rejected this claim as a justification for the hospital's disparate and deceptive pricing policies for uninsured patients under state law claims. Nevertheless, the case against Resurrection Medical Center confirms that nonprofit hospitals have blamed federal laws and regulations as the reason they are compelled to charge uninsured patients much higher rates. Nonprofit hospitals have allegedly acted under color of federal law—a legal doctrine related to but separate from compulsion—which is why Plaintiffs in this case asserted claims in the alternative for violations of their equal protection rights under the Fifth Amendment.

discounts to all insured patients operates as a <u>de facto</u> 'usual and customary' charge, making that

which is charged to uninsured patients above and beyond that and a breach of contract." The

Circuit Court of Cook County denied the hospital's motion to dismiss with respect to the counts

for violations of the Illinois Consumer Fraud Act and breach of contract. The Court made the

following significant rulings which support the Plaintiff's analogous state law causes of action in

the instant case:

> In light of the General Assembly's and the Illinois Supreme Court's explicitly
> stated desire that the ICFA be read broadly to favor consumers, including an
> explicit command that the term "trade or commerce" be read inclusively, this
> Court holds that Illinois Consumer Fraud Act applies to billing practices for
> medical services.

> (<u>Exhibit A</u>, Memorandum Opinion and Order at 6).

> The ICFA proscribes ". . . unfair or deceptive acts or practices . . ." 815 Ill.
> Comp. Stat. 505/2 (emphasis added). "Recovery [under the ICFA] may be had
> for unfair as well as deceptive conduct." *Robinson v. Toyota Motor Credit
> Corp.,* 201 Ill.2d 403, 417 (Ill. 2002). A commercial practice is "unfair" when it
> (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous,
> and/or (3) causes substantial injury to consumers. *Robinson*, 201 Ill.2d at 418.
> An unfairness claim need not satisfy all three prongs, it may be unfair because of
> the degree to which it meets one of the criteria or because to a lesser extent it
> meets all three. *Id.* at 418. The Plaintiffs' complaint, at least to a lesser extent,
> meets all three factors and thus Resurrection's motion to dismiss Count I is
> denied.

> (<u>Exhibit A</u>, Memorandum Opinion and Order at 7).

> The Plaintiffs' complaint alleges conduct that is a violation of Illinois public
> policy. The General Assembly has, several times, reiterated its desire that
> hospitals provide health care to low income persons. *See* Illinois Public Aid
> Code, 305 Ill. Comp. Stat. 5/5-17 ("it is the policy of the State to implement
> programs that more equitably distribute the burden of providing hospital care to
> Illinois' low-income population and that improve access to health care in
> Illinois."); <u>see also</u> Illinois Property Tax Code, 35 Ill. Comp. Stat. 200/15-65
> (giving property tax exemptions for charitable institutions). Illinois courts
> interpreting section 15-65 of the Property Tax Code have held that a non-profit
> hospital, in order to be exempt from property taxation, should provide no fee
> services to patients who are unable to pay and a graduated fee according to a
> patient's ability to pay. *See e.g., Alvio Med. Ctr. v. Dept. of Rev.,* 229 Ill. App.3d

647 (Ill. App. Ct. 1998) (tax-exempt entities should not place obstacles in the way of those who need and would avail themselves of chartable benefits dispensed). Moreover, the Illinois Department of Revenue has revoked property tax exempt status from at least one hospital for the way it bills indigent patients. The conduct alleged by the Plaintiffs, that uninsured patients are charged higher prices than what is the *de facto* norm, and that they were not screened to determine whether they would qualify for charitable treatment, certainly flies in the face of this public policy. Second, the conduct alleged by the Plaintiffs can be construed as immoral, unethical, or oppressive. The term "oppressive" has been interpreted as "unjustly severe" or "unreasonably burdensome". *Standard Life Ins. Co. v. Davis,* 10 Ill. App.2d 245, 255 (Ill. App. Ct. 1956). At least one court has found "oppressive" conduct where the victims "were in a position in which they had no reasonable alternative but to pay and agree to pay." A failure to disclose a large fee is deceptive, oppressive, and potentially injurious to the consumer. *Id.* The alleged conduct here meets this standard—that requiring emergency room patients to pay fees two and three times the *de facto* normal rate is "oppressive" and unethical. Third, the conduct alleged by the Plaintiffs is certainly injurious to consumers. If uninsured patients are charged exorbitantly high fees for medical services, they most likely not seek medical attention when they most need it.

(<u>Exhibit A</u>, Memorandum Opinion and Order at 7 – 8).

Specifically regarding hospital bills, Illinois courts have established a two-prong proof requirement for one to be deemed reasonable under an implied contract theory. The charges must be "the usual and customary chares of that particular hospital" and they must be "comparable to the charges of other areas hospitals." *Sherman Hosp. v. Wingren*, 169 Ill. App. 3d 161, 164 (Ill. App. Ct. 1988). In order to state a cause of action for a breach hereunder, a plaintiff must only allege that the bill does not meet one of the criteria.

(<u>Exhibit A</u>, Memorandum Opinion and Order at 10).

The Plaintiffs have alleged that the prices that Resurrection charged them for services are more than what is charged to patients paying with insurance, which allegedly constitutes well over the majority of Resurrection patients. That Resurrection labels its charges to uninsured patients "usual and customary" bears no impact on the legal significance of their pricing scheme. If the allegations in the Plaintiffs' complaint are proven true, it would follow that Resurrection's practice of giving discounts to all insured patients operates as a *de facto* "usual and customary" charge, making that which is charged to uninsured patients above and beyond that and a breach of contract. The Court, therefore, denies Resurrection's motion to dismiss Count II because the Plaintiffs have alleged sufficient facts to state a claim that their hospital charges were unreasonable.

*Id.*

3

Respectfully submitted,

DIANE HARRINGTON, On Behalf of Herself and
All Others Similarly Situated,

By her Attorneys,

Dated: January 24, 2005

    /s Thomas M. Greene
Thomas M. Greene, Esq. (BBO#210020)
Ilyas J. Rona, Esq. (BBO#642964)
Greene & Hoffman, P.C.
125 Summer Street, Suite 1410
Boston, MA 02110
Tel:  (617) 261-0040
Fax: (617) 261-3558

CO-COUNSEL:

John W. Crongeyer, GA Bar No. 197267
Bryan A. Vroon, GA Bar No. 7298086
Vroon & Crongeyer, LLP
1230 Peachtree Street, Suite 2450
Atlanta, Georgia 30309
Telephone: (404) 607-6710
Facsimile:  (404) 607-6711

Don Barrett, Esq.
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, Mississippi 39095
(662) 834-2376

Keith M. Fleischman, KF-0199
Ronald J. Aranoff, RA-4690
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street, 22nd Floor
New York, NY  10016
Telephone: (212) 799-1414
Facsimile: (212) 799-3218