IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY AMATO, BROCK MASSEY, ) <br> SCOTT SMITH and RICKY DAVIS, ) <br> On Behalf of Themselves and All Others ) <br> Similarly Situated, ) <br>     Plaintiffs, ) <br> ) <br>         vs ) <br> ) <br> UPMC, a Pennsylvania non-profit corporation, ) <br> UPMC PRESBYTERIAN SHADYSIDE, a ) <br> Pennsylvania non-profit corporation, UPMC ) <br> SOUTHSIDE, a Pennsylvania non-profit ) <br> corporation, UPMC ST. MARGARET, a ) <br> Pennsylvania non-profit corporation, UPMC ) <br> EMERGENCY MEDICINE, a Pennsylvania ) <br> non-profit corporation, and UPMC ) <br> BRADDOCK, a Pennsylvania non-profit corp., ) <br>     Defendants. ) | Civil Action No. 04-1025 |

REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

It is respectfully recommended that the defendants' motion to dismiss the complaint (Docket No. 6) be granted.

II. <u>Report</u>:

Presently before the Court is the defendants' motion to dismiss the complaint for failure to state a viable claim.

The plaintiffs, Gary Amato, Brock Massey, Scott Smith and Ricky Davis, have filed a purported a class action complaint against defendants UPMC, UPMC Presbyterian Shadyside, UPMC Southside, UPMC St. Margaret, UPMC Emergency Medicine, and UPMC Braddock (collectively, "UPMC"), which are Pennsylvania non-profit corporations. The plaintiffs are individuals residing in Pennsylvania, who do not have health insurance and are

ineligible for public aid. They complain that UPMC breached its obligations as a charitable, tax-exempt entity, because prior to receiving medical treatment at UPMC, they were required to sign a guaranty of payment, after which they were charged the "full sticker price" for their medical care, which they are unable to pay.

The plaintiffs contend that UPMC is a registered charitable entity under section 501(c)(3) of the Tax Code, 26 U.S.C. § 501(c)(3), as well as under state and local law, for which it has received tax exemptions from the United States, the Commonwealth of Pennsylvania and local governmental bodies; that in exchange for receiving its tax exemptions, UPMC entered into express or implied contracts with the United States, the Commonwealth of Pennsylvania, and local government bodies to provide affordable medical care to all patients, including its uninsured patients; and that despite receiving favorable tax exemptions, UPMC breached its contracts in these ways: by failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care, by charging its uninsured patients medical care at grossly inflated rates above the actual cost of such services, and by instituting demeaning collection proceedings to collect payments from its uninsured patients for medical care they received.

The plaintiffs bring this action on behalf of themselves, and an alleged class consisting of: "all uninsured patients and healthcare consumers of UPMC from its date of incorporation to the present, who did not qualify for Medicare and/or Medicaid and who were charged an amount for medical care in excess of the amount charged to Defendants' Medicare patients, and/or were pursued for such debt through collection efforts and lawsuits." (Complaint at ¶ 32). The complaint purports to raise three federal law claims and seven supplemental state

2

law claims, and the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

The federal law claims arise in connection with UPMC's status as a registered charitable entity under 26 U.S.C. § 501(c)(3), for which it is said to have breached its contract with the United States (Count One), breached a charitable trust to the plaintiffs (Count Four) and violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395 (Count Six), by conditioning emergency medical care on the plaintiffs' ability to pay for it.

As to the plaintiffs' state law claims, several of them are premised on UPMC's alleged misconduct in charging the plaintiffs unreasonable costs for their medical care in breach of the parties' form contracts for admission and treatment (Count Two), such that UPMC is said to have breached its duty of good faith and fair dealing (Count Three) and been unjustly enriched (Count Seven). UPMC is also alleged to have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201.1, et seq. (Count Five), by charging the plaintiffs unreasonably high costs for medical care and utilizing harassing collection efforts to secure payment for such costs. The plaintiffs also assert a claim for injunctive relief to enjoin UPMC from its alleged misconduct (Count Eight). They also contend the defendants acted in concert (with a non-party to this suit) to breach UPMC's aforesaid contracts (Count Nine) and aided and abetted the breach of such contracts (Count Ten).

UPMC has moved to dismiss the complaint for failure to state a viable claim. In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v. Saper, 320 F.3d 373, 375 (3d Cir. 2003). As discussed below, the plaintiffs' purported federal claims in Counts One, Four and Six should be dismissed for failure to state a

3

claim upon which relief may be granted.

In Count One, the plaintiffs contend they are third party beneficiaries to an express or implied contract between UPMC and the United States Government, under which the Government granted UPMC tax exempt status under 26 U.S.C. § 501(c)(3), in exchange for UPMC agreeing to operate for charitable purposes and to provide mutually affordable medical care to uninsured patients without regard to its patients' ability to pay for such care. Claiming that UPMC breached its contract with the United States, the plaintiffs insist they did not receive the benefit of that agreement.

To the extent the plaintiffs rely on § 501(c) of the Tax Code to assert a breach of contract claim, Count One of the complaint fails. The United States Supreme Court has stated:

> [A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights ... This well established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.

National R.R. Passenger Corp. v. Atchsion, Topeka & Santa Fe Railway Co., 470 U.S. 451, 466 (1985). Here, the statute at issue, 26 U.S.C. § 501(c), contains no language indicating that Congress intended to create contract rights inuring to any citizen.

Rather, the statute merely identifies organizations which are exempt from federal income taxes. See, 26 U.S.C. §§ 501(a) and 501(c)(3). "The notion that the Federal Income Tax is contractual or otherwise consensual in nature is not only utterly without foundation but, ... has been repeatedly rejected by the courts." McLaughlin v. Comm'r of IRS, 832 F.2d 986, 987 (7th Cir. 1987). Indeed, the Supreme Court has long denied attempts to characterize a tax exemption

4

as a contract. See, <u>Stanislaus County v. San Joaquin & King's River Canal & Irrigation Co.</u>, 192 U.S. 201, 210 (1904), where the Court opined: "[N]o presumption exists in favor of a contract by a State to exempt lands from taxation, and ... every reasonable doubt should be resolved against it." Accord, <u>Jones v. Pepsi Cola Bottling Co.</u>, 822 F.Supp. 396, 404 (E.D.Mich. 1993) ("The act of applying for and being granted a tax exemption... does not involve the formation of any contractual relationship.").

Even assuming, arguendo, that a contract existed between the United States and UPMC by virtue of UPMC's status as a tax exempt entity, the plaintiffs have not pled facts that would permit them to enforce such a contract against UPMC. The Restatement (Second) of Contracts § 313(2) offers guidance on this issue and provides:

> § 313 Government Contracts
>
> (2) In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless
>
> (a) the terms of the promise provide for such liability; or
>
> (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Here, the plaintiffs have not pled facts that satisfy the above conditions. That is, they do not allege that the purported contract between UPMC and the United States afforded them a right to pursue a private third party breach of contract claim against UPMC. Clearly, such a scenario would be inconsistent with the language of the statute, as § 501(c)(3) of the Tax Code does not authorize such private third party claims. Rather, the tax code permits the Internal

5

Revenue Service ("IRS") to pursue civil actions against tax exempt organizations that contravene their tax exempt status, so as to collect back taxes or revoke an entity's tax exempt designation. 26 U.S.C. § 7428.

In addition, the plaintiffs have not alleged that the United States -- as promisee to UPMC's contract -- is subject to liability to them for damages caused by UPMC's actions. Since a third party breach of contract claim against UPMC is not consistent with the purpose of the tax code, the plaintiffs have not pled a viable third party beneficiary claim in Count One.

In Count Four, the plaintiffs contend UPMC breached its charitable trust obligations to them. According to the complaint, since UPMC obtained tax exempt status under § 501(c)(3), it created "a public charitable trust to provide mutually affordable medical care to its uninsured patients", which it has breached. (Complaint at ¶¶ 63, 65). This claim fails for several reasons.

First of all, the plaintiffs have no private right of action under § 501(c)(3), as the statute does not authorize private third party claims. Clearly, "private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). In cases as here, where a statute displays no intent to create a private right of action or a private remedy, "a cause of action does not exist and courts may not create one". Id. at 286-87.

Nonetheless, the plaintiffs contend that a "public charitable trust" was created by implication as a corollary to UPMC having obtained tax-exempt status. In support thereof, the plaintiffs rely on a 1956 IRS Revenue Ruling -- Rev.Rul. 56-185 -- which was cited by the United States Supreme Court as follows: "This Ruling established the position of the IRS "that the term 'charitable' in its legal sense and as used in § 501(c)(3) of the Code contemplates an

6

implied trust constituted for some public benefit." Simon v. Eastern Kentucky Welfare Rights, 426 U.S. 26, 29 (1976). As explained in Simon, the IRS modified Rev.Rul. 56-185 in 1969, when it issued Rev.Rul. 69-545. Id. at 30, 32.[1]

Certainly, the IRS' above-cited revenue rulings do not evince the creation of a charitable trust to which the plaintiffs are intended beneficiaries. Rather, the revenue rulings constitute IRS policy concerning an organization's tax-exempt status under § 501(c)(3). To the extent the plaintiffs argue that UPMC has not fulfilled its tax-exempt obligations, only the IRS (not the plaintiffs) may pursue a civil action against them. See, 26 U.S.C. § 7428.

In addition, the plaintiffs have not alleged that UPMC manifested an intention to create a charitable trust. The Restatement (Second) of Trusts § 351 provides:

> A charitable trust is created only if the settlor properly manifests
> an intention to create a charitable trust.

Here, there is no allegation that UPMC intended to create a charitable trust for the plaintiffs' benefit, and § 501(c)(3), by its terms, contains no language mandating that a tax exempt entity must establish a charitable trust.

Furthermore, even if the plaintiffs stated a valid claim for breach of a charitable trust (which they have not), they lack standing to enforce such a claim. The Restatement

---

1. With respect to Revenue Rulings 56-185 and 69-545, the Third Circuit Court of Appeals has stated: "Initially, the IRS required that nonprofit hospitals provide some free care in order to qualify for tax exemptions under § 501(c)(3). See, Rev.Rul. 56-185... This reflected an early view that hospitals and other health care institutions were exempt as 'charitable' if they both provided relief to the poor and promoted health (citation omitted). In 1969, however, the IRS modified that requirement and established an alternative 'community benefit' standard for hospitals seeking exempt status. Thus, in Rev.Rul. 69-545, the IRS modified Rev.Rul. 56-185 to remove 'the requirements relating to caring for patients without charge or at rates below cost.'" Geisinger Health Plan v. Com. of Internal Revenue, 985 F.2d 1210, 1216 (3d Cir. 1993).

7

(Second) of Trusts § 391 provides in relevant part:

> A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust...

"As a general rule, no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefitted by the trust". Bogert & Bogert, Law of Trusts & Trustees § 414 (Rev. 2d ed. 1960). Also see, comment d to § 391 of the Restatement (Second) of Trusts, which states: "The mere fact that as members of the public they benefit from the enforcement of the trust is not a sufficient ground to entitle them to sue".

Indeed, the Pennsylvania Supreme Court has held:

> A person whose only interest in compelling a charitable organization to perform a duty owed by that organization to the public is that interest held in common with other members of the public, cannot compel the performance of a duty owed by the organization to the public.

Valley Forge Historical Society v. Washington Mem'l. Chapel, 426 A.2d 1123, 1127 (Pa. 1981). Also see, In re McCune, 705 A.2d 861, 865 (Pa.Super 1997) (where the court stated: "a private party seeking to enforce a charitable trust must possess an interest in the litigation, which surpasses the common interest of the public in continuing to benefit from the trust."). Here, since the plaintiffs allege that "thousands of individual health care consumers" share their claims (Complaint at ¶¶ 34-35), the plaintiffs have no special interest in the enforcement of the alleged trust that is distinct from the general public. Thus, Count Four should be dismissed.

In Count Six, the plaintiffs contend that UPMC violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") by conditioning emergency medical treatment on their ability to pay for it. The plaintiffs do not specify which provision of EMTALA the

defendants violated, but they appear to base their claim on subsection (h) of the statute, which provides:

> A participating hospital <u>may not delay</u> provision of an appropriate medical screening examination... or ... medical examination and treatment... in order to inquire about the individual's method of payment or insurance status.

42 U.S.C. § 1395dd(h) (emphasis added).

Significantly, the plaintiffs do not complain that UPMC delayed providing them a medical screening or treatment. Instead, the plaintiffs allege that before UPMC provided them emergency medical screening or treatment, it first determined their ability to pay for such care, and required them to sign form contracts agreeing to pay UPMC in full for their care. (Complaint at ¶ 73). These allegations are insufficient to state a claim under EMTALA.

EMTALA does not forbid a hospital from inquiring into a patient's ability to pay for treatment, so long as its inquiry does not delay screening or treatment. In regulations promulgated by the Department of Health and Human Services concerning a hospital's treatment for emergency medical conditions, it is clear that:

> Hospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, <u>so long as that inquiry does not delay screening or treatment.</u>

42 C.F.R. § 489.24(d)(4)(iv) (emphasis added). Here, since the complaint contains no allegation that UPMC delayed screening or treating the plaintiffs, their EMTALA claim fails.

In addition, the EMTALA claim is deficient because the plaintiffs only incurred "economic injury and other damages" due to UPMC's acts (Complaint at ¶ 74). Under EMTALA's civil enforcement scheme, however, only those persons who suffer "personal harm"

9

as "a direct result of a participating hospital's [EMTALA] violation" may bring a claim against a hospital. EMTALA provides:

> Any individual who suffers <u>personal harm</u> as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A) (emphasis added).

Here, the plaintiffs do not allege they suffered "personal harm" as "a direct result of an [EMTALA] violation". Rather, they merely incurred "economic injury" because UMPC required them "to sign form contracts agreeing to pay [it] in full" for "undiscounted medical charges". (Complaint at ¶¶ 73-74). Based on the foregoing, the plaintiffs have failed to plead an actionable EMTALA claim, and Count Six should be dismissed.

In the absence of a viable federal claim, this Court should decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(c)(3). Therefore, it is recommended that the defendants' motion to dismiss the complaint be granted.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

ROBERT C. MITCHELL
United States Magistrate Judge

November 23 2004

10