UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 1:04-cv-11663-RCL

| | |
|---|---|
| DIANE HARRINGTON, On Behalf of  ) | |
| Herself and All Others Similarly Situated,  ) | PROPOSED REPLY OF DEFENDANTS |
| Plaintiff,  ) | BAYSTATE MEDICAL CENTER, INC. |
| ) | AND BAYSTATE HEALTH SYSTEM, |
| v.  ) | INC. TO PLAINTIFF'S OPPOSITION |
| ) | TO MOTION TO DISMISS AND TO |
| BAYSTATE MEDICAL CENTER, et al.  ) | PLAINTIFF'S NOTICE OF SUPPLE- |
| Defendants  ) | MENTAL AUTHORITY |

Defendants Baystate Medical Center, Inc. ("BMC") and Baystate Health System, Inc. ("BHS") (collectively "Baystate") submit this Proposed Reply to Plaintiff's Opposition to Motion to Dismiss of Defendants Baystate Medical Center, Inc. and Baystate Health Systems [*sic*], Inc. ("Plaintiff's Opposition") and to Plaintiff's Notice of Supplemental Authority.

   *1. Response to Plaintiff's Notice of Supplemental Authority and Decisions on Motions to Dismiss in Other Federal Cases*

On January 24, 2005, plaintiff filed Plaintiff's Notice of Supplemental Authority ("Notice"). Plaintiff's Notice was for the ostensible purpose of providing the Court with a copy of a recent decision by the Illinois trial court in the case of *Servedio v. Our Lady of the Resurrection Medical Center*, yet the Notice failed to attach a copy of the decision. (Notice, at 1). Instead, the Notice contains three pages of argument based solely on inapposite Illinois case law. This Court should give no weight to the Notice. The Illinois cases and statutes referenced in the *Servedio* decision have no corresponding Massachusetts analogues or they may be in conflict with existing, binding Massachusetts precedent.[1] The Notice does not address these issues, or explain why any of the referenced sections should be persuasive to this Court.

---

[1] By way of example only, the Notice references parts of the *Servedio* decision that rely on Illinois cases citing "prongs" of an unfair or deceptive practice claim that have no analogues in Massachusetts; an Illinois statute

The Notice also fails to reference the growing body of federal court decisions around the country that are *directly* relevant to Baystate's pending Motion to Dismiss. As this Court is aware, dozens of class action claims similar to the captioned case have been filed around the country. Plaintiff's Notice did not disclose the fact that many federal courts in other jurisdictions have, upon defendants' motions to dismiss, dismissed with prejudice plaintiffs' claims based on federal law or recommended that such claims be dismissed.[2] Indeed, one such court called the premise for such claims "patently untenable." *Ferguson v. Centura*, No. 04-m-1285 (D. Colo., Dec. 29, 2004). (Ex. 4 to Ex. A hereto). Another court stated that it "would require the court to make numerous jumps in logic that run counter to legal authority" to find that these claims are viable. *Lorens v. Catholic Health Partners*, No 1:04-CV-1151 (N.D. Ohio, Jan. 13, 2005) (Ex. 10 to Ex. A hereto). The claims dismissed by these courts are directly analogous to the claims asserted in the Complaint in this matter. Perhaps in recognition of the increasing (and overwhelming) body of case law finding a lack of merit to the federal claims asserted in similar cases, many plaintiffs in other nonprofit hospital cases have voluntarily dismissed some or all of

---

establishing a policy regarding health care for low income persons, for which there is no comparable Massachusetts statute; and contract cases that specifically address hospital charges, based on Illinois property tax statutes and Illinois statutory public policy, for which there is no corresponding Massachusetts precedent. (Notice, at 2-3). In addition, other sections of the *Servedio* decision not cited by plaintiff discuss aspects of Illinois case law that are not consonant with Massachusetts law, such as whether billing for medical services constitutes "trade or commerce" within the meaning of the statute.

[2] Exhibit A to this Proposed Reply contains a list of the cases to date in which federal district courts around the country have ruled on the defendant hospital/hospital system's motion to dismiss. Copies of these decisions are attached to Exhibit A in separately numbered exhibits. The undersigned is not aware of any decisions denying the defendant hospital's motion to dismiss the federal claims, although one court did deny the defendant American Hospital Association's motion to dismiss, *Maldonado v. Ochsner Clinic Fdn et al.*, No. 04-2635 (E.D. La. Dec. 7, 2004) (copy not attached hereto). This list has been compiled to the best of the undersigned's knowledge, information and belief. However, given the number of cases that have been filed around the country and the pace at which decisions are currently being reached, there may be other decisions on motions to dismiss of which the undersigned is not currently aware.

their claims.³ Plaintiff is, or should be, well aware of most, if not all, of these decisions, as some of the counsel listed on plaintiff's Complaint and on the Notice in this case are also counsel of record in at least some of these other cases. The decisions attached to this Reply from the other nonprofit hospital cases clearly support the arguments made by BMC and BHS in their motion to dismiss and in this Reply that plaintiff's federal claims are without merit and should be dismissed with prejudice.⁴

    **2.**    ***Res Judicata*** ⁵

    *a.*    <u>*Res Judicata Can be Raised by Motion to Dismiss*</u>: The case relied on by plaintiff (*Boyd v. Jamaica Plain Co-Op. Bank*, 7 Mass. App. Ct. 153 (1979)) does not support the proposition that *res judicata* can not be grounds for granting a motion to dismiss in this case. Plaintiff's Opposition, p. 3. The court in that case actually affirmed the allowance of a motion to dismiss based on *res judicata*. *Boyd*, 7 Mass. App. Ct. at 156-57.⁶

---

    ³ Exhibit B to this Proposed Reply contains a list of cases in which the plaintiffs have voluntarily dismissed some or all of their claims. As with Exhibit A, this list has been compiled to the best of the undersigned's knowledge, information and belief. However, the number of cases around the country, and the pace at which plaintiffs are filing motions to voluntarily dismiss their claims, makes it difficult to say with certainty that the list is complete.

    ⁴ The real remaining issue in this case, therefore, is whether plaintiff's state law claims should be dismissed with prejudice. In filing the Notice, plaintiff appears to be asking this Court to address the state claims as well as the federal claims. BMC and BHS have requested dismissal of all claims asserted against them, and have fully briefed their arguments for dismissal of the state and federal claims. For the reasons stated in the Memorandum in Support of Motion to Dismiss of Baystate Medical Center, Inc. and Baystate Health System, Inc ("Memorandum in Support of Motion to Dismiss") and in this Reply, BMC and BHS ask this Court to dismiss with prejudice *all* claims asserted against them.

    ⁵ In *Kizzire, et al. v. Baptist Health System, Inc.*, et al., CV-04-HS-1247-S (N.D Ala. Oct. 21, 2004), the court granted defendant's motion to dismiss primarily on the basis of *res judicata*. (copy attached as Ex. 1 to Ex. A hereto).

    ⁶ The court in *Boyd* noted that "in certain circumstances the defense of former adjudication can be presented in a rule 12(b)(6) context where all of the materials necessary for the decision are official records available to the judge ruling on the motion and not subject to dispute, and can be read together with the complaint." *Boyd*, 7 Mass. App. Ct. at 157 n.7 (citations omitted). *See also* note 5, *supra*.

  b. *Full Measure of Relief:* Plaintiff could have obtained, by way of counterclaim, the full measure of relief she seeks in this case in the prior collection action. Under the "one-trial system" in place in Hampden County, Massachusetts, since April 1, 2002 (St. 2002, c. 70), the Springfield District Court has extensive equity jurisdiction in cases where money damages are sought. St. 1996, c. 358, § 3. See also St. 2004, c. 252. A "District Court, subject to the one trial system, may decide a claim which would normally fall within the exclusive jurisdiction of the Superior Court, as long as at least one other claim in the same action is within the traditional jurisdiction of the District Court." *Ravnikar v. Bogojavlensky* 438 Mass. 627, 634 (2003). This equitable power includes the authority to grant injunctive relief under M.G.L. c. 93A, § 9. *Herman v. The Home Depot,* 436 Mass. 210, 213-215 (2002).

  c. *Identity of Parties:* There is identity of the parties in this and the prior collection action. Plaintiff was clearly a party to the previous action, as was BMC.[7] It is therefore entirely appropriate for BMC to raise the issue of claim preclusion. There is a "close and significant relationship" between BMC and BHS; as is explained in the Corporate Disclosure Statement filed with this Court, BHS is the sole member of BMC. Further, plaintiff essentially treats them as one entity. *See* Complaint, ¶1 and *passim* (replete with references to BMC and BHS collectively as the "Baystate Health Defendants"). Thus, it is appropriate for BHS to raise claim preclusion in this subsequent action. *See Roche v. Roche*, 22 Mass. App. Ct. 306, 309 (1986)

---

[7] Baystate has attached certified copies of the court records from the collection action to eliminate any question as to substance of that action. *See* Exhibit C hereto. Items of unquestioned authenticity referred to in the complaint and "central" or "integral" to the pleader's claim for relief are not considered matters outside of the pleadings. This Court may take judicial notice of such items, and they may be considered on a motion to dismiss without converting the motion to one for summary judgment. 5C C. Wright & A. Miller, *Federal Practice and Procedure*, § 1366 (2004 ed.). The collection action and judgment are clearly referred to and relied upon by plaintiff in the Complaint in this matter, and the authenticity of these certified documents can not reasonably be questioned. See, e.g., Complaint, ¶ 47. The Court, therefore, may consider the documents attached hereto at Exhibit C without converting the motion to dismiss to a motion for summary judgment. *See Perry v. New Eng. Bus. Serv., Inc.* 347 F.3d 343, 345 n. 2 (1st Cir. 2003) (when complaint's factual allegations are inextricably linked and dependent upon a document whose authenticity is not challenged, that document effectively merges with pleadings and can be reviewed on motion to dismiss).

("person who is not a party to the prior action but whose interest is represented by a party may have the benefit of the judgment in the prior case.") (citations omitted). *Cf. Mancuso v. Kinchla*, 60 Mass. App. Ct. 558, 568 (2004) (federal law of *res judicata* permits person who was not named party in prior action to raise defense of claim preclusion to bar plaintiffs' claims).

    d.  *Default Judgment*:  Contrary to plaintiff's assertion, *In re Brennan* **supports** the preclusive effect of a default judgment.  The court in that case distinguished claim preclusion from issue preclusion (in which an issue must be actually litigated), and held that the debtor was barred by claim preclusion from raising defenses that should have been raised in the prior state court action in which the default entered.  *In re Brennan*, 275 B.R. 172, 176-77 (Bankr. D. Mass. 2002).  In the present case, plaintiff has alleged fraud in the setting of the rates.  Complaint, ¶ 110; Plaintiff's Opposition, p. 4.  She has alleged no fraud or collusion "in the procurement of the default judgment" against her.  *In re Brennan*, 275 B.R. at 177.

    e.  *Identity of Claims:*  The collection action and the present action indisputably arise from the same nucleus of facts, namely, plaintiff's indebtedness resulting from treatment obtained at Baystate; and Baystate's unsuccessful efforts to obtain payment for the medical services provided, culminating in filing suit against plaintiff to collect the debt. Complaint, ¶¶45-47. *See Mancuso*, 60 Mass. App. Ct. at 570-72 (claims of fraud and c. 93A violations "unquestionably arise from the same nucleus of operative facts as those that were or could have been adjudicated in the [prior] suit").  Plaintiff's allegation of an implied contract based on tax-exempt status is at issue in this case only because plaintiff challenges the amount of medical debt she incurred at Baystate.  "[A] single transaction or series of transactions can -- and often does -- give rise to a multiplicity of claims."  *Id.* at 571 (citation and internal quotes omitted).

### 3. *Count One –Breach of Contract*

a. <u>*Indigent v. Uninsured:*</u> Even if not *res judicata*, there is simply no legal basis for the claim plaintiff asserts in Count One. Plaintiff argues that a "hospital's application for and receipt of tax-exempt status pursuant to 26 U.S.C. § 501(c)(3) creates a contract that obligates the hospital to provide services for the benefit of the **medically indigent.**" Plaintiff's Opposition, p. 7 (emphasis added). One of the many flaws in this argument is that plaintiff alleges that she, and the class she seeks to represent, are **"uninsured",** <u>not</u> "**medically indigent**." *See, e.g.,* Complaint, ¶¶ 3, 19, 44 and 52 (emphasis added). While the two groups may overlap, they are distinctly different. Plaintiff does not allege that Baystate does not provide free medical care to indigent patients, or that plaintiff applied for and was denied free care. Instead, plaintiff asserts in her complaint that Baystate was required to limit charges to the uninsured (without regard to their financial assets or income), and to refrain from using lawful collection practices. *See, e.g.,* Complaint, ¶¶ 28-31, 66-69. No legal authority holds that a tax-exempt hospital must (or even should) grant special benefits to patients merely because of their insurance status.

b. <u>*No Contract Exists*</u>: The fundamental defect in this claim is that there is no contract. No court has ever found a contract to exist based on an entity's tax-exempt status. The cases decided under the Hill-Burton Act (*see* 42 U.S.C. 291, *et seq*; 42 U.S.C., 300(q), *et seq*) are wholly distinguishable and do not support, even by analogy, plaintiff's theory. Under the Hill-Burton Act, which is not a tax law, federal funds are available to assist with programs for the construction and modernization of hospitals and other medical facilities. To obtain such funds, a hospital must file an application with a written assurance promising to provide a minimum amount of uncompensated care, to be determined by a formula tied to the hospital's finances or the amount of the federal grant. *See* e.g., 42 CFR § 53.111, *et seq*; 42 CFR § 124.1, *et seq*; 42

CFR 124.501, *et seq;* 42 CFR § 124.601, *et seq*. When such funds are granted, the hospital and the federal government sign agreements, which, among other things, specify the amount of uncompensated care the hospital is required to provide in exchange for the federal funds. *See Euresti v. Stenner*, 458 F.2d 1115, 1118 (10th Cir. 1972) (finding existence of enforceable contract in Hill-Burton context because the hospital's "obligation is set out specifically in the closing papers signed by the hospital, the State, and federal authorities.")  Tax-exempt status under 501(c)(3), on the other hand, arises by operation of law; without any agreement or requirement to charge any specific prices for medical services, to provide any particular type of charitable service, or to provide any specific amount of uncompensated care. IRS Rev. Ruling 69-545.[8] To be tax-exempt, an organization must operate for tax-exempt purposes, but the organization may freely choose which of those goals it will pursue. With respect to non-profit hospitals, "the promotion of health . . . is one of the purposes of the general law of charity that is deemed beneficial to the community as a whole even though the class of beneficiaries eligible to receive a direct benefit from its activities does not include all members of the community, such as indigent members of the community, provided that the class is not so small that its relief is not of benefit to the community." IRS Rev-Ruling 69-545. For example, "[b]y operating an emergency room open to all persons and by providing hospital care for all those persons in the community able to pay the cost thereof either directly or through third party reimbursement, [a hospital] is promoting the health of a class of persons that is broad enough to benefit the community." *Id*. "A hospital may also benefit the community by serving those who pay their bills through public programs such as Medicaid or Medicare." *Geisinger Health Plan v.*

---

[8] Who, under plaintiff's theory, would determine the appropriate price for hospital services and the required amount of uncompensated care? The Court? Plaintiff's Counsel?

*Comm'r.*, 985 F.2d 1210, 1217 (3d Cir. 1993).[9]  There simply is no requirement that hospitals, in order to qualify for tax-exempt status, must enact the specific policies with respect to the uninsured that plaintiff demands in her Complaint.[10]

    c.    <u>*No Standing as Third-Party Beneficiary:*</u>  It has long been the rule that members of the public – even those who would benefit from performance of the government contract – have "no private right of action." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 231 (1912).  A third-party beneficiary may have standing to sue on a government contract only if it demonstrates a specific intent to benefit that person, and the cases cited in Plaintiff's Opposition (at p. 11) show just how narrow that exception is.  None of these cases holds that a broad class of beneficiaries has standing to sue.  In the *Schuerman* case cited in Plaintiff's Opposition (at p.11), the contract at issue was made for the "specific benefit of plaintiffs and no one else," and the documents "identif[ied] plaintiffs." *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (Fed. Cl. 1994).  Similarly, *Montana v. United States* confirmed the usual rule that "when members of the public bring suit against promisors who contract with the government to render a public service," they "are considered to be incidental beneficiaries unless they can show a direct right to compensation." *Montana v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir.

---

[9] *See also IHC Health Plans, Inc. v. Comm'r.*, 325 F.3d 1188, 1198 (10th Cir. 2003) ("the primary way in which health-care providers advance government-funded endeavors is the servicing of the Medicaid and Medicare populations").

[10] Plaintiff relies heavily on an IRS "Field Service Advice Memorandum," which, if it stands for anything, stands for the unremarkable proposition that a hospital does not provide a community benefit merely by stating that its policy is to provide health care services to the indigent, unless that policy is actually implemented.  Moreover, any reliance on the Field Service Advice Memorandum is misplaced, since it states that it "is not to be used or cited as precedent."  IRS Field Service Advice 200110030 (March 9, 2001).  IRS revenue rulings, on the other hand, are authoritative and courts accord them deference. *IHC Health Plans, Inc.*, 325 F.3d at 1194 n.11.  The revenue ruling applicable here explicitly states that hospitals can provide adequate community benefits even if "indigent members of the community" are not "eligible to receive a direct benefit."  IRS Rev. Ruling 69-545.  Indeed, an "organization may be exempt if it is organized and operated exclusively for **any** one or more [tax-exempt] purposes." 26 CFR § 1.501(c)(3)-1(d)(1)(iii) (emphasis added). *See also* 26 CFR § 1.501(c)(3)-1(a)(2).  If an organization qualifies, "exemption will be granted . . . regardless of the purpose or purposes specified in its application for exemption."  26 CFR § 1.501(c)(3)-1(d)(iii).

1997); *see also id.* at 1276 (finding that plaintiff did not have third-party standing). Third-party standing was at issue at all in *Montana* only because the contract specifically stated that the government "may be subject to the claims of third parties." *Id.* at 1272.[11]

### 4. Count Two – Breach of Contract

Plaintiff's Opposition ignores completely Baystate's argument that plaintiff herself failed to perform the alleged contract. Despite her *ex post facto* claim that it can be "inferred" from the Complaint that Baystate received some payment from her, she does not, in fact, claim that she performed her obligations under the alleged contract. Plaintiff's Opposition, p. 20, n.21. In fact, there is no allegation that Baystate did not perform the alleged contract – plaintiff admits she received the requested medical care. The only issue plaintiff raises in her complaint is what <u>she</u> must do to perform, which is far different from alleging a breach of contract by Baystate.[12]

---

[11] Plaintiff's Opposition cites a Seventh Circuit case granting current tenants of a Section 8 housing project standing as third-party beneficiaries to a contract with HUD. *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981). This case is inapposite. First, it is the Internal Revenue Code, not the National Housing Act, on which plaintiff relies in this case. Second, a later Seventh Circuit case limited the holding in *Holbrook*, finding that applicants for subsidized housing have no standing to sue on such contracts. *Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir. 1987) Third, the First Circuit has ruled that certain regulatory agreements between HUD and landlords did not "disclose an intent to benefit the tenants, except as they might be incidental beneficiaries." *Falzarano v. United States*, 607 F.2d 506, 511 (1st Cir. 1979). *See also Boston Public Housing Tenants' Policy Council, Inc. v. Lynn*, 388 F. Supp. 493, 496 (D. Mass. 1974) (finding that tenants were not third-party beneficiaries of contract between HUD and local housing authority)

[12] Plaintiff's argument that the Court "must find that Baystate received some payment from the plaintiff"(Plaintiff's Opposition, p. 20, n.21) is frivolous. First, the Complaint does not allege that plaintiff paid Baystate anything, and "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *O'Brien v. Di Grazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976). Second, the inferences to be drawn by the Court in assessing a complaint on a motion to dismiss must be reasonable. *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (court will "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets'")(citation omitted); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991) (court "has no obligation to take matters on blind faith . . .."). It is not reasonable here to infer that plaintiff paid Baystate approximately $17 merely because she alleges that Baystate attempted "to collect over three thousand dollars in medical bills" but "obtained judgment against" her "in the amount of $2,983." Complaint, ¶¶ 46-47. Any number of reasons could account for the difference. Indeed, an "inquiry reasonable under the circumstances" should have revealed, before the Complaint was filed (and certainly before Plaintiff's Opposition was filed), whether plaintiff paid any money to Baystate. Fed. R. Civ. P. 11(b).

### 5. Count Five -- M.G.L. c. 93A

Among other failings with respect to Count Five, plaintiff does not explain how billing for medical services and attempting to collect those bills is not "incidental to [the] hospital's primary function of providing medical services." *All Seasons Servs. v. Comm'r of Health & Hosps.,* 416 Mass. 269, 271 (1993). Indeed, billing and collection are necessary parts of Baystate's primary function of providing medical services.

### 6. Count Six --EMTALA

Plaintiff completely ignores the fact that her EMTALA claim is barred by the applicable statute of limitations. Moreover, merely requiring patients to sign an intake form does not violate EMTALA. *See* 42 CFR 489.24(d)(4)(iv). Plaintiff does not identify a single case where a patient prevailed on an EMTALA claim after having received timely and appropriate medical screening and stabilization. Nor has plaintiff alleged personal harm as the "direct result" of the alleged EMTALA violation, as required by 42 U.S.C. § 1395dd(d)(2)(A). Plaintiff alleges that she was overcharged and pursued aggressively to pay the bill. Any such injury clearly was not the direct result of any alleged delay in her medical evaluation and treatment. *See Kizzire, et al. v. Baptist Health System, Inc.*, et al., CV-04-HS-1247-S (N.D Ala. Oct. 21, 2004) (copy attached as Ex. 1 to Ex. A hereto).

### 7. Count Seven -- Unjust Enrichment/Constructive Trust

Plaintiff's argument (at Plaintiff's Opposition, p. 20) that the Court must infer from the Complaint that Baystate received at least partial payment is frivolous. See note 12, *supra.* In any event, any payment would have been insignificant (approximately $17), and would not affect

Baystate's argument that Baystate has not been "unjustly enriched" because it has not been paid for the medical debt incurred.[13]

### 8. *Count Nine -- Civil Conspiracy*

Notwithstanding plaintiff's strained reading of the Complaint (Plaintiff's Opposition, p. 21), the Complaint still fails to allege any "particular power of coercion" over plaintiff resulting from the alleged acts of Baystate and AHA. There is nothing in plaintiff's Complaint that gives the acts of Baystate and the AHA "in combination any greater or different tortious quality than would be ascribed to the same acts if performed by separate individuals only." *Fleming v. Dane*, 304 Mass. 46, 51 (1939). In addition, plaintiff has failed to rebut Baystate's assertions that no statute or common law prevents Baystate from providing discounts to groups of insured patients, or from attempting to recoup payment from uninsured patients who do not pay for the treatments they receive. Memorandum in Support of Motion to Dismiss, p. 16. Accordingly, even under plaintiff's so-called "second type" of civil conspiracy theory (Plaintiff's Opposition, p. 20-21), there was no "breach of duty" by any defendant in this case, and no defendant provided "substantial assistance" to another "with knowledge" of any tortuous plan. The mere allegation that the defendants conspired with respect to the plaintiff, standing by itself, does not constitute grounds for relief. *Neustadt v. Employers Liability Assur. Corp.,* 303 Mass. 321, 325 (1939); *Johnson v. East Boston Sav. Bank,* 290 Mass. 441, 448 (1935). If there is no tort set out as to a single defendant, the charge of conspiracy adds nothing unless there is a showing of a wrongful act in addition to the parties' concerted action. *Johnson,* 290 Mass. at 448.

---

[13] As noted in the Memorandum in Support of Motion to Dismiss, plaintiff has no legitimate claim to the value of Baystate's tax savings, as she did not confer this benefit on Baystate. Memorandum in Support of Motion to Dismiss, p. 14 n.15.

### 9. Count Eleven -- Federal Debt Collection Practices Act ("FDCPA")

Plaintiff has failed completely to rebut the case law cited by Baystate with respect to the FDCPA. Congress explicitly exempted creditors collecting in their own name from liability under the FDCPA. 15 USC §§ 1692a(6), 1692e, 1692k(a). Congress determined that "[u]nlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the customer's opinion of them." Sen. Rep. No. 95-382, at 2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. Plaintiff argues, without citation, that she can evade this Congressional policy by alleging that Baystate "conspired" with its debt collectors. Plaintiff's Opposition, pp. 22. It would not, however, "accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable . . ." *Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999) (*quoting Wadlington v. Credit Acceptance Corp.* 76 F3d 103, 108 (6th Cir. 1996)). *See also Havens-Tobias v. Eagle*, 127 F. Supp. 2d 889, 898 (S.D. Ohio 2001) (stating that defendant was not a "debt collector" as defined by the FDCPA, but rather was a creditor of plaintiffs, "and, therefore, cannot be held liable, vicariously or otherwise, under the FDCPA.")

### 10. Count Twelve – Section 1983

Plaintiff attempts to evade settled precedent by asserting that Baystate should be viewed as a state actor because it allegedly misinterpreted federal and state law. Plaintiff's Opposition, pp. 23-24. The cases cited by plaintiff are simply not analogous, as they concerned statutes that directly related to the allegedly discriminatory action and, in effect, compelled it. *See, e.g., Doe v. Charleston Area Med. Ctr.*, 529 F.2d 638, 644 (4th Cir. 1975)(finding state action in hospital's anti-abortion policy based on specific state statute making it a felony to perform an abortion

other than to save the life of mother and child)(cited in Plaintiff's Opposition, at 24). In contrast, in this case plaintiff does not point to a specific regulation or statute that essentially compelled the allegedly discriminatory conduct. Instead, she merely cites to an American Hospital Association publication that refers generally to Medicare billing rules in support of the need for a uniform pricing structure -- hardly a discriminatory action. Complaint, ¶144. Nowhere does she allege "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, (2001).[14] Moreover, plaintiff has still failed to identify what "rights secured by the Constitution and laws of the United States" have allegedly been denied to her and other uninsured patients. Complaint, ¶ 147. Plaintiff's Equal Protection argument appears to be that uninsured patients are discouraged from obtaining medical care because of concern about having to pay undiscounted rates.[15] She does not allege actual deprivation of a civil right, which is required to assert an Equal Protection claim. Further, she

---

[14] "[G]overnment regulation, even extensive regulation, and the receipt of federal funds, such as Medicare, Medicaid and Hill-Burton funds, are insufficient to establish that a hospital or other entity acted under color of state law." *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994)(citing cases).

[15] Again, plaintiff appears to believe that the terms "indigent" and "uninsured" are interchangeable. As was explained above regarding Count One, they are not.

has failed to refute the argument that she was not deprived of medical care, as there is no dispute that she obtained medical care at Baystate.

                                             Respectfully submitted,
                                             The Defendants
                                             Baystate Medical Center, Inc.
                                             and Baystate Health System, Inc.
                                             By Their Attorneys:

                                             ___s/ Carol E. Kamm_____
                                             Francis D. Dibble, Jr.
                                               BBO No. 123220
                                             J. Michael Scully
                                               BBO No. 555460
                                             Carol E. Kamm
                                               BBO No. 559252
                                             Bulkley, Richardson and Gelinas, LLP
                                             1500 Main Street, Suite 2700
                                             Springfield, MA  01115
                                             Tel.:  (413) 781-2820
                                             Fax:  (413) 272-6804

Dated:  February 3, 2005

287877