IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DARLENE DALY, on behalf of herself
and all others similarly situated                                    PLAINTIFFS

vs.                          CASE NO. 4:04CV789GH

BAPTIST HEALTH, ET AL.                                              DEFENDANTS

## JUDGMENT

In accordance with the Order entered this date, judgment is entered in favor of defendants; plaintiff's claim for breach of contract (Count I) and breach of charitable trust (Count Four) are hereby dismissed with prejudice. The remaining counts are dismissed with prejudice to the extent they rely on the existence of an enforceable contract based on Baptist's § 501(c)(3) status. To the extent they do not, they are hereby dismissed without prejudice.

IT IS SO ORDERED this 31 day of January, 2005.

*[signature]*
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON 1-31-05 BY ___

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 3 1 2005

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

DARLENE DALY, on behalf of herself
and all others similarly situated                                    PLAINTIFFS

                    CASE NO: 4:04CV789GH
vs.
t
BAPTIST HEALTH, ET AL.                                              DEFENDANTS

## ORDER

Plaintiff received medical treatment at Baptist Health ("Baptist"), a charitable non-profit facility. She brings this action alleging that Baptist breached a contract, allegedly formed by Baptist's federal tax exemption granted pursuant to § 501(c)(3) of the Internal Revenue Code, as well as state and local exemptions, by failing to provide mutually affordable medical care to all its uninsured patients, by charging its uninsured patients inflated costs for medical care, and for pursuing outstanding medical debts from its uninsured patients through aggressive collection efforts. Plaintiff alleges that she is a third party beneficiary of the alleged contract and seeks to enforce its terms. She brings this action on behalf of herself and all persons who received any form of healthcare treatment at Baptist from August 11, 1999 through the present and who were uninsured for the services received at the time of treatment.[1]

Plaintiff asserts claims against Baptist for third party breach of contract (Count

---

[1] Baptist has filed a motion for partial summary judgment contending that plaintiff was insured at the time she received treatment. Plaintiff has requested leave to file an amended complaint seeking to add an additional representative who is alleged not to have been insured at the time. Because the Court finds that plaintiff has failed to state a claim, the proposed amendment would be futile and the motion is therefore denied. *MM&S Financial, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.* 364 F.3d 908, 910 (8th Cir. 2004)("When amending a pleading would be futile, a court will not grant leave to amend.")

-1-

One), breach of an express contract based on a form plaintiff signed upon admittance to the hospital (Count Two), breach of duty of good faith and fair dealing (Count Three), breach of charitable trust (Count Four), violation of the Arkansas Deceptive Trade Practices Act ("ADTPA") (Count Five), unjust enrichment (Count Six), civil conspiracy/concert of action (Count Seven) and aiding and abetting (Count Eight).

American Hospital Association ("AHA") is a national trade association for the nonprofit hospital industry. Plaintiff brings claims against the AHA for civil conspiracy and aiding and abetting. In Count Seven (civil conspiracy/concert of action) plaintiff alleges that AHA conspired and acted in concert with Baptist to wrongfully retain its tax exempt status, to charge and collect inflated rates for medical care, and for concealing and misrepresenting the true amount of charity care Baptist provides to plaintiff and the class. Plaintiff further alleges that AHA conspired and acted in concert with Baptist to violate the ADTPA and to breach Baptist's duty of good faith and fair dealing. In Count Eight (Aiding and Abetting), plaintiff alleges that AHA aided and abetted Baptist in the various alleged violations.

Both Baptist and AHA have filed motions to dismiss. In ruling on a 12(b)(6) motion to dismiss, the Court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Crumpley-Patterson v. Trinity Lutheran Hosp.* 388 F.3d 588, 590 (8th Cir. 2004) (citations omitted).

This case is one of dozens of lawsuits filed against nonprofit hospitals alleging unlawful billing practices for services rendered to the uninsured. *See* Vol. 231, *New York Law Journal* (December 28, 2004) ("As of Nov. 22, 2004 at least 70 charity care lawsuits have been filed in various federal courts throughout the United States.") A few courts have address claims similar to those raised in this action; thus, the Court does not write on a blank page.

In *Darr v. Sutter Health*, 2004 WL 2873068 (N.D. Cal. Nov. 30, 2004), the court

consolidated two similar cases brought by plaintiffs who were uninsured at the time of their treatment. The plaintiffs brought the following claims: (1) breach of contract based on their status as third-party beneficiaries of an agreement between the hospital and the United States government pursuant to § 501(c)(3); (2) breach of an express and/or implied contract not to charge plaintiff more than a fair and reasonable charge for medical care; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"); (4) breach of the duty of good faith and fair dealing; (5) breach of a charitable trust allegedly created when the hospital accepted federal tax exemptions under Section 501(c)(3); (6) violation of California statutes including that the hospital's conduct constitutes fraudulent business practices; (7) violation of the California Consumers Legal Remedies Act; and (8) unjust enrichment.

In addressing the plaintiffs' first breach of contract claim, the court quoted the following language from *Nat'l R. R. Passenger Corp. v. Atchinson, Topeka and Santa Fe Ry. Co.*, 470 U.S. 465-66 (1985):

> For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). *See also Rector of Christ Church v. County of Philadelphia*, 24 How. 300, 302, 16 L.Ed. 602 (1861) ("Such an interpretation is not to be favored"). This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 104-105, 58 S.Ct. 443, 447-448, 82 L.Ed. 685 (1938). Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. Indeed, " '[t]he continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.' " *Keefe v. Clark*, 322 U.S. 393, 397, 64 S.Ct. 1072, 1074, 88 L.Ed. 1346 (1944) (quoting *Charles River Bridge v. Warren Bridge*, 11 Pet. 420, 548, 9 L.Ed. 773 (1837)). Thus, the party asserting the creation of a contract must overcome this well-founded presumption.

The court found that the plaintiffs had failed to point to any "contractual provisions appearing within Section 501(c)(3), [or] any language within the statute that defines the contours of a contractual obligation." Thus, the court found that

plaintiffs had failed to establish the existence of a contractual obligation.

The court rejected the plaintiffs' reliance on the Hill-Burton Act, 42 U.S.C. § 291(c) to demonstrate the existence of an implied right of action, finding that "the Hill-Burton Act is not a tax statute, but a series of spending grants regulated by the Surgeon General. As such a private party seeking to enforce Hill-Burton obligations is not barred by the multiple provisions of the tax code limiting standing to the IRS and the taxpayer whose tax burden is at issue. Nor are the instant plaintiffs suing under the Hill-Burton Act." *Id.* at 4.

The court also rejected an alternative theory that the plaintiffs had standing to assert third-party beneficiary claims. Additionally the court found that the plaintiffs failed to state a claim for violation of the FDCPA. With regard to the remaining claims, the court found that they were for violations of state law and the court declined to exercise supplemental jurisdiction. *Id.* at 6.

Subsequent to *Darr*, the Eastern District of Michigan considered a similar action. In *Burton v. William Beaumont Hosp.*, 2004 WL 2790624, ----F. Supp. 2d ----, (E.D. Mich. December 4, 2004), the plaintiffs asserted claims against the hospital for (1) third-party breach of contract; (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable trust; (5) violation of the Michigan Consumer Protection Act (MCPA); (6) violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd; (7) unjust enrichment/constructive trust; (8) injunctive/declaratory relief; (9) violation of FDCPA; (10) violation of 42 U.S.C. § 1983 (alleging violation of the Fifth and Fourteenth Amendment of the United States Constitution; (11) civil conspiracy/concert of action; and (12) aiding and abetting. As in this case, the plaintiffs brought claims against the AHA for civil conspiracy/concert of action and aiding and abetting.

The court found that plaintiffs' claims for third-party breach of contract, breach of charitable trust, violations of the EMTALA and the FDCPA, and their § 1983 claim

all arose under federal law.[2]

With regard to the third-party breach of contract claim, the court found that cases under the Hill-Burton Act were not analogous. It found that the hospital was not contractually obligated to provide "mutually affordable medical care" as a § 501(c)(3) organization, and therefore the plaintiffs could not maintain an action for third-party breach of contract. The court rejected the plaintiffs' assertion that they had an implied right of action under § 501(c)(3). "In sum, the record and case law demonstrate that the [plaintiffs] cannot prove a set of facts to support their claim for third-party breach of contract because there is no legal authority to support the notion that a theory of liability exists based on [the hospital's] status as a § 501(c)(3) organization." *Id.*

The court, in discussing the plaintiffs' contention that they are the intended beneficiaries of an alleged "public charitable trust to provide mutually affordable medical care to its uninsured patients by virtue of its § 501(c)(3) status," noted that the count is premised on the existence of a private right of action to enforce an alleged contract flowing from the fact that the hospital is a § 501(c)(3) organization. Because the court found that there was no such right, this claim must fail. The court, alternatively found that even if the plaintiffs were able to establish the existence of a charitable trust, the plaintiffs would not be the proper parties to bring an action for breach.

The public is the beneficiary of a charitable trust and individuals who

---

[2]There appears to be some difference as to what claims arise under federal law and what claims are brought under state law. The court in *Darr* considered the plaintiffs' breach of charitable trust claim to be a state claim. In a recommended disposition by United States Magistrate Judge Robert Mitchell in *Amato v. UPMC*, No. 04-0125 (W. D. Pa. Nov. 23, 2004), the Magistrate Judge found the breach of charitable trust to be a federal claim. (See Exhibit A to Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss, docket entry 32).

The parties in this action have not addressed the issue of the Court's subject-matter jurisdiction or attempted to delineate whether the claims are state or federal. In the interest of ensuring that all federal claims are addressed, the Court will also consider the merits of the breach of charitable trust claim. *See infra.*

> may be among those to gain from its operation can be described as beneficiaries in a loose sense only; yet this phraseology is often found in judicial and other discussions. As a general rule no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust. The courts usually require that suits for enforcement be brought by the established representative of the charity, the Attorney General, so that the trustees may not be vexed by frequent suits, possibly based on an inadequate investigation and brought by irresponsible parties, and so that the courts may not find their calendars clogged with an unnecessarily large amount of litigation

George Gleason Bogert, *Bogert's Trusts and Trustees*, § 414 (2004).

The Court has considered the arguments presented in this case, along with the relevant case law. With regard to plaintiff's breach of contract claim (Count One), the Court finds that plaintiff has failed to state a claim. The language of § 501(c)(3) does not disclose any congressional intention to have the United States enter into a private contractual agreement with hospitals receiving federal income tax exemptions. The statute merely identifies the qualifications for tax exempt status of certain organizations.[3] "The act of applying for and being granted a tax exemption ... does not involve the formation of any contractual relationship." *Jones v. Pepsi Cola Bottling Co., Inc.*, 822 F.Supp. 396, 404 (E.D.Mich 1993).

Baptist's tax-exempt status does not constitute a contract. "'[E]xemptions from

---

[3] Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3)

income tax are a matter of legislative grace.'" *IHC Health Plans, Inc. v. Comm'r of Internal Revenue*, 325 F.3d 1188, 1193-1194 (10th Cir. 2003) (quoting *Mutual Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 794 (10th Cir.1985)). In the absence of an enforceable contract, plaintiff cannot state a claim for breach of contract based on her status as a third party beneficiary.[4]

Plaintiff also contends that Baptist has breach a charitable trust that was created when it accepted federal, state, and local tax exemptions.

Express trusts are created "by the direct and positive act of the parties manifested by some instrument in writing whether by deed or otherwise." *Cox v. Wasson*, 187 Ark. 452, 457 (1933) (citation omitted). Under Arkansas law, "[t]he charitable trust must be sufficiently definite as to designate a general class of beneficiaries of the charitable trust, but may leave the trustees with the duty and power to select, at their discretion, the specific beneficiaries." *Lancaster v. Merchants Nat'l Bank of Fort Smith, Ark.* 961 F.2d 713, 716 (8th Cir. 1992)

Here, no writing has been executed, no trust property has been identified, no trustee has been named and no beneficiaries have been designated. "A charitable trust is created only if the settlor properly manifests an intention to create a charitable trust." *Restatement (Second) of Trusts*, §§ 348, 351. Plaintiff has failed to make the requisite showing that a charitable trust has been created. Alternatively, as discussed above, plaintiff is not the proper person to bring an action for breach. *See State ex rel. Attorney General v. Van Burn Sch. Dist.*, 191 Ark. 1096 (1936)(Attorney General may bring action to enforce charitable trust). Thus, plaintiff has failed to state a claim for breach of charitable trust.

As described above, plaintiff has also brought claims for various violations of state law. To the extent the remaining state claims are based on the existence of an alleged contract based on Baptist's § 501(c)(3) status, they are hereby dismissed. To

---

[4]Because the Court finds that plaintiff has failed to establish the existence of an enforceable contract, the Court need not address defendants' argument that plaintiff lacks standing to enforce such a contract.

the extent they are based on state law, the Court declines to exercise supplemental jurisdiction and those claims will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

Accordingly, the motions of Baptist and AHA to dismiss are hereby granted; the motion; Baptist's motion for partial summary judgment is denied as moot; plaintiff's motion for leave to amend is denied.

IT IS SO ORDERED this __31__ day of January, 2005.

*George Howard, Jr.*
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON __1-31-05__ BY _____

-8-