IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE DARR and LINDA ARRONA, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>SUTTER HEALTH; and DOES 1–50, inclusive,<br><br>    Defendants.<br>_____/<br>KARRIEM MUHAMMAD, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>SUTTER HEALTH; and DOES 1–50, inclusive,<br><br>    Defendants.<br>_____/ | No. C 04-02624 WHA<br><br>Consolidated with case<br><br>No. C 04-02837 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE CLAIMS** |

## INTRODUCTION

In these consolidated cases, plaintiffs allege, among other things, that defendant Sutter Health's tax-exempt status pursuant to 26 U.S.C. 501(c)(3) creates a contract for the benefit of the medically indigent. In turn, plaintiffs allege that defendant has breached the terms of that contract by charging uninsured patients allegedly inflated rates for medical services.

1  Defendant moves to dismiss plaintiffs' complaint. Finding that Section 501(c)(3) does not
2  contain an implied right of action, this order **GRANTS** the motion to dismiss plaintiffs' federal
3  claims and dismisses plaintiffs' state-law claims without prejudice to refiling in state court.

### STATEMENT

5  The complaint in the *Darr* action alleges that, on or about May 17, 2004, plaintiff
6  Duane Darr was taken to the Alta Bates Summit Medical Center, a Sutter hospital. Mr. Darr
7  had slipped and fallen at a local grocery store. At the time of treatment, Mr. Darr was
8  uninsured. He was transported to the emergency room by ambulance. Over several hours,
9  Mr. Darr underwent basic testing including blood tests, a hip x-ray and an EKG. He was also
10 given a pharmaceutical. He did not stay at the hospital overnight, and has not had any
11 follow-up treatment. For this hospital visit, Mr. Darr was billed $4,599.10.
12 On or about September 12, 2003, Jose Arrona, Jr. the minor son of plaintiff Ms. Linda
13 Arrona, was taken to Sutter Tracy Community Hospital, a Sutter hospital, for treatment of a
14 head laceration after he was attacked and beaten in the streets of Tracy. He was taken by his
15 friends to the emergency room for treatment. Jose received several stitches for his laceration,
16 had blood taken for lab tests, and was given two CT scans.
17 At the time of treatment, Jose and his family, including his mother, were uninsured. He
18 was released after approximately three hours. Ms. Arrona, as the parent of Jose Arrona,
19 received multiple bills for this medical treatment, including a bill for $4,660.60 from
20 Sutter Tracy Community Hospital. Ms. Arrona's account was sent to the collections department
21 from which she received letters that demanded payment and threatened to forward the account
22 to a collection agency.
23 The named plaintiffs in the *Muhammad* action were taken to the Alta Bates Summit
24 Medical Center, a Sutter hospital, for treatment after being rear-ended in an automobile
25 accident. At the time of treatment, plaintiffs were uninsured. Over several hours, plaintiffs
26 underwent basic physical and diagnostic examinations and testing including blood tests. They
27 were also given pharmaceuticals. They did not stay at the hospital overnight. Plaintiff Tanori
28

had some follow-up treatment. In connection with this incident, plaintiffs were billed over $6,000 in the aggregate.

The named plaintiffs in both cases are bringing the action on behalf of themselves and all other persons similarly situated. The prospective class is defined as follows:

> All individuals (or their guardians or representatives) residing in the United States who, from June 30, 2000 through the date of judgment received any form of medical treatment at a Sutter hospital or affiliate and were uninsured at the time of treatment. Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

\*   \*   \*

Plaintiffs in the *Darr* action allege seven claims. The *Muhammad* action is a "copy-cat" case and its complaint contains essentially identical allegations. Plaintiffs' first claim is that they are the third-party beneficiaries of an agreement between defendant and the United States government pursuant to Section 501(c)(3) (First Amended Compl. ¶ 60). In return for a substantial federal income tax exemption, plaintiffs argue, defendant agreed to "(a) operate exclusively for charitable purposes; (b) provide affordable medical care to plaintiffs and the class; and (c) not pursue outstanding medical debt from plaintiffs and the class by engaging in aggressive, abusive, and humiliating collection practices" (*ibid.*). Plaintiffs further allege that defendant breached that contract by (*ibid.*):

> (a) charging Plaintiffs and the Class the highest and full undiscounted cost of medical care; (b) charging Plaintiffs and the Class significantly more than its insured patients for the same medical services; (c) failing to use its net assets and revenues in the billions of dollars to provide affordable medical care to the Plaintiffs and the Class; and (d) utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from Plaintiffs and the Class.

The second count alleges that, by "admitting Plaintiffs and the Class into its hospitals for medical care, Defendant Sutter undertook an express and/or implied contractual obligation to charge Plaintiffs and the Class no more than a fair and reasonable charge for such medical

care" (Compl. ¶ 65). Plaintiffs allege that defendant breached its contract "by charging Plaintiffs and the Class the highest and full undiscounted cost for medical care" (*id.* ¶ 66).

The third count alleges a violation of the Fair Debt Collection Practices Act, and alleges that "Sutter's and the collection agencies' conduct constitute aggressive, abusive and humiliating and unfair collection practices" (*id.* ¶ 70). The fourth count alleges a breach of the duty of good faith and fair dealing. Plaintiffs allege that they entered into a contractual relationship with defendant and that defendant breached its duty of good faith and fair dealing by:

> (a) charging Plaintiffs and the Class the highest and full undiscounted cost of medical care; (b) charging Plaintiffs and the Class a higher amount for medical services than it charged its insured patients for the same services; (c) charging Plaintiffs and the Class unreasonable charges for medical care; and (d) utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly-inflated medical debt from Plaintiffs and the Class.

The fifth count is for a breach of a charitable trust allegedly created when defendant accepted federal tax-exemptions under Section 501(c)(3) (*id.* ¶ 79). The sixth count alleges that defendant has violated Section 17200 of the California Business and Professions Code in which plaintiffs' re-allege their proceeding claims. Plaintiffs also allege that defendant's conduct constitutes fraudulent business practices insofar as plaintiffs "are likely to be deceived by Sutter's advertising tag line that it is 'Community Based. Not for Profit'" (*id.* ¶ 88).

The seventh count alleges a violation of the Consumers Legal Remedies Act. Plaintiffs allege that defendant violated the CLRA by engaging in deceptive practices, including:

> (a) In violation of Civil Code § 1790(a)(5), Sutter represents that the goods and services it provides have characteristics and/or benefits that they do not have;
>
> (b) In violation of Civil Code § 1770(a)(9), Sutter advertised its services with intent not to sell them as advertised; and
>
> (c) In violation of Civil Code § 1770(a)(16), Sutter represents that the subject of a transaction has been supplied in accordance with a previous representation, when it has not.

The eighth and final count alleges that defendant has been unjustly enriched at the expense of plaintiffs. "Sutter has failed to provide affordable medical care to Plaintiffs and the

1  Class despite receiving millions of dollars in federal tax exemptions for such purpose. Contrary
2  to Sutter's charitable, nonprofit, tax-exempt status, Sutter has failed to use its substantial assets
3  and revenues to provide affordable medical care to Plaintiffs" (Compl. ¶ 99).

## ANALYSIS

### 1.  RIGHTS OF ACTION.

Acknowledging that the statute contains no express right of action, plaintiffs argue that Section 501(c)(3) contains an implied right. As a preliminary matter, plaintiffs cite to no case holding that the statute contains such a right. Plaintiffs instead make arguments under the four-factor test used to determine whether a private remedy is implicit in a statute not expressly providing one. This test is set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975):

> (1) "is the plaintiff one of the class for whose special benefit the statute was enacted;" (2) "is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?" (3) "is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" and (4) "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

As plaintiffs acknowledge, the Supreme Court has made clear that a court's central task is identifying congressional intent to create a private right of action within the text of the statute. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

Plaintiffs contend that Section 501(c)(3) evinces congressional intent to create such an implied right of action because "courts properly imply that when a statute permits the formation of a contract with the government . . . it is proper to imply that congress intended contractual remedies" (Opp. 6). This argument, however, merely assumes what plaintiffs need to prove. Plaintiffs do not establish that Section 501(c)(3) provides for the creation of contracts with the government. Indeed, a presumption exists against construing a statute as creating or authorizing a contract, *Nat'l R. R. Passenger Corp. v. Atchinson, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985):

> [a]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise . . .

> This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to . . . establish the policy of the state.

A party who asserts a contractual right must "overcome this well-founded presumption," and must do so by "identifying a contract within the language of the regulatory statute and [by] defining the contours of any contractual obligation." *Ibid.* Plaintiffs fail to make this showing. Plaintiffs do not point to any contractual provisions appearing within Section 501(c)(3), nor any language within the statute that defines the contours of a contractual obligation. Instead, plaintiffs argue that Section 501(c)(3) is "similar to other federal laws that create actionable contracts" (Opp. 7).

To prove the existence of an implied right of action, plaintiffs also point to the Hill-Burton Act, 42 U.S.C. 291(c). As a threshold matter, the Hill-Burton Act is not a tax statute but a series of spending grants regulated by the Surgeon General. As such, a private party seeking to enforce Hill-Burton obligations is not barred by the multiple provisions of the tax code limiting standing to the IRS and the taxpayer whose tax burden is at issue. Nor are the instant plaintiffs suing under the Hill-Burton Act.

2.    **STANDING.**

Presumably as a matter of federal common law, plaintiffs argue that they have standing to assert third-party beneficiary claims. "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 1999). *See also* Restatement (Second) of Contracts Section 313(2) ("[A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform.")

The decisions cited by plaintiffs only serve to demonstrate the difficulty of establishing standing under a third-party beneficiary theory. In *Schuerman v. United States,* 30 Fed. Cl. 420, 433 (Fed. Cl. 1994), the contract at issues was made for the "specific benefit of plaintiffs and

not one else," and the documents "identif[ied] plaintiffs." The court was careful to distinguish the plaintiffs from "incidental and indirect beneficiaries" and stated:

> This is not a case where the Government entered into a contract for the benefit of the public at large and where two members of the public seek[] to sue for breach of contract. Instead, this is a case where the Government specifically identified plaintiffs as the intended beneficiaries in the Contract of Guarantee, and it is upon this contract plaintiffs are suing for breach.

*Ibid.* Similarly, the court in *Montana v. United States* confirmed the rule that "when members of the public bring suit against promisors who contract with the government to render a public service," they "are considered to be incidental beneficiaries unless they can show a direct right to compensation." 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997).

Plaintiffs also cite to a Seventh Circuit decision granting current tenants of a Section 8 housing project standing as third-party beneficiaries to a contract with HUD. *See Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981). Plaintiffs do not mention, however, that the Seventh Circuit subsequently limited that holding. The circuit found that applicants for subsidized housing do *not* have standing to sue on such contracts. *Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir. 1987).

3.   **FAIR DEBT COLLECTION PRACTICES ACT.**

At hearing, plaintiffs acknowledged that the complaint fails to state a FDCPA claim because defendant is neither a creditor nor a debt collector, and is thus not governed by the FDCPA. The FDCPA governs the conduct of "debt collectors," a term defined to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). The term also "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Ibid.*

Congress enacted the FDCPA to target independent debt collectors, considering them to be the "prime source of egregious collection practices." *Pavone v. Citicorp Credit Servs., Inc.*, 60 F. Supp. 2d 1040, 1046 (S.D. Cal. 1997). Thus, "[t]he Fair Debt Collection Practices Act

7

creates causes of action against debt collectors, not creditors." *Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 554 n.1 (7th Cir. 1999). "Creditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the Act." *Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). Indeed, the FDCPA expressly excludes from the "debt collector" definition "any officer or employee of a creditor while . . . collecting debts for such creditor." 15 U.S.C. 1692a(6)(A)1.

The facts pled in the complaint show that defendant is (at most) a creditor, not a "debt collector." "[I]n order to state a clam [under the FDCPA] Plaintiffs have to allege either (1) that the principal purpose of the Defendants' business is the collection of debts, (2) that the Defendants regularly collect debts on behalf of others, or (3) that if the Defendants are creditors, they are using a name other than their own indicating to Plaintiffs that a third person is collecting the debts." *Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 629 (D. Nev. 2002).

Here, the complaint fails to plead any of the required facts. Instead, the complaint merely states "Arrona and the Class were, and are, pursued by collection departments and/or agencies for debts allegedly owed by Sutter patients" (Compl. ¶ 69). Plaintiffs thus fail to state a claim under the FDCPA.

### 4. DISMISSAL OF STATE-LAW CLAIMS.

As described above, plaintiffs' complaint also seeks relief for various violations of state law. This court declines to exercise jurisdiction over plaintiffs' state-law claims under 28 U.S.C. 1367(c)(3). Section 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

To decline jurisdiction in circumstances like this, a district court must first identify the dismissal that triggers the exercise of discretion and then explain how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity. *See*

*Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994).

The Supreme Court has indicated, however, that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998); *see also San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation when declining jurisdiction under Section 1367(c)(3)).

At all costs unlike other cases this Court has not invested substantial time in supervising this case. In fact, other than ruling on the federal claims in this order, the Court has invested no time on the case. Therefore, there will be no duplication of effort to remit the remaining claims to state court. This order thus dismisses plaintiff's state-law claims without prejudice to refiling in state court.

## CONCLUSION

For the reasons stated above, defendant's motion is **GRANTED**. The Court is convinced that any stab at amendment of the federal claims would be futile. Therefore leave to amend is denied. Given that supplemental jurisdiction will not exercised, a final judgment will be entered now. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 30, 2004.

                                                                s/ WILLIAM ALSUP
                                                                WILLIAM ALSUP
                                                                UNITED STATES DISTRICT JUDGE