FILED
UNITED STATES DISTRICT
DENVER, CO

DEC 29 2004

GREG...

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 04-M-1285

GEORGE SCOTT FERGUSON, on behalf of himself
and all others similarly situated;
ADRIAN LINARES, on behalf of himself
and all others similarly situated;
GARY STOEBER, on behalf of
himself and others similarly situated;
GINGER GENTRY, on behalf of
herself and all others similarly situated;

Plaintiffs,

vs.

CENTURA HEALTH CORPORATION;
CATHOLIC HEALTH INITIATIVES;
CATHOLIC HEALTH INITIATIVES COLORADO;
PORTERCARE ADVENTIST HEALTH SYSTEM; and
AMERICAN HOSPITAL ASSOCIATION,

Defendants.

---

MEMORANDUM OPINION AND ORDER OF DISMISSAL

---

Matsch, Senior District Judge

The plaintiffs in their Second Amended Class Action Complaint seek to form a class of all persons who received any form of healthcare treatment at any hospitals and healthcare systems operated by the hospital defendants from June 18, 1994 through the date of commencement of class notice and who were uninsured at the time of treatment, for the purpose of obtaining an injunction requiring the hospital defendants to cease and desist from "charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the

Plaintiffs and the Class a higher amount for medical services than their uninsured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiffs and the Class." Second Am. Compl. at ¶ 117. The plaintiffs also seek a prospective order requiring the hospital defendants "to provide mutually affordable medical care to the Plaintiffs and the Class; to charge the Plaintiffs and the Class no more for medical services than it [*sic*] charges their insured patients, and to cease their attempts to collect outstanding medical debt from the Plaintiffs and the Class until they have complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiffs and the Class through a graduated payment plan or other means." *Id.* at ¶ 118.

The legal premise underlying these broad claims for equitable relief is that each of the hospital defendants is a tax-exempt organization under 26 U.S.C. § 501(c)(3), requiring it to be organized and operated exclusively for charitable purposes with no part of its net earnings inuring to the benefit of any private shareholder or individual. The plaintiffs contend the granting of that exemption forms a contract enforceable by those who are intended beneficiaries. The plaintiffs also seek all economic, monetary, actual and compensatory damages "caused by the conduct of Defendants" and the imposition of a constructive trust on the hospital defendants' net assets and the revenues "in an amount sufficient to provide the Plaintiffs and the class mutually affordable remedial care." Second Am. Compl. at p. 36.

Because that premise is patently untenable, the defendants' motions to dismiss all claims dependent upon it are granted. There is no private right of action created by § 501(c)(3) of the Internal Revenue Code ("I.R.C."). In *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263 (10th Cir.

2004), the Tenth Circuit Court of Appeals construed Supreme Court opinions to direct the inquiry into Congressional intent to create a private right of action by implication by examining the subject statute for "rights creating language" and language identifying "the class whose *especial* benefit the statute was enacted." *Id.* at 1267 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) and *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 n. 9 (1979)). The court must also "consider the relation between the specific provision at issue and the related statutory scheme." *Boswell*, 361 F.3d at 1267.

Each of the named plaintiffs alleges the receipt of treatment and medical care at one of the defendant hospitals when he or she had no medical insurance and was charged at rates exceeding the actual costs of providing that treatment and care, resulting in each patient being in "an untenable financial position teetering on the brink of ruin." The allegations do not expressly state the reasons for the lack of insurance but it is assumed that the plaintiffs are unable to pay premiums. They all assert that they were entitled to some form of charity which the hospitals denied them in violation of the alleged statutory duty.

The text of § 501(c)(3) contains no rights-creating language indicating that Congress intended it to be enforced by uninsured patients or by members of the general public. The focus of both § 501(c)(3) and Treas. Reg. § 1.501(c)(3)-1 is the activities of entities seeking tax exemptions. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

The plaintiffs contend the definition of "charitable" provided in Treas. Reg. § 1.501(c)(3)-1 compels the conclusion that they are entitled to bring suit under § 501(c)(3).

-3-

Regulatory language alone does not create a private right of action. *See Sandoval*, 532 U.S. at 291. "[I]t is most certainly incorrect to say that language in a regulation can conjure up a private right of action that has not been authorized by Congress." *Id.*

The plaintiffs also rely on the following statement from the legislative history of the charitable exemption: "The exemption from taxation of money or property devoted to charitable and other purposes is based upon the theory that the government is compensated for the loss of revenue by its relief from financial burdens which would otherwise have to be met by appropriations from public funds, and by the benefits resulting from the promotion of the general welfare." (Pls.' Opp'n Br. at 10, citing H. R. Rep. No. 1860, 75th Cong., 3d Sess., 19 (1938), quoted in *Bob Jones Univ. v. United States*, 461 U.S. 574, 590 (1983)). The quoted statement says nothing about any class for whose benefit the statute was enacted. In *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F.Supp. 704, 708 (D. Ariz. 1996), the court concluded – upon a review of § 501(c)(3), Treasury regulations, and legislative history – that "Congress likely enacted the tax-exemption with the intent of benefitting those corporations wishing to pursue charitable and scientific ventures at the expense of pecuniary gain."

Taken in context, § 501(c)(3) cannot be construed to create an implied private action for enforcement. I.R.C. § 7801(a) states, "Except as otherwise expressly provided by law, the administration and enforcement of [the tax code] shall be performed by or under the supervision of the Secretary of the Treasury." I.R.C. § 7401 prohibits actions for the collection or recovery of taxes except those authorized by the Secretary of the Treasury and directed by the Attorney General. If an organization previously determined by the Internal Revenue Service to be exempt no longer meets the criteria for maintaining its exempt status, the IRS has the authority to revoke

-4-

the exemption. *See, e.g., Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974), Treas. Reg. § 601.201(n). I.R.C. § 7428 permits declaratory judgment actions relating to the Secretary's determination of an organization's status and classification under § 510(c)(3), but such an action may be brought only by an organization whose qualification or classification is at issue. I.R.C. § 7428(b)(1). No provision of the Internal Revenue Code authorizes third parties (*i.e.*, persons other than the taxpayer) to challenge determinations made under § 501(c)(3) or to seek declaratory or injunctive relief under that section. In contrast, other provisions of the tax code specifically authorize actions by third parties affected by tax collection activities or IRS proceedings. *See, e.g.*, I.R.C. § 7426 (civil actions by persons other than taxpayers); *see generally* Title 26, chapter 76, subchapter B (proceedings by taxpayers and third parties). "[W]here Congress has otherwise enacted 'a comprehensive legislative scheme, including an integrated system of procedures for enforcement,' there is a strong presumption that Congress deliberately did not create a private cause of action." *Tax Analysts v. Internal Revenue Service*, 214 F.3d 179, 186 (D.C. Cir. 2000) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).

The plaintiffs argue the analogy of the Hill-Burton Act, 42 U.S.C. § 291 *et seq.*, granting federal funds to the states for the purpose of assisting state programs for the construction and modernization of hospitals and other medical facilities. To participate in the Hill-Burton program, a state must submit a plan, and an applicant for federal funds, such as a hospital facility, must meet certain requirements, including giving assurances that it will provide "a reasonable volume of services to persons unable to pay therefor . . . ." *Id.* § 291c(e)(2). In *Euresti v. Stenner*, 458 F.2d 1115, 1118-19 (10th Cir. 1972), the United States Court of Appeals for the

Tenth Circuit held that a private right of action exists under the Hill-Burton Act and so permitted indigent persons to bring suit against a hospital facility to enforce the facility's obligation to provide services to the indigent.

The plaintiffs' reliance on *Euresti* and the Hill-Burton Act is misplaced. The Hill-Burton Act is not within the comprehensive statutory structure of the Internal Revenue Code. The Hill-Burton Act expressly conditions the grant of federal funds on a facility's promise to provide "a reasonable volume of services to persons unable to pay therefor," 42 U.S.C. § 291c(e)(2), and that phrase is defined by regulation, 42 C.F.R. § 53.111. No similar requirement is stated in § 501(c)(3) or any Treasury regulation. A significant factor in *Euresti* was the facility's written contract with the State of Colorado. 458 F.2d at 1118 n. 4. Here there is no written contract imposing the obligations the plaintiffs seek to enforce.

"[E]xemptions from income tax are a matter of legislative grace." *IHC Health Plans, Inc. v. Commissioner*, 325 F.3d 1188, 1193 (10th Cir. 2003) (quoting *Mutual Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 794 (10th Cir. 1985). No court has ever held that the Congressional grant of the exemption in § 501(c)(3) creates a contractual relationship between the government and the tax-exempt entity. Such a construction would be contrary to the well established law that provisions of the Internal Revenue Code are not contractual in nature. *See, e.g. McLaughlin v. Commissioner*, 832 F.2d 986, 987 (7th Cir. 1987) (rejecting taxpayer's argument that obligation to pay taxes is contractual, stating "The notion that the federal income tax is contractual or otherwise consensual in nature . . . has been repeatedly rejected by the courts.")(citations omitted). *Merrick v. United States*, 846 F.2d 725 (Fed. Cir. 1988), does not support the plaintiffs' position. That case involved a citizen's claim to a reward

-6-

under I.R.C. § 7623, and there the court acknowledged, "The United States cannot be contractually bound merely by invoking the cited statute and regulation." 846 F.2d at 726; *see also Krug v. United States*, 168 F.3d 1307 (Fed. Cir. 1999) (rejecting plaintiff's argument that an IRS publication created an implied-in-fact contract to pay reward to an informant).

The plaintiffs have not shown the contract allegedly created by § 501(c)(3) was intended to benefit uninsured patients. "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912); *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001). Members of the general public are considered incidental beneficiaries of a government contract with no right to enforce the contract or seek damages for its breach. *See, e.g., Montana v. United States*, 124 F.3d 1269, 1273 n. 6 (Fed. Cir. 1997).

The plaintiffs argue that expansive enforcement rights are consistent with the terms of the alleged contract and the objectives of § 501(c)(3), including the requirement that tax-exempt hospitals provide "mutually affordable" health care to the "medically indigent." The phrases "mutually affordable" and "medically indigent" are not found in § 501(c)(3), nor do they appear in any Treasury regulation or other source cited by the plaintiffs. These phrases appear to have been coined by plaintiffs' counsel. There is no support for the statement (appearing at page 17 of the plaintiffs' opposition brief) that "*uninsured* patients are the specific intended beneficiaries of the Hospital Defendants' agreements with the federal government to operate exclusively for charitable purposes."

The plaintiffs' argument assumes that a hospital is required to provide significant

-7-

healthcare services to the indigent (or in the plaintiffs' words, "the medically indigent") to qualify as exempt under § 501(c)(3). This assumption oversimplifies federal tax law relating to nonprofit hospitals. There is no bright line test for determining the tax status of a nonprofit health care organization. *See Geisinger Health Plan v. Commissioner*, 985 F.2d 1210, 1217 (3d Cir. 1993); *IHC Health Plans*, 325 F.3d at 1195-99. In addition, as the defendants have noted, a charitable purpose is only one of several exempt purposes listed in § 501(c)(3) and may not be the only basis for exemptions granted to nonprofit hospitals.

The inescapable fact is that even if the hospital defendants are neglecting charitable activities that provide the basis for their exempt status under § 501(c)(3), these plaintiffs have no standing and no right to bring this suit under that statute. The standing requirement and the strict standards for finding an implied right of action are rooted in Constitutional limitations on judicial power. The plaintiffs seek to use this Court as a forum to reform the health care system. The plaintiffs' claims under § 501(c)(3) fail because formulating federal health care policy is not a proper function of an Article III court.

Accordingly, insofar as claims one (third party breach of contract), two (breach of contract), three (breach of duty of good faith and fair dealing), four (breach of charitable trust), five (violations of the Colorado Consumer Protection Act), seven (unjust enrichment-constructive trust), eight (civil conspiracy), and ten (injunctive/declaratory relief) against the hospital defendants are premised on 26 U.S.C. § 501(c)(3), those claims are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Claims eight (civil conspiracy) and nine (aiding and abetting) against the American Hospital Association are also dismissed with prejudice insofar as those claims are premised on § 501(c)(3).

The only remaining federal claim is count six, for violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). The EMTALA subjects "participating hospitals" (defined in subsection (e) as hospitals that participate in the federal Medicare program) to two primary requirements. First, when a patient seeks emergency treatment at a participating hospital, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition. 42 U.S.C. § 1335dd(a). Second, if an emergency medical condition exists, the hospital must provide treatment to stabilize the patient before transferring or discharging the patient. Id. § 1395dd(b) and (c). The EMTALA prohibits a participating hospital from delaying the provision of an appropriate medical screening or medical examination and treatment in order to inquire about the individual's method of payment or insurance status. Id. § 1395dd(h). "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." Id. § 1395dd(d)(2)(A). The purpose of the EMTALA is to "ensure all patients, regardless of their perceived ability or inability to pay for medical care, are given consistent attention." Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 797 (10th Cir. 2001), cert. denied, 535 U.S. 905 (2002).

The plaintiffs allege on information and belief that the hospital defendants "would not provide emergency medical screening and/or treatment to the Plaintiffs and the Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for some medical care." Second Am. Compl. ¶ 95. It is surprising that these

-9-

allegations are made on information and belief because they relate to facts that should be within the plaintiffs' own knowledge. The information and belief pleadings raise questions about the sufficiency of the EMTALA claim. Notably, there are no allegations that any plaintiff suffered personal harm as a result of the alleged violation. The hospital defendants have not moved to dismiss this claim.

Nevertheless – assuming that there is a sufficient factual basis for a claim under the EMTALA – the relationship of the EMTALA claim to the state law claims is insufficient to support supplemental jurisdiction under 28 U.S.C. § 1367(a). The issue central to the EMTALA claim is whether the hospital defendants provided <u>disparate medical treatment</u> based on patients' financial resources or insurance status. *See Hillcrest Med. Ctr.*, 244 F.3d at 797 ("[A] hospital's obligation under EMTALA is measured by whether it treats every patient perceived to have the same medical condition in the same manner."). All of the plaintiffs' state law claims are directed to the hospital defendants' <u>billing and collection practices</u> and present the question of whether those practices violate obligations arising from the grant of tax exemptions. The state law claims relating to the hospital defendants' tax status are fundamentally different from the EMTALA claim and not part of the same case or controversy.

Even if there is a sufficient relationship between the EMTALA claim and the state law claims to support jurisdiction under 28 U.S.C. § 1367(a), other factors weigh in favor of declining the exercise of supplemental jurisdiction. Dismissal of the plaintiffs' claims based on § 501(c)(3) means that counts ones through five and seven through ten can be premised only on Colorado law, including the plaintiffs' novel theory that the grant of state tax exemptions obligates the hospital defendants to provide affordable health care to uninsured patients. The

-10-

predominance of the state law claims and the novel interpretation of Colorado law being advanced by the plaintiffs weigh in favor of declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(1) and (2).

Accordingly, insofar as claims one, two, three, four, five, seven, eight and ten against the hospital defendants are premised on state law, those claims are dismissed without prejudice for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367, and to the extent that claims eight and nine against the American Hospital Association purport to assert claims arising under state law, those claims are also dismissed for lack of jurisdiction. Claim six remains, but all other claims against the hospital defendants and all claims against the American Hospital Association are dismissed.

Based on the foregoing, it is

ORDERED that the motion of defendants Centura Health Care Corporation, Catholic Health Initiatives, Catholic Health Initiatives Colorado, and Portercare Adventist Health System to dismiss the Second Amended Complaint is granted as follows: Claims one, two, three, four, five, seven, eight, and ten against those defendants are dismissed with prejudice to the extent the claims are premised on 26 U.S.C. § 501(c)(3), and dismissed without prejudice to the extent premised on state law; and

-11-

ORDERED that the motion to dismiss by American Hospital Association is granted as follows: Claims eight and nine against that defendant are dismissed with prejudice to the extent the claims are premised on 26 U.S.C. § 501(c)(3), and dismissed without prejudice to the extent premised on state law. American Hospital Association is dismissed as a defendant in this action.

Dated: December 29, 2004

BY THE COURT:

_____
Richard P. Matsch, Senior District Judge

Civil Action No.   04-M-1285

I do hereby certify that I have mailed a copy of the attached to the following:

Dated: December 29, 2004

GREGORY C. LANGHAM, CLERK

By ____Kathy Jecovake____
Glenna Drake, Secretary

William R. Gray
Michael J. Thomson
Purvis, Gray & Murphy, LLP
1050 Walnut St. #501
Boulder, CO 80302

Archie Lamb, Jr.
A. David Fawal
Chris Cantrell
2017 2nd Ave North, Suite 200
Birmingham, Alabama 35201

E. Kirk Young
P.O. Box 382434
Brimingham, Alabama 35201

Stuart Altman
Hogan & Hartson, LLP
1200 17th St.
Denver, CO 80202

Ty Cobb
Mitchell E. Zamoff
Catherine Stetson
Hogan & Hartson, LLP
555 13th Street, N.W.
Washington, DC 20004