IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THOMAS E. HUDSON, | : |
| Plaintiff, | : |
| vs. | : 5:04CV301 (DF) |
| CENTRAL GEORGIA HEALTH SERVICES and the MEDICAL CENTER OF CENTRAL GEORGIA, | : |
| Defendants. | : |

### O R D E R

Plaintiff received treatment at the Medical Center of Central Georgia ("MCCG"), was unable to pay his bill, and after the bill collection process was completed initiated this action challenging the accounting, billing, and provision of services at the MCCG. Defendant MCCG is a subsidiary of Defendant Central Georgia Health Services ("CGHS"), which owns and operates that hospital and is in the business of providing health services. This matter is now before the Court on Defendants' Motion to Dismiss (tab #3).

### I.  STANDARD OF REVIEW

A court should grant a motion to dismiss under Rule 12(b)(6) only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). On a motion to dismiss under Rule 12(b)(6), the court's function is not to assess the veracity or weight of

the evidence that might be offered in support of the complaint; instead, the court must merely determine whether the complaint is legally sufficient. See **Sherman ex rel. Sherman v. Helms**, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000). In ruling on a motion to dismiss, the court must accept all material facts alleged in the complaint as true, and it must construe all reasonable inferences in the light most favorable to the plaintiff. See **Kirby v. Siegelman**, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam). If the facts alleged in the complaint would allow the plaintiff to recover under any possible theory, the motion must be denied, regardless of whether they would allow recovery under the particular theory pleaded by the plaintiff. See **Linder v. Portocarrero**, 963 F.2d 332, 336 (11th Cir. 1992).

II.   **FACTUAL BACKGROUND**

Plaintiff was injured in a series of car accidents in late 2002 and early 2003. Mr. Hudson was taken to the MCCG for treatment of his injuries. When he presented at the MCCG, Mr. Hudson did not have insurance. He signed a contract for services, referred to as a "Consent to Hospital Admission," with the MCCG, whereby he agreed to pay his full hospital bill. According to Plaintiff, he was told that he was required to sign this contract before he could be seen by a doctor and was not informed that the MCCG provided charity care to the community. After being discharged from the MCCG, Plaintiff received a bill for nearly $15,000. Plaintiff did not pay this bill and after the MCCG was unable to collect the amount it sued Plaintiff in Magistrate Court of Bibb County, Georgia and the garnishment judgment was resolved by Bibb Collection Services, Inc.

2

The MCCG is a community hospital that has received tax-exempt status from the federal and state governments pursuant to 26 U.S.C.A. § 501(c)(3) and O.C.G.A. §§ 48-7-25 and 48-5-40(5) respectively. To receive tax-exempt status, a hospital must operate not-for-profit, and § 501(c)(3) ("§ 501c3") describes how an entity must operate in order to receive tax-exempt status:

> Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

By meeting this definition, Defendants are exempt from federal taxation. Additionally, because of its status as a § 501c3 organization, MCCG is exempt from state income tax pursuant to O.C.G.A. § 48-7-25. Also, because its § 501c3 status brings it within the definition of hospitals exempt from property tax, MCCG is exempt from Georgia property tax pursuant to O.C.G.A. § 48-5-40(5), which provides:

> Institutions of purely public charity, nonprofit hospitals, and hospitals not operated for the purpose of private or corporate profit and income mean such institutions or hospitals which may have incidental income from paying patients when the income, if any, is devoted exclusively to the charitable purpose of caring for patients who are unable to pay and to maintaining, operating, and improving the facilities of such institutions and hospitals, and when the income is not directly or indirectly for distribution to shareholders in corporations owning such property or to other owners of such property.

3

### III.  PROCEDURAL BACKGROUND

Plaintiff alleges that he was charged a higher rate for medical care and services than is charged to patients with private insurance or those covered by Medicare or Medicaid. Also, Plaintiff alleges that he was aggressively pursued by MCCG for payment of his hospital bill. These allegations rest on Plaintiff's assertion that Defendants promised the federal and state government that they would operate as a charity provider of health care services in exchange for tax-exempt status. Claiming that he is representative of all uninsured patients treated by the MCCG, Plaintiff also asks the Court to certify this as a class action lawsuit. The class is to include all uninsured patients treated by the MCCG who were overcharged and/or aggressively pursued by MCCG to collect unpaid medical bills. Plaintiff has brought a six count complaint alleging:

- Count One:      Third Party Breach of Contract
- Count Two:      Breach of Contract
- Count Three:    Breach of Duty of Good Faith and Fair Dealing
- Count Four:     Breach of Charitable Trust
- Count Five:     Georgia Uniform Deceptive Trade Practices Act & Fair Business Practices Act
- Count Six:      Unjust Enrichment/Constructive Trust

With regard to these counts, Plaintiff seeks damages to compensate for all monetary and economic losses. In addition, Plaintiff seeks to have a constructive trust imposed upon Defendants that would be composed of the tax dollars due to both the federal and state governments absent the tax-exempt status as a charitable organization and the monies paid by uninsured patients that exceeded what insured patients would have paid. However, Plaintiff has voluntarily dismissed count five.

4

This action was originally filed in the Superior Court of Bibb County, Georgia on August 24, 2004. Defendant removed the action to this Court on September 16, 2004 on the basis of federal subject matter jurisdiction. The basis for subject matter jurisdiction is found in Plaintiff's claim that a contract was created between Defendants and the federal government pursuant to § 501c3, which is a part of the Internal Revenue Code ("IRC"). This federal question is the basis for count one of Plaintiff's complaint.

In light of footnote one in Plaintiff's response, the Court feels compelled to clarify the source of federal subject matter jurisdiction. Plaintiff has not sought leave to amend nor has he amended his complaint to include claims pursuant to the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd (West 2003). Federal jurisdiction in this action rests solely on the inclusion of claims under § 501c3, and does not involve the EMTALA.

### IV. LEGAL ANALYSIS

#### A. Plaintiff's Claims

##### 1. *Count One: Third Party Breach of Contract*

###### a. Existence of a Contract

Plaintiff maintains that Defendants have a contract with the federal and state governments to provide charity care to those unable to pay, provide affordable care to those without insurance, and not to pursue bill collection from those unable to pay. This contract is alleged to have been implied when Defendants received tax-exempt status as a § 501c3 corporation. Plaintiff asserts that he is entitled to enforce this contract for charity care, which he sought as an uninsured patient, because he is a third-party beneficiary of

the contract between Defendants and the federal and state governments. Assuming for this argument only that Plaintiff has standing to challenge Defendants tax-exempt status, the Court must first determine that a contract exists between Defendants and the state and federal governments.

To find a valid contract under Georgia law, "'there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.'" *TranSouth Fin. Corp. v. Rooks*, 604 S.E.2d 562, 564 (Ga. Ct. App. 2004) (quoting OCGA § 13-3-1). Plaintiff's claim of a contract between Defendants and the state and federal governments fails to show the assent of the parties to the terms of this contract. There is no signed document or agreement that tax-exempt status contractually obligates Defendants to provide free medical care to Plaintiff, or the class he seeks to represent. Rather, Plaintiff would imply such a contract based on the grant, by the federal government, and acceptance, by Defendants, of tax-exempt status. Plaintiff points to § 501c3 as the contract, but the Court will not construe this code section as a contract because "to construe laws as contracts when the obligation is not *clearly* and *unequivocally* expressed would be to limit drastically the essential powers of a legislative body." *Nat'l Educ. Ass'n – Rhode Island v. Retirement Bd. of the Rhode Island Employees' Retirement Sys., et al.*, 172 F.3d 22, 27 (1st Cir. 1999). Furthermore, the policy of the courts, as first articulated by the Supreme Court, has been that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Id.* at 27 (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937)).

Thus, §501c3 does not create a contract between the federal government and Defendants, it merely declares that not-for-profit hospitals are entitled to exemption from federal taxation. And, based on this status, the state government exempts Defendants from state taxation.

Even though the Court does not find a contract between Defendants and the governments, the Court next considers whether Plaintiff would have a right of action to enforce this contract, if it were found to exist.

### b.   Right of Action Under the Contract

Arguing that a contract exists between Defendants and the state and federal governments, Plaintiff asserts that he, as a third-party beneficiary, has a private right of action to enforce the contract. In support of this position, Plaintiff points to the Hill-Burton Act ("the Act"), 42 U.S.C.A. § 291, and relies upon the holding in *Saine v. Hosp. Auth. of Hall County*, 502 F.2d 1033 (5th Cir. 1974) for the proposition that when a statute confers a benefit on a class in exchange for the provision of services to the community, the community has a right of action regarding the services. Plaintiff's argument is misguided. The Act specifically conditioned receipt of federal funds for the construction and modernization of hospitals on the hospital's promise to provide "a reasonable volume of services to persons unable to pay therefor. . . ." 42 U.S.C.A. § 291c(e)(2) (West 2003). Thus, the Fifth Circuit reasoned that a person denied hospital services because of an inability to pay could sue the hospital denying treatment because the hospital received funds under the Act. *See* 42 U.S.C.A. § 291(a) (West 2003). In contrast, § 501c3 does not provide any funding to hospitals, rather it exempts qualifying organizations of all types

from the payment of federal taxes. This section of the Internal Revenue Service ("IRS") code merely establishes who is eligible for an exemption, it in no way imposes conditions upon recipients. *See* 26 U.S.C.A. § 501 (West 2002). Additionally, there is no requirement within the tax code that is remotely similar to the Act's express policy of conditioning federal funds in return for indigent care. *See* **Ferguson v. Centura Health Corp., et al.**, No. 04-1285, slip op. at 6 (D. Colo. Dec. 29, 2004).

Furthermore, Plaintiff's claim is not based on the Act and there is no allegation that Defendants received funding under the Act. Thus, any private right of action found in the Act is inapplicable to Plaintiff's claim. *See* **Burton v. William Beaumont Hosp.**, 2004 WL 2790624, No. 04-72735 (E.D. Mich. Dec. 3, 2004) (finding that the plaintiff's claim that there was a private right of action under § 501c3 based on the private right of action in the Act was not well-taken because there were no allegations of receiving funds under the Act).

In addition, independent of any comparison or analogy to the Act, there is no private right of action found in § 501c3 that would enable Plaintiff to sue on this implied contract. Federal courts may only interpret federal statutes to contain private rights of action when Congress creates such a right. To determine if such a right is created, "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." **Love v. Delta Air Lines**, 310 F.3d 1347, 1352 (11th Cir. 2002). Accomplishing this task requires the Court to ask:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted--that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or

8

implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

**Cort v. Ash**, 422 U.S. 66, 78 (1975). However, "'the intent of Congress remains the ultimate issue'" for the Court to consider in determining if a federal statute contains a private right of action, and the three remaining factors are consulted only "insofar as they provide evidence of whether Congress intended to create a private cause of action." **Love**, 310 F.3d at 1352 (quoting **Thompson v. Thompson**, 484 U.S. 174, 179 (1988)).

The Supreme Court has established that the Congressional intent of legislation providing tax-exemptions for charity organizations was to insure that organizations receiving tax-exempt status serve a public purpose and not be contrary to established public policy. See **Bob Jones Univ. v. United States**, 103 S. Ct. 2017 (1983). What is absent from any statement of Congressional intent regarding § 501c3 is a finding that the section provides a private right of action. Furthermore, no remedy is provided for or mentioned in the statute itself or in any judicial interpretation of this section of the IRC. See **Burton**, 2004 WL 2790624 *4 (pointing out that the absence of a private right of action in § 501c3 was noteworthy because when such a right was intended it was established by the IRS). And, "no court has ever held that the Congressional grant of the exemption in §501c3 creates a contractual relationship between the government and the tax-exempt entity." **Ferguson**, slip op. at 6. Therefore, this Court does not find a private right of action in § 501c3 that would allow Plaintiff to bring count one of his complaint.

9

   2.  *Count Two: Breach of Contract*

  When he presented at the MCCG for treatment, Plaintiff was uninsured, and so informed the MCCG staff, and signed the "Consent to Hospital Admission" form before he was treated by medical professionals. Paragraph 13 of this form made clear that the patient signing the form was responsible for payment of the MCCG bill, whether the bill was paid from insurance benefits or individual funds. *See* Tab #4, Ex. C, P. 3. From this obligation to pay his bill in full, Plaintiff infers a contractual obligation upon Defendants to charge a reasonable and fair price for the services rendered. Then, Plaintiff asserts that the amount he was charged for services was "inflated and unreasonable." Pl.'s Resp. to Defs.' Mot. to Dismiss, Pg. 17. There was not a specific price term in the contract Plaintiff signed, as the amount and price of medical services he would need was only determined after treatment was rendered. However, the contract did state that the amount Plaintiff would be charged would not exceed "the hospital's regular charges for this period of hospitalization." Tab #4, Ex. C, P. 3.

  The contractual obligation to charge a reasonable and fair price that Plaintiff implies in the contract for hospital services is unlikely to be found by this Court. Georgia "courts will introduce terms into a contract only when the term does not conflict with any express provision of the agreement and 'where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties.'" ***DPLM, Ltd. v. J. L. Harvey, Co.***, 526 S.E.2d 409, 414 (Ga. Ct. App. 2003) (quoting ***Higginbottom v.***

10

***Thiele Kaolin Co.***, 304 S.E.2d 365, 366 (Ga. Ct. App. 1983)).[1] The contract states clearly that the "hospital's regular charges" would dictate the price Plaintiff was to pay for services. Introducing the term "reasonable and fair price" into the contract would require the Court to determine that the hospital's regular charges were unreasonable and unfair. While Plaintiff may have been shocked by the amount of his bill, it is not absolutely necessary for the Court to introduce the terms "reasonable and fair" into his contract for services.

Even though the Court is not willing to find contractual obligations by implication, there are terms in the contract as written that may have been breached. Plaintiff does not dispute that the amount he was charged was not "the hospital's regular charge" for the treatment and services he received, although he does assert that insurance carriers received a reduction from this regular rate. Rather, he asks the Court to judge the reasonableness of the hospital's regular charges, claiming that the regular charges are inflated and unreasonable as applied to the uninsured. However, before the Court can consider the reasonableness of Defendants' pricing scheme[2], the contract Plaintiff signed must be found unambiguous. *See* ***Eckerd Corp. v. Alterman Prop., Ltd.***, 589 S.E.2d 660, 664-65 (stating that the first step for a court considering a contract is to determine that the contract language is unambiguous). Georgia law is clear that "when the terms of a

---

[1] This contract was executed and performed in Georgia and both parties were from Georgia. Therefore, Georgia law is applied to this breach of contract claim since state law typically governs contract interpretation and disputes. *See* ***Carey v. Houston Oral Surgeons, LLC***, 595 S.E.2d 633, 637 (Ga. Ct. App. 2004).

[2] The Court notes that a judgment on the reasonableness of the hospital's regular charges may not be appropriate at this stage in the litigation. However, that is the inquiry that this count of Plaintiff's complaint will ultimately cause to be made.

contract are plain and unambiguous, we must enforce the contract as written, so long as it is within the bounds of the law." ***Charania v. Regions Bank***, 591 S.E.2d 412, 414 (Ga. Ct. App. 2003) (citing ***Axa Global Risks v. Empire Fire & Ins. Co.***, 554 S.E.2d 755 (Ga. Ct. App. 2001)).

The phrase "hospital's regular charges" is the source of ambiguity in the contract at issue. From Plaintiff's complaint, it is alleged that the hospital has two sets of "regular" prices – one for large insurance companies and government programs and a second for uninsured, paying patients. Thus, according to Plaintiff, when he signed the contract for hospital services it was ambiguous what a "reasonable" charge for services was and exactly what price he would be charged. The Court is not able, at this stage, to judge the certainty of the term "hospital's regular prices" to determine whether this term is ambiguous. Thus, because the Court is unable to declare the contract terms are unambiguous, the Court is not able, at this time, to continue its interpretation of the contract to determine if it was breached by either or both parties.

       3.    *Count Three:*    *Breach of the Duty of Good Faith and Fair Dealing*

As the Court is unable to determine, at this stage of the litigation, if Defendants breached the Contract for Hospital Services, it is unable to determine whether Plaintiff has stated a claim for breach of the duty of good faith and fair dealing.

       4.    *Count Four:*    *Breach of Charitable Trust*

Plaintiff alleges that Defendants created a public charitable trust by accepting tax-exempt status from the state and federal governments. According to Plaintiff, the purpose

of this trust is to provide affordable medical care to uninsured patients and the breach of this charitable trust has resulted in economic injury. Even though Plaintiff points to the Supreme Court's quotation of Revenue Ruling 56-185 to support his contention that this claim is based on federal law, this is a state law claim. *See* **Simon v. E. Ky. Welfare Rights Org.**, 426 U.S. 26, 29 (1980). In fact, Revenue Ruling 56-185 was modified by Revenue Ruling 69-545, which the Supreme Court upheld in **Simon**, deleting the implied charitable trust language from the definition of a §501c3 corporation. *See id.* at 30.

Under Georgia law, a charitable trust is formed when the settlor provides that the trust property be used for charitable purposes.[3] *See* O.C.G.A. § 53-12-111 (Michie 1997). Two basic types of trusts are recognized in Georgia – express and implied, which is either a resulting or constructive trust – and either type of trust may be charitable in its purpose. An express trust is created in writing and must include: (1) the intent to create a trust, (2) trust property, (3) a beneficiary, (4) a trustee, and (5) duties imposed upon the trustee. *See* O.C.G.A. § 53-12-20 (Michie 1997). An implied resulting trust exists when any of the following occur: (1) an express trust is created but fails, (2) an express trust is fully performed but property remains, or (3) a purchase money trust is established, which occurs when a trust is implied when the settler pays consideration to another for the transfer of legal title to property to a third person. See O.C.G.A. §§ 53-12-91, 53-12-92 (Michie 1997). An implied constructive trust is found when "the person holding legal title to property, either

---

[3] Georgia law defines the subjects of charity for charitable trusts as: the relief of poverty, the advancement of education, the advancement of ethics and religion, the advancement of health, the improvement or repair of cemeteries or tombstones, the prevention of cruelty to animals, and governmental purposes. See O.C.G.A. § 53-12-110 (Michie 1997).

13

from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-93 (Michie 1997).

Plaintiff's allegation of the formation of a charitable trust by acceptance of tax-exempt status fails to qualify as either of the types of trusts recognized by Georgia law. First, there cannot be an express trust between Defendants and the governments as there is no writing, no intent to create a trust, no trustee, nor any duties imposed upon a trustee. Second, this allegation of a trust cannot be construed as an implied resulting trust; because no express trust was found, no trust has failed nor is the trust fully performed but with property remaining. Additionally, no purchase money resulting trust is at issue. Finally, as the property alleged as the res of the trust is the tax-exempt status, there is no legal title to property for Defendants to hold that could possibly be the subject of a constructive trust. *See* ***Estate of Clopton v. C.I.R.***, 93 T.C. 275 (1989) (discussing the fluid nature of tax-exempt status, that the IRS may grant or revoke the status at any time). "As the party claiming the exemption," Defendants were required to "prove its entitlement to [tax-exempt status]." ***Am. Ass'n of Christian Sch. Voluntary Employees Beneficiary Ass'n Welfare Plan Trust v. United States***, 850 F.2d 1510, 1513 (11th Cir. 1988) (citing ***Senior Citizens Stores, Inc. v. United States***, 602 F.2d 711, 713 (5th Cir.1979)[4] (per curiam). Thus, because the IRS granted Defendants petition for tax-exemption, Defendants rightfully possess § 501c3 status, further preventing the application of a constructive trust.

---

[4] In ***Bonner v. City of Prichard***, 661 F.2d 1206, 1209 (11 Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In addition to failing to qualify as an express or implied trust under Georgia law, the allegation of a charitable trust by implication also fails to meet the statutory definition of a charitable trust. Georgia law clearly requires a settlor designate property for a charitable purpose in order to find a charitable trust. See *In re Estate of Chambers*, 583 S.E.2d 565, 568 (Ga. Ct. App. 2003). While there are no magic words a settlor has to use to create such a trust, the settlor must provide the property to the charity. See *Miller v. Aderhold*, 184 S.E.2d 172, 176 (Ga. 1971) *abrogated on other grounds by Warren v. Bd. of Regents of Univ. Sys. of Ga.*, 527 S.E.2d 563 (Ga. 2000). In this matter, no settlor exists. The hospital is a charitable purpose, but without the action of the settlor there is no charitable trust. See 10 Ga. Jur. Decedest. § 22:2 (2004) (reasoning that there must be a manifest intent to create a charitable trust, thus a government conveyance of property to a school district for the advancement of the school did not create a charitable trust because there was not the intent to do so nor was there a charitable trust created when land was deeded to a city for use as a school because of the specific intent to create a charitable trust). Thus, Plaintiff's claim for breach of charitable trust must fail.

  5.  *Count Five:*  *Georgia Uniform Deceptive Trade Practices Act & Fair Business Practices Act*

Plaintiff has voluntarily dismissed Count Five of his complaint.

  6.  *Count Six:*  *Unjust Enrichment/Constructive Trust*

At oral argument, Defendants articulated that Plaintiff had waived this claim by his failure to rebut Defendants arguments in his response to Defendants' motion to dismiss.

Without deciding whether this claim has been abandoned, the Court will address its merits as there is considerable overlap with count four.

Pointing to the monies not paid in taxes and the fees charged to uninsured patients, Plaintiff asserts that Defendants have been unjustly enriched and that these undue proceeds should be placed in a constructive trust. "'Unjust enrichment applies when as a matter of fact there is no legal contract ..., but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.'" *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) (quoting *Smith v. McClung*, 452 S.E.2d 229, 232 (1994)). Following this definition of unjust enrichment, Plaintiff's claim is that Defendants have been unjustly enriched by not paying state or federal taxes and by charging Plaintiff, and others who are uninsured, a higher rate than is charged to insurance companies for medical treatment and services. And, to remedy this unjust result, Plaintiff would have these funds placed in a constructive trust for the benefit of uninsured patients. *See Lee v. Lee*, 392 S.E.2d 870 (Ga. 1990) (noting that a constructive trust is a remedy to prevent unjust enrichment). Because "the gist of an action based upon unjust enrichment rests in the promise, implied by law, that the person who wrongfully obtained the property will restore it to its rightful owner," Plaintiff has failed to state a claim for unjust enrichment. 7 Ga. Jur. Contracts §2:20 (2004).

None of the "property" Plaintiff alleges Defendants possess, tax-exempt status and funds paid by the uninsured, were wrongfully obtained. First, by virtue of the fact that they are not-for-profit corporations, Defendants were granted tax-exempt status. In fact, as

noted above, Defendants had to prove they deserved the tax-exempt performed the IRS would designate them as such. See **Am. Ass'n of Christian Sch. Voluntary Employees Beneficiary Ass'n Welfare Plan Trust v. United States**, 850 F.2d 1510, 1513 (11th Cir. 1988). The only way for Defendants tax-exempt status to be altered or amended is by government action. See **Clinton v. City of New York, et al.**, 524 U.S. 417, 460 (1998) (finding that a plaintiff may not challenge the government's tax treatment of a third-party). And even if this status were taken from Defendants, Plaintiff is not the rightful owner of such. Therefore, an unjust enrichment claim brought by Plaintiff based on Defendants tax-exempt status cannot succeed. Second, Plaintiff alleges that Defendants (1) charged the uninsured when they should not have been charged, stating that charity care should have been provided and (2) that the uninsured were charged higher rates than the insured. Plaintiff seeks to recover the funds from both of these activities for deposit into the constructive trust. There is no allegation that Plaintiff or any other uninsured patient paid Defendants for services or treatment that was not received. Thus, the funds uninsured patients paid Defendants were in exchange for the services and treatment rendered and rightfully belong to Defendants. Even though the Court was unable, at this stage of the litigation, to judge the validity of the charges Plaintiff was assessed, Defendants' receipt of those fees, even if they were higher than what was charged to insured patients, does not equal unjust enrichment. "'Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract,'" and the relationship between Plaintiff and Defendants was clearly governed by contract, which makes unjust enrichment an inapplicable cause of action. **Bonem v. Golf Club of Ga.**, 591 S.E.2d 462, 467-68 (Ga.

17

Ct. App. 2003) (citing **St. Paul Mercury Ins. Co. v. Meeks**, 508 S.E.2d 646, 648 (Ga. Ct. App. 1998)) (stating that "Bonem may not rely on unjust enrichment" because "a legal contract governs the dispute at issue."). As such, Plaintiff has not stated a claim for unjust enrichment.

B.    Supplemental Jurisdiction

Having dismissed the only grounds for federal subject-matter jurisdiction, the claims brought pursuant to § 501c3, the Court declines to continue to exercise supplemental jurisdiction over Plaintiff's state-law claims for breach of contract and breach of the duty of good faith and fair dealing. See 28 U.S.C.A. § 1367(c)(3) (West 1993). According to the Supreme Court, "[w]hen the balance of [judicial economy, convenience, fairness and comity] indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only the state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." **Carnegie-Mellon Univ. v. Cohill**, 484 U.S. 343, 350 (1988)(footnote omitted)(emphasis added); see also **United Mine Workers of Am. v. Gibbs**, 383 U.S. 715, 726 (1966)("Certainly, if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Although the Supreme Court's statement in **Cohill** was not intended to "establish a mandatory rule to be applied inflexibly in all cases," it did establish a general rule to be applied in all but extraordinary cases. **Cohill**, 484 U.S. at 350 n.7. The primary virtues of this rule are that it allows federal courts to better respect the sovereignty of the states, and to better promote justice, by avoiding unnecessary interpretations of state law. See **Gibbs**,

383 U.S. at 726 (warning that "[needless decisions of state law should be avoided both as a matter of comity and to promote justice between parties, by procuring for them a surer-footed reading of applicable law."). Simply put, it is preferable for the courts of Georgia to make rulings on issues of Georgia law rather than to have federal courts do so, even when those federal courts are in Georgia. Because there is nothing unusual or extraordinary about this case, the Court finds no reason not to follow the general rule articulated by the Supreme Court in *Cohill* and *Gibbs*. Accordingly, Plaintiff's state-law claims for breach of contract and breach of the duty of good faith and fair dealing are **DISMISSED** without prejudice.

## V.    CONCLUSION

According to the foregoing analysis, Plaintiff's count one, four, and six fail to state a claim upon which this Court may grant relief. In addition, the Court declines to exercise supplemental jurisdiction over counts two and three. As Plaintiff voluntarily dismissed count five, Defendant's Motion to Dismiss is **GRANTED**.

SO ORDERED, this 13th day of January, 2005.

s/    Duross Fitzpatrick

DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/has