UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER BURTON; FRANCIS
BURTON; and NIA BURTON, by her next
friend, FRANCIS BURTON; On Behalf of
Themselves and All Others Similarly
Situated,

    Plaintiffs,

v.

WILLIAM BEAUMONT HOSPITAL;
BEAUMONT PROPERTIES, INC.;
AMERICAN HOSPITAL ASSOCIATION;
JOHN DOES 1 THROUGH 10,

    Defendants.

Case No. 04-72735

HONORABLE AVERN COHN

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

### I. Introduction

This is a health-care case that plaintiffs eventually seek to certify as a class action.[1] Plaintiffs Jennifer Burton, Francis Burton, and Nia Burton[2] (collectively referred to as the Burtons) are suing Defendants William Beaumont Hospital and Beaumont Properties, Inc. (collectively referred to as Beaumont),[3] American Hospital Association

---

[1] While the complaint is styled "Class Action Complaint," as of now it is an action by the named plaintiffs only.

[2] Nia Burton is a minor and is represented in this action by her mother, Francis Burton.

[3] Beaumont says that Beaumont Properties, Inc., was absorbed into William Beaumont Hospital in 2002 and no longer exists as a separate legal entity.

(AHA), and John Does 1 through 10.

The complaint is highly argumentative and is not in conformity with FED. R. CIV. P. 8(a), which calls for, <u>inter alia</u>, "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." The Burtons assert the following claims in the complaint, listed by count number: (1) third-party breach of contract; (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable trust; (5) violation of the Michigan Consumer Protection Act (MCPA), MICH. COMP. LAWS § 445.901 <u>et seq.</u>; (6) violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd; (7) unjust enrichment/constructive trust; (8) injunctive/declaratory relief; (9) violation of federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 <u>et seq.</u>; (10) violation of 42 U.S.C. § 1983 (alleging violations of the Fifth and Fourteenth Amendments of the United States Constitution); (11) civil conspiracy/concert of action; and (12) aiding and abetting.[4]

Before the Court is (1) Beaumont's Motion to Dismiss and (2) AHA's Motion to Dismiss. For the reasons that follow, the motions are GRANTED IN PART and DENIED IN PART.

---

[4] The complaint only makes allegations against AHA for counts eleven (civil conspiracy/concert of action) and twelve (aiding and abetting).

2

## II. Background

### A. Factual Background[5]

Jennifer Burton and Nia Burton received medical treatment at Beaumont's Emergency Room.[6] The Burtons did not have health insurance at the time of their treatment at Beaumont. The Burtons claim that Beaumont required them to sign forms that guaranteed payment of the medical charges. They also say that Beaumont billed them "excessive and inflated rates" for medical care and "aggressively pursued the collection of these inflated charges" through "numerous harassing bills and collection letters. . . ."[7]

The Burtons do not challenge the quality of the medical care they received. Rather, they claim that because the Internal Revenue Service has granted Beaumont tax-exempt status under 26 U.S.C. § 501(c)(3), Beaumont has a duty to provide free or discounted medical care to the uninsured and that the Burtons have a right to bring suit

---

[5] The factual background is gleaned from the parties' papers.

[6] Although the complaint lists Francis Burton as a plaintiff, the complaint contains no allegations based on any medical care sought or received by Francis Burton for herself. Rather, the only allegation is that her daughter (Nia Burton) sought and received medical treatment from Beaumont.

[7] The complaint is silent with respect to when Jennifer and Nia Burton went to Beaumont's Emergency Room, why they went there, or what medical treatment they received there. The only statement in the complaint with respect to any medical condition is at paragraph 50, which states in part that Nia Burton "was approximately 1 year old at the time and required treatment for breathing difficulties." It is not alleged, however, that Nia Burton went to Beaumont's Emergency Room for breathing difficulties or received treatment for that condition while at Beaumont. Likewise, there is no information in the complaint regarding the amount Beaumont charged the Burtons for their medical treatment – a conspicuous omission, given that the essence of the Burtons' complaint is an allegation that Beaumont overcharged them for medical care.

3

to enforce this duty. The Burtons say that Beaumont "provide[s] little charity to [its] uninsured patients" and charges its uninsured patients "the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services. . . ." The Burtons claim that they are third-party beneficiaries of a contract between the government and Beaumont based on Beaumont's § 501(c)(3) status.

AHA is a not-for-profit association of health-care provider organizations.[8] AHA educates and informs its members on health-care issues and advocates on behalf of its members with respect to national health-care policy development. The Burtons claim that AHA conspired with Beaumont to breach (1) Beaumont's alleged contracts between (a) the government and Beaumont and (b) Beaumont and the Burtons, (2) Beaumont's alleged duty of good faith and fair dealing, and (3) the MCPA. The Burtons further allege that AHA aided and abetted the same breaches and violations. The Burtons base these claims primarily on AHA's advocacy on behalf of its members with respect to health-care policy issues and AHA's communications to its members about billing and collections.

### B. Procedural Background

This action is one of dozens of lawsuits filed across the country recently by uninsured patients alleging that hospitals are, <u>inter alia</u>, violating federal law regarding providing charity care. Several claimants in these cases filed with the Judicial Panel on

---

[8] AHA's website indicates that nearly "5,000 hospitals, health care systems, networks, and other providers of care and 37,000 individual members come together to form the AHA." <u>See</u> http://www.aha.org/aha/about/index.html.

Multidistrict Litigation (JPML) a motion to transfer and consolidate the pending actions to a single district court under 28 U.S.C. § 1407. The JPML entitled the proceedings "In re Not-for-Profit Hospitals/Uninsured Patients Litigation," MDL No. 1641. Based on the motion before the JPML, the Burtons filed a Motion to Stay Proceedings Pending Transfer to Multidistrict Litigation (MDL). At the time of the Burtons' motion to stay, actions like this one were before 21 federal district courts.[9] The Court denied the Burtons' motion and ordered this action to proceed in the regular course. See Sept. 28, 2004 Order, Docket No. 9.

On October 19, 2004, the JPML issued an order denying the other claimants' motion to transfer and consolidate on the basis that "centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation." In re Not-For-Profit Hospitals/Uninsured Patients Litigation, — F. Supp. 2d —, 2004 WL 2402186 (J.P.M.L. Oct. 19, 2004). Additionally, the Panel noted that the movants "have failed to persuade us that these actions share sufficient common questions of fact to warrant Section 1407 transfer." Id. The JMPL listed sixteen actions considered for consolidation and transfer. Of those, district courts have ruled on three. The Court's review of the dockets of the other cases reveals that twelve of the cases have pending motions to dismiss by the defendants. The defendants in one case have to date not filed a motion to dismiss or any other dispositive motion.

---

[9] The JMPL noted that the 21 districts were as follows: N.D. Ala., D. Ariz., N.D. Cal., D. Colo., M.D. Fla., S.D. Fla., M.D. Ga., N.D. Ga., S.D. Ga., N.D. Ill., D. Minn., S.D. Miss., E.D. Mo., N.D. Ohio, D. N.J., D. N.M., S.D.N.Y., W.D. Pa., M.D. Tenn., E.D. Tex., and N.D. Tex. The JMPL also stated that it had been notified of purportedly related actions filed in E.D. Ark., D. Conn., N.D. Fla., S.D. Ill., M.D. La., D. Mass., E.D. Mich., S.D. Miss., E.D.N.Y., E.D. Pa., and E.D. Va.

AHA is among the named defendants in all but one of the sixteen actions listed in the JMPL order.

Notably, the three district courts that have ruled on these lawsuits to date have found that the plaintiffs have failed to state causes of action. In Kizzire v. Baptist Health Sys., Inc., — F. Supp. 2d —, 2004 WL 2473473, *1 (N.D. Ala. Oct. 21, 2004), the only other published opinion to date regarding a case like this one, the district court concluded that the doctrine of res judicata barred all of the plaintiffs' claims against the defendants except for an EMTALA claim because the plaintiffs' claims against the defendants were compulsory counterclaims that plaintiffs were required to assert in a prior state-court action. Id. at *9-10.[10] In Amato et al. v. UPMC et al., No. 04-0125 (W.D. Pa. Nov. 23, 2004) United States Magistrate Judge Robert Mitchell issued a Report and Recommendation recommending that the defendants' motion to dismiss the complaint be granted. Id. at 1. As is true in this case, the primary allegation against the defendants in Amato was the plaintiffs' claim that the defendant hospital breached an alleged contract with the United States government by virtue of its status as a 26 U.S.C. § 501(c)(3) organization and that the plaintiffs should recover for the breach as third-

---

[10] It is instructive to note that the complaint in Kizzire made almost identical argumentative allegations against the defendants as the Burtons assert here against Beaumont. See id. at *1-*5. The Kizzire complaint did, however, contain information that is noticeably absent from the complaint in this action. Namely, the complaint stated the dates the plaintiffs received medical treatment from the defendant hospital, why they sought treatment at the hospital, what medical treatment they received, and how much the hospital charged them for the medical care – information the Burtons do not provide here. See id. at *6-*7. The plaintiffs in Kizzire also brought the same claims against the defendants as the Burtons bring against Beaumont, except for the FDCPA, MCPA, and 42 U.S.C. § 1983 claims. See id. at *1. Additionally, the Kizzire complaint brought the same claims against AHA as the Burtons bring against AHA here.

6

party beneficiaries of the contract. Id. at 4. The Magistrate Judge concluded that the plaintiffs (1) did not state a claim for third-party breach of contract, (2) did not state a claim for breach of a charitable trust and that they did not have standing to enforce such a claim, and (3) did not state a claim for an EMTALA violation. Id. at 6-10. The Magistrate Judge recommended that the district court decline to exercise supplemental jurisdiction over the plaintiffs' state-law claims, which were claims identical to those the Burtons bring here against Beaumont (except for the MCPA violation).[11] Id. at 3, 10. Finally, in Darr et al. v. Sutter Health, No. 04-02624 (N.D. Cal. Nov. 30, 2004), the district court consolidated two similar cases and ruled that the plaintiffs failed to state a claim against the defendant hospital. Id. at 2. Again, the Darr complaint brought identical claims against the defendant hospital as the Burtons bring against Beaumont, with the exception of the EMTALA, 42 U.S.C. § 1983, and MCPA claims.[12] The district court held that the plaintiffs in Darr failed to state a claim for (1) third-party breach of contract and (2) violation of FDCPA. Id. at 7-8. The court declined to exercise supplemental jurisdiction over the remaining state-law claims. Id. at 9.

### III. Discussion

### A. Legal Standard

A FED. R. CIV. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the

---

[11] The Amato plaintiffs did, however, assert a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, a statute analogous to the MCPA. See id. at 3.

[12] The Darr plaintiffs did, however, allege a violation of the California Consumers Legal Remedies Act, a statue analogous to the MCPA. See id. at 4.

7

light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). The complaint must allege more than "bare assertions of legal conclusions" to survive a Rule 12(b)(6) motion. Scheid, 859 F.2d at 436.

### B. The Claims

As an initial matter, Beaumont correctly notes that this case involves claims arising under federal and state law. Beaumont says that the Burtons have failed to state a claim for any of the federal-law claims; therefore, Beaumont maintains, the Court should decline to exercise supplemental jurisdiction over the state-law claims. In analyzing the two motions, the Court will first evaluate the viability of the claims arising under federal law and then, if necessary, proceed to the state-law claims.

### Claims Arising Under Federal Law

### 1. Third-Party Breach of Contract Under 26 U.S.C. § 501(c)(3)

In Count One, the Burtons claim that they are third-party beneficiaries of Beaumont's agreements with the United States government, the State of Michigan, and

local governments.[13] The Burtons say that Beaumont breached these purported agreements by, inter alia, failing to provide medical care to the Burtons "and the Class" without regard to their ability to pay and charging the Burtons "and the Class" more than insured patients for the same medical services.[14]

Beaumont says that no court has ever held that a not-for-profit organization enters into a contract with the United States when it qualifies for tax-exempt status under § 501(c)(3). The Burtons do not cite any such a case, nor can the Court find such a case. Nevertheless, the Burtons maintain that other courts have held that hospitals that applied for and accepted Hill-Burton funds, 42 U.S.C. § 291c,[15] were contractually obligated to provide charity care to uninsured patients and that third-party beneficiaries of these contracts could bring actions to enforce the contracts. The Burtons' arguments with respect to the Hill-Burton Act are not well-taken for these reasons: (1) no allegations in the complaint refer to the Hill-Burton Act or Beaumont's alleged acceptance of funds under the Act, and (2) unlike § 501(c)(3), the Hill-Burton Act provides for a private right of action to enforce the Act, see 42 U.S.C. § 300s-6.

In response to the Burtons' claim that Beaumont must provide mutually

---

[13] Paragraph 68 of the complaint alleges that Beaumont entered into "an express and/or implied Agreement with the United States Government" under § 501(c)(3).

[14] The allegations the Burtons make with respect to "the Class" are superfluous. Although the Burtons make allegations with respect to themselves and "the Class," the Burtons have not moved for class certification and thus no class has been certified. Therefore, the Court will only address allegations as to the Burtons and ignore any allegations that pertain to a non-existent "class."

[15] The Hill-Burton Act "was designed to promote the construction and modernization of hospitals." Baptist Hosp. v. Sec'y of Health and Human Serv., 802 F.2d 860, 869 (6th Cir. 1986).

9

affordable medical care as a result of its status as a § 501(c)(3) organization, Beaumont relies on Internal Revenue Service (IRS) Revenue Ruling 69-545, in which the IRS adopted the "community benefit" standard for determining if a not-for-profit hospital is operated for charitable purposes under § 501(c)(3). The ruling provides in part that

> [t]he promotion of health, like the relief of poverty and the advancement of education and religion, is one of the purposes in the general law of charity that is deemed beneficial to the community as a whole even though the class of beneficiaries eligible to receive a direct benefit from its activities does not include all members of the community, such as indigent members of the community, provided that the class is not so small that its relief is not of benefit to the community.

Beaumont also notes that Revenue Ruling 69-545 modified prior law to remove previous requirements "relating to caring for patients without charge or at rates below cost." Thus, Beaumont maintains, the Burtons' assertion that Beaumont must provide mutually affordable medical care as a § 501(c)(3) organization is without foundation and the Burtons therefore cannot maintain an action for third-party breach of contract. Beaumont is correct.

The Burtons also say that they have an implied right of action under § 501(c)(3). Beaumont disputes this assertion, maintaining that the Internal Revenue Code expressly vests exclusive enforcement authority in the Secretary of Treasury. See 26 U.S.C. § 7801. Despite this, however, the Burtons say that Cort v. Ash, 422 U.S. 66 (1975), supports the finding of an implied right of action in this case. The Burtons say that it is not statutory remedies they seek, but rather contractual remedies based on Beaumont's alleged formation of a contract with the government.

The assertion that the Burtons' have an implied right of action under § 501(c)(3) is extraordinary given the fact that the Supreme Court has counseled against construing

10

a statute as creating a contractual relationship. See Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985):

> For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."

(internal citation omitted).

The Court of Appeals for the Sixth Circuit has noted that while the Supreme Court once used the test set forth in Cort to determine whether a statute creates an implied right of action, the Cort test has since been modified and "is most appropriately described now as 'whether Congress intended to create, either expressly or by implication, a private cause of action.'" Bailey v. Johnson, 48 F.3d 965, 968 (6th Cir. 1995) (internal citation omitted); see also Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (holding that Congressional intent is determinative when ascertaining whether a private cause of action exists under a statute). The cases on which the Burtons rely in support of their implied right of action theory all involve the Hill-Burton Act; none of them involves § 501(c)(3).[16] As noted above, the Hill-Burton Act allows for a private right of action. Section 501(c)(3), however, does not. As Beaumont notes in its brief, the absence of a private right of action under § 501(c)(3) is noteworthy because

---

[16] The Burtons' counsel at oral argument relied on Euresti v. Stenner, 458 F.2d 1115 (10th Cir. 1972), for the proposition that the Burtons have a third-party breach of contract action against Beaumont based on its § 501(c)(3) status. This argument is not well taken. Contrary to what the Burtons' counsel represented to the court at oral argument, Euresti makes absolutely no mention of the defendant hospital having § 501(c)(3) status. Indeed, no mention of 26 U.S.C. § 501(c)(3) is found anywhere in that opinion. Euresti involved a hospital receiving Hill-Burton funds, a fact the Burtons do not allege here.

Congress has established private rights of action in the Internal Revenue Code for other tax-related matters.  See, e.g., 26 U.S.C. §§ 7431(a)(1), 7433; see also Salazar v. Brown, 940 F. Supp. 160, 166 (W.D. Mich. 1996) (holding that plaintiffs did not have private right of action under the Federal Insurance Contributions Act (FICA) and noting that "the Sixth Circuit would clearly find it persuasive that Congress has passed thousands of amendments to the . . . Internal Revenue Code, virtually on a yearly basis, without once creating a private right of action.").

In sum, the record and case law demonstrates that the Burtons cannot prove a set of facts to support their claim for third-party breach of contract because there is no legal authority to support the notion that a theory of liability exists based on Beaumont's status as a § 501(c)(3) organization.

### 2. Breach of Charitable Trust Under 26 U.S.C. § 501(c)(3)

Count Four of the complaint alleges that Beaumont entered into a "public charitable trust to provide mutually affordable medical care to its uninsured patients" by virtue of its § 501(c)(3) status.  The Burtons allege that they are the intended beneficiaries of this alleged charitable trust.  Again, this count is premised on the existence of a private right of action the Burtons allegedly have to enforce an alleged contract flowing from the fact that Beaumont is a § 501(c)(3) organization.  Because the Court has concluded that the Burtons have not stated such a claim, this count likewise fails and must be dismissed.

Additionally, and significantly, even if the Burtons were able to establish the existence of a charitable trust and a breach, the Burtons would not be proper parties for purposes of prosecuting the breach.  It is well established that private parties like the

Burtons may not sue to enforce a charitable trust in circumstances like the Burtons claim here; rather, the Attorney General is the proper party. As one treatise summarizes:

> As a general rule no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust. The courts usually require that suits for enforcement be brought by the established representative of the charity, the Attorney General, so that the trustees may not be vexed by frequent suits, possibly based on an inadequate investigation and brought by irresponsible parties, and so that the courts may not find their calendars clogged with an unnecessarily large amount of litigation.

GEORGE GLEASON BOGERT, BOGERT'S TRUSTS AND TRUSTEES § 414 (2004); accord RESTATEMENT (SECOND) OF TRUSTS § 391 cmt. a (1959) ("[s]ince the community is interested in the enforcement of charitable trusts, a suit to enforce a charitable trust can be maintained by the Attorney General of the State in which the charitable trust is to be administered."). Under Michigan law, this principle is codified at MICH. COMP. LAWS § 14.254:

> The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state.
>
> . . .
>
> The attorney general is a necessary party to all court proceedings . . . to terminate a charitable trust or to liquidate or distribute its assets, or . . . to construe the provisions of an instrument with respect to a charitable trust.

M.C.L. § 14.254(a)-(b); see also Olesky v. Sisters of Mercy of Lansing, Mich., 92 Mich. App. 770, 777 (1979) (affirming trial court's holding that even if a charitable trust were created with respect to a hospital, the court could not consider the issue of whether the hospital breached the trust's terms because Michigan law assigns prosecution of such

13

violations exclusively to the attorney general). Given the fact that Beaumont is a registered Michigan non-profit corporation, the Burtons' complaint regarding how Beaumont allegedly treats indigent and uninsured patients should more appropriately have been addressed to the Attorney General of Michigan. See M.C.L. § 14.254.

### 3. EMTALA Violation

Count Six of the complaint alleges that Beaumont violated EMTALA, 42 U.S.C. § 1395dd, because Beaumont allegedly conditioned its medical treatment for the Burtons on their ability to pay for the treatment.[17] The Burtons say that Beaumont required the Burtons to sign "form contracts agreeing to pay [Beaumont] in full for unspecified and undiscounted medical charges," which they claim violates EMTALA. Beaumont says that the Burtons have failed to state an EMTALA claim because, inter alia, they received prompt emergency medical care at Beaumont and suffered no personal harm or injury as a result of the medical care that Beaumont provided.[18]

---

[17] The Court observes that the Burtons' allegations for the EMTALA count are deficient given the very nature of an EMTALA claim. In 1986, Congress enacted EMTALA in an effort to prevent "patient dumping, the practice of refusing medical treatment to those unable to afford it." See Michael J. Frank, Tailoring EMTALA to Better Protect the Indigent: The Supreme Court Precludes One Method of Salvaging a Statute Gone Awry, 3 DEPAUL J. HEALTH CARE L. 195 (2000); see also H.R. REP. NO. 99-241, pt. 1, at 27 (1985) ("[t]he Committee is greatly concerned about the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance."). The Burtons do not allege that Beaumont refused to accept or treat them; indeed, the Burtons do not allege any deficiency in the quality of the medical care they received at Beaumont. Allegations concerning a visit to a hospital are generally fact intensive. The Burtons, however, do not provide details in the complaint regarding when they visited Beaumont, why they visited Beaumont, or what medical treatment they sought or received while in Beaumont's Emergency Room.

[18] Beaumont also notes that the Burtons' claims may be barred by EMTALA's two-year statute of limitations, but, as noted above, the complaint does not indicate