EMTALA requires hospitals with emergency departments to "provide for an

appropriate medical screening examination" to determine whether a person presented

to the emergency department has an "emergency medical condition."  See 42 U.S.C. §

1395dd(a).  If the patient has an "emergency medical condition" as defined under the

statute, the hospital must either further examine the patient and provide appropriate

treatment to "stabilize the medical condition," or it must provide for transfer of the

patient to another medical facility in accordance with additional provisions under

EMTALA.  See 42 U.S.C. § 1395dd(b)(1)(A)-(B).  The statute also provides that

> [a] participating hospital may not delay provision of an appropriate medical
> screening examination required under subsection (a) of this section or further
> medical examination and treatment required under subsection (b) of this section
> in order to inquire about the individual's method of payment or insurance status.

42 U.S.C. § 1395dd(h).  Under section (2)(A) of the statute,

> [a]ny individual who suffers personal harm as a direct result of a participating
> hospital's violation of a requirement of this section may, in a civil action against
> the participating hospital, obtain those damages available for personal injury
> under the law of the State in which the hospital is located, and such equitable
> relief as is appropriate.

Beaumont says that the Burtons do not allege that they were denied emergency

treatment because of their inability to pay or that their examination or treatment at

Beaumont was delayed even if Beaumont inquired about their ability to pay.  The

Burtons disagree.  The relevant provision of the complaint in dispute reads as follows:

> Before the William Beaumont Defendants would provide emergency medical
> screening and/or treatment for "emergency medical conditions" to the Plaintiffs
> and the Class, they first analyzed their ability to pay for such medical care and

---

when the Burtons received medical care at Beaumont.  See 42 U.S.C. §
1395dd(d)(2)(C) ("No action may be brought under this paragraph more than two years
after the date of the violation with respect to which the action is brought.").

> required the Plaintiffs and the Class to sign form contracts agreeing to pay the William Beaumont Defendants in full for unspecified and undiscounted medical charges. The William Beaumont Defendants would not provide emergency medical screening and/or treatment to the Plaintiffs and Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for sum medical care. By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiffs' and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given, the William Beaumont Defendants violated the EMTALA, 42 U.S.C. §1395 dd. . . .

Compl. at ¶ 97. A fair reading of the complaint indicates that the Burtons allege that

Beaumont would not provide "emergency medical screening and/or treatment" to the

Burtons unless they signed a contract guaranteeing payment or until they signed such a

contract. This language alleges that Beaumont would not even provide treatment until

the Burtons signed an alleged contract for payment. Although it is true, as Beaumont

notes, that the implementing regulations for EMTALA allow hospitals to implement

"reasonable registration processes," the express language of that regulation provides

that such processes may not delay screening or treatment:

> Hospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, as long as that inquiry does not delay screening or treatment. Reasonable registration processes may not unduly discourage individuals from remaining for further evaluation.

42 C.F.R. § 489.24(d)(4)(iv). Here, the complaint charges that Beaumont allegedly

would not screen or treat the Burtons until they signed a contract guaranteeing payment

for medical services. This suggests that screening or treatment could have been

delayed by virtue of Beaumont's alleged requirement of the Burtons to sign the

purported contract. While it is true that the Burtons do not challenge the quality of

treatment received at Beaumont, specific inquiries into whether Beaumont's alleged

16

registration process actually delayed the Burtons' emergency screening and/or
treatment is improper at this stage of the litigation because a motion to dismiss merely
tests the factual allegations in the complaint. Any further inquiry is more appropriate at
the summary judgment stage.

Beaumont also says that the Burtons have failed to state an EMTALA claim
because they did not allege "personal harm," as is required under EMTALA to bring a
civil action against a hospital to obtain damages available for personal injury.
Beaumont is correct. The complaint states that "[s]uch violations of 42 U.S.C. §1395 dd
have proximately caused the Plaintiffs and the Class economic injury and other
damages." Without more specifics in the complaint, the Court cannot determine if the
Burtons suffered adequate "personal harm" that is required to state an EMTALA claim.
If the Burtons believe that they have a stand-alone EMTALA claim, they must file an
amended complaint and properly plead an EMTALA claim.

## 4. FDCPA Violation

Count Nine of the complaint alleges that Beaumont has pursued the Burtons for
debts allegedly owed to Beaumont. The complaint alleges that the debts are covered
by 15 U.S.C. § 1692a(5) and states that the FDCPA mandates that a "debt collector
may not use false, deceptive or misleading representations or means in connection with
the collection of a debt." The complaint says that Beaumont's conduct in allegedly
overcharging uninsured patients and collecting debts "is an unconscionable,
discriminating, misleading, and deceptive creation and collection of inflated debts from
uninsured patients" that violates the FDCPA.

Beaumont says that the Burtons have not stated a claim because Beaumont is

17

not a "debt collector" under the FDCPA. The FDCPA provides a comprehensive

definition of the term "debt collector," and it is clear from the statutory definition of that

term that it does not apply to a creditor that is collecting its own debt. See 15 U.S.C.

1692a(6). Case law is in accord. See Montgomery v. Huntington Bank, 346 F.3d 693,

698-99 (6th Cir. 2003) (affirming dismissal of FDCPA claims because defendant, a

bank, was not a debt collector within the meaning of FDCPA; rather, it was one of the

plaintiff's creditors); Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 794 (W.D.

Ky. 2003); Bleich v. Revenue Maximization Group, Inc., 239 F. Supp. 2d 262, 264

(E.D.N.Y. 2002) (holding that a hospital, which sought to collect a patient's debt, could

not be a "bill collector" under the FDCPA).

     The Burtons respond that the FDCPA expressly provides for actions against a

creditor in some circumstances:

> [T]he term includes any creditor who, in the process of collecting his own debts,
> uses any name other than his own which would indicate that a third person is
> collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6). While this statement is true, the Burtons simply assert this

claim in their brief without any argument regarding why this portion of the definition of a

"debt collector" is applicable to Beaumont. Indeed, nothing in the complaint alleges that

Beaumont attempted to collect debts in any name other than its own. The Burtons cite

Maguire v. Citicorp Retail Serv., Inc., 147 F.3d 232 (2d Cir. 1998) for this portion of their

argument. In Maguire, defendant Citicorp sent the plaintiff a letter from "Debtor

Assistance." Id. at 234. The court could not find that "a least sophisticated consumer

would have known that the Debtor Assistance letter was from Citicorp." Id. at 236. The

court said the letter created the impression that a third party was collecting Citicorp's

debts.[19] Id. This case provides no support for the Burtons' claim here, however,

because they did not allege in the complaint that Beaumont at any time used a name

other than its own to collect its debts.

The Burtons next say in their brief that Beaumont violated the FDCPA by

misrepresenting "the character, amount, or legal status of any debt." See 15 U.S.C. §

1692e(2)(A). A reading of this portion of the FDCPA, however, reveals that it only

applies to debt collectors:

> **§ 1692e.  False or misleading representations**
>
> A **debt collector** may not use any false, deceptive, or misleading representation
> or means in connection with the collection of any debt.  Without limiting the
> general application of the foregoing, the following conduct is a violation of this
> section:
>
> . . .
>
> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; or
>
> . . .

15 U.S.C. §1692e(2)(A) (emphasis added).  Because the Court has determined that the

Burtons cannot prove that Beaumont is a "debt collector" within the meaning of the

FDCPA based on the allegations in the complaint, their claim that Beaumont violated §

1692e(2)(A) also fails.

### 5. 42 U.S.C. § 1983 Claim

The Burtons seek recovery under Count Ten of the complaint for what they claim

to be Fifth and Fourteenth Amendment equal protection violations based on "invidious

---

[19] In fact, Debtor Assistance was a unit of Citicorp responsible for delinquent
accounts. Id. at 234.

discrimination against uninsured patients" by "[c]harging uninsureds considerably more for their health care than insured patients. . . ."[20]  Beaumont says that the Burtons have failed to state a claim because Beaumont is not a state actor and it is well established that a 42 U.S.C. § 1983 claim only applies to those acting under color of state law.

Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law."  Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted).

The complaint alleges that Beaumont participates in the Medicaid and Medicare programs and receives payments from those government programs, that Beaumont has received "charity care subsidies" from the State of Michigan, that Beaumont acts pursuant to contracts with the federal and state governments to determine the rates it charges uninsured patients, and that Beaumont claims that "federal and state laws compelled [it] to charge inflated undiscounted rates for uninsured patients."

First, with respect to the Burtons' statement that Beaumont claimed that certain laws compelled it to charge allegedly inflated rates for uninsured patients, nothing in the

---

[20] The Fourteenth Amendment is applicable to the states and provides in part that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  In Bolling v. Sharpe, 347 U.S. 497 (1954), the Supreme Court held that equal protection applies to the federal government through the due process clause of the Fifth Amendment ("nor shall any person . . . be deprived of life, liberty, or property, without due process of law. . . .").

record indicates that Beaumont made such a claim. Additionally, this statement is in contradiction with paragraph 73 of the complaint, which is incorporated by reference into the Burton's § 1983 claim. Paragraph 73 alleges that Beaumont "in [its] sole discretion" set "unspecified and undocumented charges for medical care" that the Burtons were "required to agree to pay." The Burtons do not cite to anything to support their claim that federal or state laws compel Beaumont to charge inflated rates.

Equally baseless is the Burtons' conclusory statement that state action is present because Beaumont misapplies federal and state laws for improper purposes. The Burtons cite a Fifth Circuit case, Hollis v. Itawamba County Loans, 657 F.2d 746, 749-50 (5th Cir. 1981), in support of this argument. Beaumont correctly notes in its reply that in Hollis, the plaintiff sued under § 1983 claiming Fourteenth Amendment violations. Id. at 747. The plaintiff alleged that a private creditor acted in concert with a state-court judge and county constable to abuse Mississippi's replevin statute. Id. The Fifth Circuit reversed the district court's dismissal of the action, stating that the plaintiff stated a claim based upon improper abuse of Mississippi's replevin procedure. Id. at 749-50. The Fifth Circuit later clarified its ruling in Hollis, however, by noting that Hollis involved an ex parte, prejudgment situation in which "courts have found the state is itself participating in the deprivation of property. . . ." Earnest v. Lowentritt, 690 F.2d 1198, 1201 (5th Cir. 1982). The Earnest court went on to note that "[p]rivate misuse of a state statute alone does not describe conduct that can be attributed to the state." Id. The Burtons do not allege that Beaumont acted in concert with the government with respect to the alleged constitutional violations at issue.

To the extent the Burtons base a claim of state action on Beaumont's receipt of

Medicaid and Medicare funds or alleged "charity care subsidies," these arguments likewise fail to establish state action. This Court and other courts have held that a private hospital is not transformed into a state actor by virtue of receiving federal and state funding and tax-exempt status. See Jeung v. McKrow, 264 F. Supp. 557, 571 (E.D. Mich. 2003) (dismissing § 1983 claim because "private hospitals operating as not-for-profit entities under the Internal Revenue Code and receiving public funds through federal welfare programs are not thereby converted into state actors within the meaning of Section 1983."); see also Sarin v. Samaritan Health Ctr., 813 F.2d 755, 759 (6th Cir. 1987) (holding that plaintiff failed to state a claim under § 1983 because state regulation of hospital and receipt of Medicare and Medicaid funds do not establish state action); Beyer v. Lakeview Cmty. Hosp., 1999 WL 552606, *1, *4 (6th Cir. July 26, 1999) (affirming dismissal of § 1983 claims against private hospital because no state action was present).

## Claims Arising Under State Law

In the interests of economy, it seems appropriate for the Court to exercise supplemental jurisdiction over the state-law claims. See 28 U.S.C. § 1367.

### 1. Breach of Contract

Count Two of the complaint alleges that the Burtons "entered into express form contracts" with Beaumont that required the Burtons "to agree to pay unspecified and undocumented charges for medical care set by [Beaumont] in [its] sole discretion." The Burtons allege that by admitting the Burtons into the hospital, Beaumont "undertook an express and/or implied contractual obligation to charge [the Burtons] no more than a

22

fair and reasonable charge for such medical care." The Burtons say that Beaumont breached the purported contract by charging the Burtons "the highest and full undiscounted cost for medical care" and that the alleged breach caused the Burtons "economic injury and other damages."

Because Beaumont assumed that the Court would find that none of the Burtons' federal claims is viable, Beaumont failed to brief this state-law breach of contract claim for the instant motion. Accordingly, without a full briefing of this issue, the Court cannot determine whether the claim should be dismissed.

### 2. Breach of Duty of Good Faith and Fair Dealing

Count Three of the complaint alleges that Beaumont breached its duty of good faith and fair dealing to the Burtons. This claim makes reference to (1) the alleged third-party beneficiary status the Burtons have based on Beaumont's § 501(c)(3) status, and (2) the alleged contract between the Burtons and Beaumont when the Burtons were admitted to Beaumont and allegedly signed documents requiring them to agree to pay for their medical care. This claim fails to the extent that the count alleges a violation of good faith and fair dealing with respect to an alleged contract based on Beaumont's § 501(c)(3) status. As discussed above, the Burtons have failed to state a claim for third-party breach of contract.

With respect to the alleged state-law breach of contract under Count Two, Beaumont did not brief this issue. Accordingly, the Court cannot consider whether to dismiss any claim against Beaumont for an alleged breach of duties of good faith and fair dealing under the alleged contract.

23

### 3. MCPA Violation

The Burtons allege in Count Five of the complaint that Beaumont violated the MCPA by charging the Burtons "the highest and full uncompensated cost for medical care and . . . a higher amount than its insured patients for the same medical services despite its charitable, nonprofit, tax exempt status. . . ." The Burtons also claim that Beaumont's "aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt" from the Burtons violates the MCPA.

As noted above, Beaumont has not briefed this issue. Accordingly, the Court cannot consider whether this claim should be dismissed.

### 4. Unjust Enrichment/Constructive Trust

Count Seven alleges that Beaumont has been unjustly enriched at the Burtons' expense because it has failed to provide "mutually affordable medical care . . . despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose." The complaint alleges that as a result of Beaumont's breach of contract (purportedly based on the Burtons' claim that a contract exists based on Beaumont's § 501(c)(3) status) Beaumont is in possession of "tax savings, profits and other assets that [it] in good conscience and equity should not be entitled to retain." The Burtons ask the Court to impose a constructive trust in the amount of Beaumont's federal, state and local tax exemption savings.

This claim is apparently based on the Burtons' claim that a contract exists between the government and Beaumont based on Beaumont's § 501(c)(3) status and that the Burtons are third-party beneficiaries of such a contract. As discussed above,

24

however, the Court finds that the Burtons have failed to state a claim for a third-party
breach of contract. This claim, therefore, must fail also.

### 5. Civil Conspiracy/Concert of Action

Count Eleven of the complain alleges wrongdoing by Beaumont and AHA.
Specifically, it alleges that AHA "actively conspired and acted in concert with
[Beaumont] to wrongfully retain [its] tax exempt status and breach [Beaumont's]
contracts with the United States Government, State of Michigan, and other local
governmental bodies, the Plaintiffs and the Class. . . ." This count also alleges that
AHA conspired with Beaumont to violate MCPA.

This claim fails to the extent it alleges a conspiracy with respect to the Burtons'
claim for third-party breach of contract based on Beaumont's § 501(c)(3) status. The
language of this count, however, also encompasses (1) the Burtons' claim that
Beaumont breached an alleged contract with the Burtons, (2) the Burtons' claim that
Beaumont breached an alleged duty of good faith and fair dealing with respect to the
alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for
violation of MCPA. As discussed above, these claims have not been briefed.
Accordingly, the Court cannot consider whether the Burtons have stated a claim for
conspiracy with respect to these three claims.

### 6. Aiding and Abetting

Count Twelve of the complaint alleges that AHA aided and abetted Beaumont in
breaching the same claims detailed in the Burtons' conspiracy claim (Count Eleven).
Again, this aiding and abetting claim fails to the extent it argues that AHA aided and

25

abetted Beaumont in a third-party breach of contract by virtue of its § 501(c)(3) status because the Court concludes that the Burtons have failed to state a claim for third-party breach of contract. The Court cannot, however, consider whether this claim can stand for the other allegations that the parties have not briefed: (1) the state-law breach of contract claim, (2) the good faith and fair dealing claim with respect to the alleged contract between Beaumont and the Burtons, and (3) the MCPA claim.

## Procedural Issue

### 1. Injunctive/Declaratory Relief

Count Eight of the complaint asks the court to enter a preliminary and/or permanent injunction under FED. R. CIV. P. 23(b)(2), ordering Beaumont to stop (1) charging the Burtons the "highest and full undiscounted cost of medical care," (2) charging the Burtons "a higher amount for medical services than its insured patients for the same services," and (3) using "aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt" from the Burtons.

Relief under FED. R. CIV. P. 23(b)(2) is for cases certified as class actions. This case has not been so certified, and the Burtons have not yet moved for class certification; therefore, any challenge to this count is not ripe for the Court's consideration.

## IV. Conclusion

In sum, the Court rules on the instant motions as follows:

| COUNT | CLAIM | DISPOSITION |
|---|---|---|
| 1 | Third-Party Breach of Contract | DISMISSED |
| 2 | Breach of Contract | CLAIM REMAINS; the parties failed to brief the issue |
| 3 | Breach of Duty of Good Faith and Fair Dealing | DISMISSED to the extent the claim alleges a violation of good faith and fair dealing with respect to an alleged contract based on Beaumont's § 501(c)(3) status<br><br>CLAIM REMAINS to the extent it alleges a violation based on an alleged contract between Beaumont and the Burtons because the parties did not brief the issue |
| 4 | Breach of Charitable Trust | DISMISSED |
| 5 | Violation of MCPA | CLAIM REMAINS; the parties failed to brief the issue |
| 6 | Violation of EMTALA | DISMISSED |
| 7 | Unjust Enrichment/ Constructive Trust | DISMISSED |
| 8 | Injunctive/ Declaratory Relief | CLAIM REMAINS; the issue is not ripe for consideration because the Burtons have not moved for class certification |
| 9 | Violation of FDCPA | DISMISSED |
| 10 | 42 U.S.C. § 1983 | DISMISSED |
| 11 | Civil Conspiracy/ Concert of Action | DISMISSED to the extent the claim alleges a conspiracy with respect to an alleged third-party breach of contract based on Beaumont's § 501(c)(3) status<br><br>CLAIM REMAINS to the extent it alleges a conspiracy regarding (1) an alleged contract between Beaumont and the Burtons, (2) the Burtons' claim that Beaumont breached an alleged duty of good faith and fair dealing with respect to the alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for violation of MCPA. The parties did not brief those issues. |

27

| COUNT | CLAIM | DISPOSITION |
|-------|-------|-------------|
| 12 | Aiding and Abetting | DISMISSED to the extent the claim alleges aiding and abetting with respect to an alleged third-party breach of contract based on Beaumont's § 501(c)(3) status<br><br>CLAIM REMAINS to the extent it alleges aiding and abetting regarding (1) an alleged contract between Beaumont and the Burtons, (2) the Burtons' claim that Beaumont breached an alleged duty of good faith and fair dealing with respect to the alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for violation of MCPA.  The parties did not brief those issues. |

SO ORDERED.

/s/
_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  December 3, 2004
Detroit, Michigan

28