UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LLOIDA LORENS, on behalf of herself and all others similarly situated, | Case No.: 1:04 CV 1151 |
| Plaintiff | JUDGE SOLOMON OLIVER, JR. |
| v. | |
| CATHOLIC HEALTH CARE PARTNERS, *et al.*, | |
| Defendants | <u>ORDER</u> |

Plaintiff Lloida Lorens ("Lorens" or "Plaintiff") filed the instant action as a class action complaint against Defendants Catholic Healthcare Partners, Community Health Partners, Community Health Partners Hospital and Surgical Center and ten John Does (together "CHP"), and the American Hospital Association ("AHA") (together, "Defendants"). The court held a hearing on Defendants' Motions to Dismiss (ECF Nos. 17 and 20) on January 5, 2005, at 2:00 p.m. The heart of Plaintiff's Complaint are allegations that CHP, a 26 U.S.C. § 501(c)(3) charitable organization, charges uninsured patients substantially higher rates than insured patients. The Amended Complaint alleges the following claims against CHP: (1) a third party-beneficiary claim for breach of contract between CHP and the federal government under 26 U.S.C. § 501(c)(3); (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable

trust under 26 U.S.C. § 501(c)(3); (5) violation of the Ohio Consumer Sales Practices Act (OCSPA), O.R.C. § 1345; and (6) unjust enrichment. Additionally, the Complaint asserts claims against AHA for (7) civil conspiracy and (8) aiding and abetting the violations pled in Counts (2), (3), and (5) above.

Pending before the court are Defendants CHP and AHA's Motions to Dismiss (ECF Nos. 17 and 20.) For the following reasons, both Motions are granted as to all claims arising from Counts (1) and (4), the claims over which the court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331. The remaining state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

## I. FACTS

According to Plaintiff's Complaint, she received medical services at a CHP hospital. Thereafter, CHP sued Plaintiff in Ohio state court when she failed to pay her bill. Plaintiff claims she was charged an unreasonable rate for her medical care. She further asserts that CHP charges higher prices to uninsured patients than it does to insured patients for comparable services. (First Am. Compl. ¶ 15, 18.)

Defendant CHP is a not-for-profit, charitable hospital organization with federal tax exempt status under 26 U.S.C. § 501(c)(3). The Complaint alleges that by accepting 501(c)(3) tax exemption, CHP:

> explicitly and/or implicitly agreed: to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide affordable medical care to all of its patients; to use its net assets and revenues to provide affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients.

(First Am. Compl. at ¶ 11.) Plaintiff contends CHP has failed to meet these obligations, and that she and others similarly situated are third party beneficiaries of these obligations.

AHA is a national association of not-for-profit hospitals and health care organizations. On December 16, 2003, AHA sent a letter to Department of Health and Human Services Secretary Tommy

Thompson. According to Plaintiff, this letter "falsely represented to the Secretary that nonprofit hospitals were required by the federal Medicare regulations to charge and aggressively collect such grossly inflated medical expenses." (*Id.* at ¶ 20.) Plaintiff also contends that AHA sent a White Paper to its membership falsely advising that "the Medicare laws and regulations prevented them from offering discounts to uninsured patients and required them to aggressively collect medical debt from the uninsured through collections lawsuits, liens and garnishments." (*Id.* at 23.)

## II. DISMISSAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the court to determine the legal sufficiency of a plaintiff's claims. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Courts reviewing a 12(b)(6) motion must accept the well-pled factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the court is not required to accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 123 (6th Cir. 1971). Accordingly, a court must determine "whether the plaintiff undoubtedly can prove no set of facts in support of [his] claim that would entitle [him] to relief" under a viable legal theory advanced in the complaint. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1041 (1996).

## III. RELATED ONGOING LITIGATION

The court notes that this lawsuit is one of dozens of similar lawsuits filed in district courts across the country on behalf of uninsured and indigent patients. In October 2004, the Judicial Panel on Multidistrict Litigation rejected a motion to transfer and consolidate the pending actions into one combined action. *In*

-3-

*re Not-For-Profit Hospitals/Uninsured Patients Litigation*, 341 F.Supp.2d 1354 (J.P.M.L. 2004). As an initial matter, the court looks to those other actions to see if they offer any guidance. At the time of the hearing, Plaintiffs had voluntarily dismissed five cases prior to a ruling on a motion to dismiss.[1] In three additional actions, the district courts had granted defendants' motions to dismiss. *Burton v. William Beaumont Hosp.*, 2004 WL 2790624 (E.D. Mi. Dec. 3, 2004); *Darr v. Sutter Health*, 2004 WL 2873068 (N.D. Ca. Nov. 30, 2004); *Amato v. UPMC*, No. 04-1025 (W.D. Pa. Nov. 23, 2004). No court has yet to find for the Plaintiffs on any substantive legal issue. Although the court analyzes this specific case on its own merits, the court does find the legal analysis from the other dismissals persuasive.

## IV. LAW AND ANALYSIS

### A. Third-Party Beneficiary Breach of Contract

Plaintiff maintains that CHP owes her, and other similarly-situated uninsured Americans, a contractual duty based on CHP's tax-exempt status under 26 U.S.C. § 501(c)(3). Plaintiff further contends that CHP has breached its contractual duties, and that as a third-party beneficiary of the contract, she has an implied cause of action to sue CHP for damages on the contract.

Permitting this claim to continue would require the court to make numerous jumps in logic that run counter to legal authority. First, the court would need to find that the tax code creates a binding contract, a proposition for which there is nearly no legal support. The court would then need to find an implied cause

---

[1] *Shipman v. Inova Health Care Services, et al.*, No. 1:04-CV910 (E.D.Va, filed 8/6/04); *Woodrum v. Integris Health, Inc.*, No. 5:04-CV00835 (W.D. Okla., filed 7/7/04); *Kelly v. Northeast Georgia Med. Ctr.*, No. 2:04-CV00139-WCD (N.D. Ga., filed 7/21/04); *Frimpong v. DeKalb Med. Ctr.*, No. 1:04-CV01745-WCO (N.D. Ga., filed 6/16/04); *Maldonado v. Ochsner Clinic Fdn.*, No. 04-CV1987 (E.D. La., filed 7/15/04).

of action in the tax statute granting private citizens the right to sue for damages, a cause of action that is not supported by the case law. Next, the court would need to find that Plaintiff had standing to sue as a third-party beneficiary on a purported contract under which Plaintiff and Plaintiff's class are not specifically mentioned as third party beneficiaries. Even if the court made these stretches in legal interpretation, the court would then need to construct specific terms in such a contract (specific terms that do not appear to exist in the statutory or regulatory language) and assess whether Plaintiff's allegations, if true, could constitute a breach. While the court in no way minimizes the importance of the issues Plaintiff seeks to raise, an analysis of the claim indicates that it has no legal merit.

1. Does a Contract Exist?

The first barrier to Plaintiff's claim is the lack of legal precedent for the proposition that 501(c)(3) tax exempt status creates any kind of contract or contractual obligation. No court has ever held that 501(c)(3) creates a binding contract. Further, courts do not consider the tax code to be contractual. *E.g.*, *McLaughlin v. Comm'r of IRS*, 832 F.2d 986, 987 (7th Cir. 1987) ("the notion that the Federal Income Tax is contractual or otherwise consensual in nature is not only utterly without foundation but . . . has been repeatedly rejected by the courts.") Without language in the 501(c)(3) statute indicating Congressional intent to create a contract, the presumption is that statutes are not, and do not create, contracts. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985).

> [A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). See also *Rector of Christ Church v. County of Philadelphia*, 24 How. 300, 302, 16 L.Ed. 602 (1861) ("Such an interpretation is not to be favored"). This

> well-established presumption is grounded in the elementary proposition that
> the principal function of a legislature is not to make contracts, but to make
> laws that establish the policy of the state.

*Id.* An examination of the 501(c)(3) statute indicates it does not contain any language establishing a contract. Rather, it lists the types of organizations that may be tax-exempt. 26 U.S.C. 501(c)(3). Absent any specific contract-creating language, the presumption is that a tax provision such as 501(c)(3) is not contractual.

Plaintiff counters by seeking to analogize 501(c)(3) to the Hill-Burton Act, 42 U.S.C. § 291, a government program that awarded funds to hospitals servicing uninsured or indigent patients. She argues that since courts recognized the Hill-Burton Act as an enforceable contract between hospitals and the government, 501(c)(3) should also be read as a contract. *See Flagstaff Medical Ctr, Inc.*, 962 F.2d 879 (9th Cir. 1992). This analogy is not persuasive because the Hill-Burton Act is substantially different from 26 U.S.C. § 501(c)(3) for a number of reasons. The Hill-Burton Act provided direct funds to hospitals; 501(c)(3) provides tax exemptions. The Hill-Burton Act required applicants to sign a "Memorandum of Agreement" containing express contractual language; 501(c)(3) recognition is accorded by the IRS with no such contractual agreement. *See Euresti v. Stenner,* 458 F.2d 1115, Appx. (10th Cir. 1972). The Hill-Burton Act provided funds for organizations performing specific, pre-negotiated purposes; 501(c)(3) provides tax exemptions to organizations for multiple permissible purposes. Hill-Burton provided for a private cause of action to enforce the Act, *see* 42 U.S.C. § 300s-6; 501(c)(3) only permits the IRS or the organization seeking tax exemption to challenge a determination on 501(c)(3) eligibility, *see* 26 U.S.C. § 7428(a). Therefore, while the Hill-Burton Act created a contract by virtue of its conditional government grants, 26 U.S.C. 501(c)(3) did not create such a contract.

-6-

### 2. Does Plaintiff Have An Implied Right of Action for Breach of Contract?

Plaintiff's claim must also be dismissed because there is no cause of action under which Plaintiff may sue to enforce 501(c)(3). The tax code does not explicitly grant a public cause of action to enforce 501(c)(3). Rather, it permits the IRS to sue tax-exempt organizations that may no longer qualify for tax exemption. 26 U.S.C. § 7428. It also permits an organization denied tax-exempt status to sue the IRS for a judicial review of the IRS denial of tax exemption. *Id.*

Plaintiff contends that in the absence of an explicit cause of action, there is an implied cause of action under *Cort v. Ash*, 422 U.S. 66 (1975). She asserts that "courts properly imply that when a statute permits the formation of a contract with the government . . . it is proper to imply that Congress intended that contractual remedies would be permitted." (Pl. Br. in Opp. to Mot. to Dismiss 18.) This argument, however, assumes the existence of a contract, a proposition which this court has found has no legal merit. Even if there were a contract, the Supreme Court has reduced the *Cort* inquiry to one simple question: did Congress intend to create a private cause of action. *E.g., Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). In this case, there is no evidence that Congress intended to create a private cause of action. The statute does not describe who may receive the benefits of a 501(c)(3) organization's activities; rather, it describes the types of organizations that may seek tax exemption. Where the statute focuses "on the person regulated rather than the individuals protected . . . [there is] 'no implication of an intent to confer rights on a particular class of person.'" *Id.* at 289 (*quoting California v. Sierra Club*, 451 U.S. 287, 294 (1981)). Accordingly, there can be no implication of an intent to confer a private right of action on Plaintiff in this case. If Congress had wanted to create a private cause of action for the uninsured or for indigent patients, it knew how to do so. *See* Hill-Burton Act, 42 U.S.C. § 300s-6 (permitting private cause of

-7-

action to enforce Act); 26 U.S.C. § 7431(a)(1) (permitting citizen suit against IRS). Since no comparable intent can be found in 26 U.S.C. § 501(c)(3), there can be no private cause of action by a third party. 3. Does Plaintiff Have Standing to Sue?

Even if there were a contract and an implied cause of action, Plaintiff would have no standing to enforce such a contract. Plaintiff asserts that as an indigent and uninsured patient, she is a third- party beneficiary of the 501(c)(3) contract between CHP and the federal government. She claims that "the underlying purpose of the tax exemption" is to ensure CHP provides health care services to the indigent, and that the indigent are the class intended to benefit from tax exemption. (Pl. Br. in Opp. to Mot. to Dismiss 16.) In support, Plaintiff cites *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) for its holding that "the intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." *Id.* However, the court indicated that this rule of law applied to Montana, a state, but cautioned that a different rule applied to members of the public: "when members of the public bring suit against promisors who contract with the government to render a public service . . . [they] are considered to be incidental beneficiaries unless they can show a direct right to compensation." *Id.* at n.6. The statute does not name potential beneficiaries. There is no evidence, beyond a bare legal conclusion, that Plaintiff or the putative class have any direct right to compensation based on 501(c)(3).

Plaintiff also cites a Seventh Circuit case which gave tenants enforceable third party beneficiary rights to sue on contracts between HUD and Section 8 owners. *Holbrook v. Pitts*, 643 F.2d 1261 (7th Cir. 1981). However, *Holbrook* has been substantially narrowed, and is not persuasive when applied to the broad universe of all indigent patients, rather than the more well- defined universe of section eight

-8-

tenants. *See Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir. 1987). Finally, Plaintiff turns again to the Hill-Burton Act, which this court has already found inapplicable. Consequently, Plaintiff has no standing as a third-party beneficiary.

Since Plaintiff has no standing, there is no contract, and there is no cause of action under any purported contract, it is unnecessary to consider whether there may have been a breach. Plaintiff's third-party beneficiary breach of contract claim is dismissed.

### B. Breach of Charitable Trust

Count 4 alleges that by accepting 501(c)(3) tax-exempt status, CHP entered into a "public charitable trust to provide affordable medical care to its uninsured patients." (First Am. Compl. ¶ 55.) CHP then allegedly breached the charitable trust through its overcharging practices and its failure to provide affordable medical care. Plaintiff claims she and the class are the beneficiaries of the charitable trust.

This claim is also without merit. The court has already concluded that CHP's tax-exempt status did not create a contract, and Plaintiff presents no allegation other than a bare legal conclusion that 501(c)(3) created a charitable trust. Charitable trusts require language demonstrating a specific intent to create the trust. Rest. 2d of Trusts § 348-49. There is no allegation that such specific language exists. There is no charitable trust.

Even if 501(c)(3) did create a charitable trust, Plaintiff would be without standing to sue for a breach of such a charitable trust. A member of the public who may benefit from a charitable trust does not have standing to sue on the trust. Rest.2d of Trusts § 391. "As a general rule, no public citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefitted by the trust." Bogert, *Bogert's Trusts & Trustees* § 414, at 39. It is longstanding Ohio law that "there is

much propriety in requiring suits of this nature [enforcing charitable trusts] to be carried on and conducted in the name only of a public officer." *Kemper v. Trs. of Lane Seminary,* 17 Ohio 293, 328-29 (1848); *See also Plant v. Upper Valley Med. Ctr.,* 1996 Ohio App. LEXIS 1529 (Ohio Ct. App. Apr. 19, 1996). Accordingly, even if there were a trust, Plaintiff would not be the appropriate party to sue over a breach. Plaintiff's breach of charitable trust claim is dismissed.

### C. State Law Claims Against CHP: Breach of Contract, Duty of Good Faith / Fair Dealing, OCSPA, Unjust Enrichment

Plaintiff alleges four additional Ohio state law counts against CHP. As the court has dismissed the federal claims against CHP, only these state law claims remain. Whether the court retains jurisdiction over these pendent claims is a matter of discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Further, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* This standard has been codified at 28 U.S.C. § 1367(c)(3). Accordingly, the court exercises its discretion to dismiss these remaining claims against CHP, without prejudice pursuant to that provision.

### D. Civil Conspiracy / Aiding and Abetting

In addition to the claims against CHP, Plaintiff alleges a claim of civil conspiracy against AHA for conspiring with CHP to: (1) breach the 501(c)(3) contract; (2) breach the duty of good faith and fair dealing; and (3) violate the Ohio Consumer Sales Practices Act ("OCSPA"). Plaintiff similarly accuses AHA of aiding and abetting the above violations. In its motion to dismiss, AHA argues that CHP is not liable for any underlying breach, and since there is no breach, AHA cannot be held liable for conspiracy or aiding and abetting a breach that never occurred. Since this court has already concluded that there was

no 501(c)(3) contract for CHP to breach, the court agrees with AHA that it cannot be held liable for conspiracy or aiding and abetting a breach of that contract. Therefore, the conspiracy and aiding and abetting claims are dismissed to this extent for failure to state a claim upon which relief can be granted. However, the court has already declined to exercise jurisdiction over the underlying state law violations. Consequently, the court hereby dismisses Plaintiff's claims against AHA for conspiracy and aiding and abetting state law violations without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

For the foregoing reasons, Defendant CHP's Motion to Dismiss (ECF No. 17) is granted as to the federal breach of contract (Count 1) and breach of charitable trust claim (Count 4). The court exercises its discretion to dismiss the remaining state law claims against CHP without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Likewise, Defendant AHA's Motion to Dismiss (ECF No. 20) is granted as to the conspiracy and aiding and abetting claims for breach of a federal 501(c)(3) contract (portion of Counts 7 and 8); the court exercises its discretion and dismisses the remaining conspiracy and aiding and abetting claims to the extent they are based on underlying violations of state law (remainder of Counts 7 and 8).

IT IS SO ORDERED.

/s/SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

January 13, 2005