IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
LAW DIVISION

PHYLLIS SERVEDIO, et al., )
)
    Plaintiffs, )
)
v. ) 04 L 3381
) Hon. Stuart A. Nudelman
OUR LADY OF THE RESURRECTION )
MEDICAL CENTER )
)
    Defendant )

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Phyllis Servedio, Juan Nieto as next friend of his daughter Natasha Nieto, and Wieslawa Starzyk ("Plaintiffs"), filed suit against the defendant, Our Lady of the Resurrection Medical Center ("Resurrection") pursuant to the Illinois Consumer Fraud Act, the Illinois Revenue Code, for breach of contract, and unconscionable conduct. Resurrection now moves to dismiss pursuant to 735 ILL. COMP. STAT. 5/2-615 (2004), on the grounds that the Plaintiffs have failed to allege a cause of action for each count. For the reasons set forth herein, Resurrection's motion is granted in part and denied in part.

## BACKGROUND

The Plaintiffs were all emergency room patients at Our Lady of the Resurrection Medical Center ("Resurrection") in Chicago, Illinois. (Am. Compl. ¶¶ 1-5.) At the time they were treated, none of them had health insurance. Ms. Servedio was brought to Resurrection on 12 November 2001; at the time this Complaint was filed she owed in excess of $1,509. (Id. ¶ 6.) Ms. Nieto was brought to Resurrection at least five times between 2002 and 2003; at the time this Complaint was filed she owed in excess of $22,500. (Id. ¶¶ 12-16.) Ms. Starzyk received

1

medical treatment at Resurrection from 27 April 2003 to 4 May 2003; at the time this Complaint was filed she owed in excess of $31,699.50. (*Id.* ¶¶ 17-23.) Since their treatment, each plaintiff has been unable to pay; Resurrection has since sued Servedio, and has sent numerous collection notices to Nieto and Starzyk.

The Plaintiffs aver that the rates at which they were charged were significantly higher than those paid by insured patients. (*Id.* ¶ 24.) In each case, Resurrection allegedly charged the Plaintiffs double and triple the amounts they charged insured patients. (*Id.* ¶¶ 24, 35.) In fact, Resurrection allegedly had the highest charge-to-cost ratio of any Chicago area hospital, 392.11%. (*Id.* ¶ 24.) The Plaintiffs contend that the prices paid by insured patients are, actually, the *de facto* rates and that uninsured patients are paying inflated rates. (*Id.* ¶ 25.) Furthermore, the Plaintiffs contend that they were not screened to determine whether they would qualify for charity care—an omission that constitutes a violation of their alleged duty as a charitable organization. (*Id.* ¶ 27.) Finally, the Plaintiffs allege that Resurrection used draconian collection procedures and lawsuits to collect unpaid amounts from the Plaintiffs, all of which may deter them from seeking emergency medical treatment in the future. (*Id.* ¶ 32.)

## DISCUSSION

A Section 2-615 motion to dismiss challenges only the legal sufficiency of the complaint. 735 ILL. COMP. STAT. 5/2-615. In reviewing a 2-615 Motion to Dismiss, the Court assumes all facts plead by the plaintiff to be true. *Doe v. Calumet City*, 160 Ill.2d 374, (Ill. 1994). However, a motion to dismiss will be properly granted if there are not sufficient allegations to state a cause of action, regardless if the pleadings inform the defendant in a general way the nature of the claim against him. *Adkins v. Sarah Bush, et. al*, 129 Ill.2d 497 (Ill. 1989). The failure to allege

sufficient facts to state a cause of action is not cured by liberal construction or argument. *Knox College v. Celotex Corp.*, 88 Ill.2d 407 (Ill. 1981).

*Count I: Violation of the Illinois Consumer Fraud Act*

In order to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), plaintiff must allege (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception during a course of conduct involving trade or commerce; and (4) damages proximately caused by the fraud. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (Ill. 2002); *Kelly v. Sears Roebuck and Co.*, 308 Ill. App. 3d 633, 641 (Ill. App. Ct. 1999). The purpose of the Act is to protect consumers, borrowers, and businessmen against fraud, unfair methods of competition, and unfair or deceptive acts or practices regarding any trade or commerce. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 456-459 (Ill. App. Ct. 1995). The ICFA should be liberally construed to effect its remedial purposes. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502-504 (Ill. 1996). Resurrection moves to dismiss Count I of the Plaintiffs' complaint, contending that (1) Medicare regulations prevent hospitals from systematically giving discounts to uninsured patients, (2) billing for medical services does not fall within the ICFA's definition of trade or commerce, and (3) that the ICFA only prohibits conduct that is either unfair *and* neither of which Resurrection's alleged conduct does not satisfy. For the reasons set forth herein, the motion to dismiss Count I is denied.

1. Medicare and Uninsured Patients

Resurrection contends that in order to qualify for reimbursement under Medicare regulations, it is required to charge uninsured patients fees and apply discounts only on a case by case basis, and that it is required to use litigation to recover unpaid amounts from uninsured patients. This argument, however, fails for two reasons. First, Resurrection's interpretation of Medicare regulations bears no impact on the Plaintiffs' contention that they, along with all uninsured patients, are being charged a higher price than the *de facto* normal price that is charged to insured patients. Medicare regulations, under Resurrection's interpretation, require that the hospital create a "master charge schedule" of its "customary charges" that are most frequent. *See* 42 C.F.R. §§ 412.84(g), 413.53(b), 419.43(d). In order for charges to be considered "customary," they must be actually imposed uniformly on most patients and actually be colleted from a substantial percentage of patients liable for payment on a charge basis, regardless of their ability to pay. The Amended Complaint, in part, challenges what exactly those usual and customary charges really are. Second, letters from Secretary of Health and Human Services Tommy Thompson specifically state that hospitals may give blanket discounts to uninsured and poor patients without risk of losing Medicare funding. *See* Press Release, United States Dept. of Health & Human Svcs. (19 Feb. 2004) (available at www.hhs.gov/news/press/2004pres/20040219.html). Thus, on these grounds the motion is denied.

2. Trade and Commerce under the ICFA

No Illinois Court has specifically ruled that billing for medical services is specifically inside or outside the scope of the ICFA, and it is not listed as an ICFA statutory exemption. The ICFA does, however, specifically state that it covers "any trade or commerce," 815 ILL. COMP. STAT.

4

505/2. Trade or commerce is defined as "the advertising, offering for sale, sale, or distribution of any services . . . and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILL. COMP. STAT. 505/1(f). The ICFA's definition of "trade or commerce" has been read very broadly by the Illinois Supreme Court to include the "distribution of *any* services . . ." *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill. 2d 1, 29-30 (Ill. 1991) (emphasis in original).

Previous decisions regarding the practice of medicine and law, while illuminating, are nevertheless inapplicable here. Contrary to Resurrection's belief, the Plaintiffs do not seek to challenge a doctor's practice of medicine but rather the way the hospital billed for such practices—hence they are suing the hospital and not the doctors. Resurrection contends that the Appellate Court's decision in *Feldstein v. Guinan*, 148 Ill. App. 3d 610 (Ill. App. Ct. 1986), stands for the contrary. Yet, in *Feldstein* the Appellate Court stated that "although the practice of medicine may have a business aspect, the commercial phases of medicine which directly affect the public are not at issue here." *Feldstein*, 148 Ill. App. 3d at 615 (Ill. App. Ct. 1986). The Appellate Court explicitly limited its ruling in that case to the facts presented. Cases involving medical malpractice are simply incongruous—those claims, like that in *Feldstien*, address whether a doctor can be held liable under the ICFA for his practice of medicine irrespective of billing practices. Likewise, *Cripe v. Leiter*, 184 Ill. 2d 185 (Ill. 1998), is inapplicable. The Supreme Court in *Cripe* held that billing for legal services did not fall within the ambit of the ICFA. The practice of law and billing for those services is, however, already regulated by the Supreme Court and the Attorney Registration and Discipline Commission ("ARDC"). In *Cripe*, the Supreme Court explained its entanglement with regulating the practice

5

of law with the ARDC in holding that there was sufficient basis to infer that the General Assembly did not intend to regulate law practice vis-à-vis the ICFA. *Cripe*, 187 Ill. 2d at 197.

The Appellate Court's examination of the interplay between the practice of medicine and the ICFA is instructive as it shows how the ICFA was meant to apply to practices that applied to consumers as a class, and not to case-specific injuries that give rise to claims for malpractice. In *Evanston Hospital v. Crane*, 254 Ill. App. 3d 435 (Ill. App. Ct. 1993), the court was presented with a situation where the plaintiff-hospital brought a collection action against the defendant-patient, who asserted a two count counterclaim for medical malpractice and violation of the ICFA. Affirming a grant of summary judgment, the Appellate Court noted that there was a public injury factor to consider:

> The misconduct alleged here and in *Frahm* amounts to professional malpractice, and cannot be equated with the misdeeds of an ordinary commercial enterprise, against which the Consumer Fraud Act was expressly enacted to protect . . . Although the practice of medicine may have a business aspect, the commercial phases of medicine which directly affect the public are not at issue here. The Consumer Fraud Act is not intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong.

*Crane*, 254 Ill. App. 3d at 443-333. As plead by the Plaintiffs, the acts of Resurrection do apply to a class of individuals broadly—all of uninsured patients who are, again allegedly, charged grossly excessive amounts for medical services. Resurrection has not cited to this Court any analogous regulatory scheme that could replace regulation under the ICFA upon which the Court could grant its motion to dismiss, nor has it cited any Illinois Appellate Court or Supreme Court decision suggesting such a rationale. In light of the General Assembly's and the Illinois Supreme Court's explicitly stated desire that the ICFA be read broadly to favor consumers, including an explicit command that the term "trade or commerce" be read inclusively, this Court holds that the Illinois Consumer Fraud Act applies to billing practices for medical services.

3. Unfair Practices and the ICFA

The ICFA proscribes "... unfair *or* deceptive acts or practices ..." 815 ILL. COMP. STAT. 505/2 (emphasis added). "Recovery [under the ICFA] may be had for unfair as well as deceptive conduct."* *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (Ill. 2002). A commercial practice is "unfair" when it (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) causes substantial injury to consumers. *Robinson*, 201 Ill. 2d at 418. An unfairness claim need not satisfy all three prongs, it may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id.* at 418. The Plaintiffs' complaint, at least to a lesser extent, meets all three factors and thus Resurrection's motion to dismiss Count I is denied.

The Plaintiffs' complaint alleges conduct that is a violation of Illinois public policy. The General Assembly has, several times, reiterated its desire that hospitals provide health care to low income persons. *See* Illinois Public Aid Code, 305 ILL. COMP. STAT. 5/5-17 ("it is the policy of the State to implement programs that more equitably distribute the burden of providing hospital care to Illinois' low-income population and that improve access to health care in Illinois."); *see also* Illinois Property Tax Code, 35 ILL. COMP. STAT. 200/15-65 (giving property tax exemptions for charitable institutions). Illinois courts interpreting section 15-65 of the

---

* The Supreme Court's decisions in *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374 (Ill. 1990), and *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2002), conflict as to whether a claim under the ICFA requires a showing of either one or both factors. The Supreme Court in *Laughlin* held that the language of the ICFA "shows that its reach was to be limited to conduct that defrauds or deceives consumers or others." *Laughlin v. Evanston Hosp.*, 133 Ill. 2d at 390. This decision, as shown by the Plaintiffs and the Attorney General, was largely ignored and the Appellate Court which continued to hold that the ICFA did not require a showing of deception in every case. (Pl.'s Resp. at 14, n. 7; Amicus Brief of Attorney General at 1-2.) Twelve years later, the Supreme Court explicitly held that Since then, the Appellate Court has cited *Robinson* as enervating the Illinois Supreme Court's decision in *Lauglin. Carter v. Chicago & Illinois Midland Ry. Co.*, 130 Ill. App. 3d 431, 474 (Ill. App. Ct. 1985). *Robinson* is controlling law and has, *sub silentio*, overruled *Laughlin* to the extent that that it holds a cause of action under the ICFA must allege both deceptive and unfair practices.

7

Property Tax Code have held that a non-profit hospital, in order to be exempt from property taxation, should provide no fee services to patients who are unable to pay and a graduated fee according to a patient's ability to pay. *See e.g. Alvio Med. Ctr. v. Dept. of Rev.*, 299 Ill. App. 3d 647 (Ill. App. Ct. 1998) (tax-exempt entities should not place obstacles in the way of those who need and would avail themselves of chartable benefits dispensed). Moreover, the Illinois Department of Revenue has revoked property tax exempt status from at least one hospital for the way it bills indigent patients. The conduct alleged by the Plaintiffs, that uninsured patients are charged higher prices than what is the *de facto* norm, and that they were not screened to determine whether they would qualify for charitable treatment, certainly flies in the face of this public policy. Second, the conduct alleged by the Plaintiffs can be construed as immoral, unethical, or oppressive. The term "oppressive" has been interpreted as "unjustly severe" or "unreasonably burdensome". *Standard Life Ins. Co. v. Davis*, 10 Ill. App. 2d 245, 255 (Ill. App. Ct. 1956). At least one court has found "oppressive" conduct where the victims "were in a position in which they had no reasonable alternative but to pay and agree to pay." A failure to disclose a large fee is deceptive, oppressive, and potentially injurious to the consumer. *Id.* The alleged conduct here meets this standard—that requiring emergency room patients to pay fees two and three times the *de facto* normal rate is "oppressive" and unethical. Third, the conduct alleged by the Plaintiffs is certainly injurious to consumers. If uninsured patients are charged exorbitantly high fees for medical services, they most likely not seek medical attention when they most need it.

Resurrection relies heavily on the Illinois Supreme Court's decision in *Laughlin* for its contention that the price discrimination is not an unfair practice under the ICFA. In *Laughlin*, however, the Supreme Court held that price discrimination was not an unfair method of

*competition,* and did not specifically address the question as to whether discrimination among insured and uninsured patients is unfair. *Laughlin,* 133 Ill. 2d at 390-91. Resurrection urges this Court to rely on Justice Clark's concurrence, but even Justice Clark stated that the ICFA contemplates a case-by-case basis determination of whether a given practice is unfair. *Id.* at 395.

*Count II: Breach of Contract*

In order to state a cause of action for breach of contract, Plaintiff must allege facts in support of: 1) an offer and acceptance; 2) consideration; 3) definite and certain terms of the contract; 4) plaintiff's performance of the contractual obligations required of it; 5) defendant's breach; and 6) damages as a result of the breach. *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.,* 323 Ill. App. 3d 15, 27 (Ill. App. Ct. 2001). Open terms in a contract do not prevent valid formation of a contract, so long as there is a mutual intent to enter into a contract. *Kirchoff v. Rosen,* 227 Ill. App. 3d 870 (Ill. App. Ct. 1992), *appeal denied,* 146 Ill. 2d 629. A contract may be enforced even though there are some terms left open, provided there is some basis for determining compliance. *See Champaign Nat'l. Bank v. Landers Seed Co.,* 165 Ill. App. 3d. 1090 (Ill. App. Ct. 1988). Moreover, a court can supply a missing term if the parties intended that the term be supplied by implication. Where there is a contract under which one party supplies services to another and there is no provision setting out the amount to be compensated, the law implies that there is an agreement to "pay a reasonable price for goods and services." *Protestant Hosp. Builders v. Goedde,* 98 Ill. App. 3d 1028, 1031 (Ill. App. Ct. 1981). The determination of reasonableness requires a factual inquiry; evidence of the amount charged alone does not indicate reasonableness. *See Victory Mem. Hosp. v. Rice,* 143 Ill. App. 3d 621, 625 (Ill. App. Ct. 1986).

07-JAN-2005  03:48PM  FROM-LEGAL ASSISTANCE FOUNDATION        312 341 1041         T-649  P.012/016  F-272

Specifically regarding hospital bills, Illinois courts have established a two-prong proof requirement for one to be deemed reasonable under an implied contract theory. The charges must be "the usual and customary charges of that particular hospital" and they must be "comparable to the charges of other areas hospitals." *Sherman Hosp. v. Wingren*, 169 Ill. App. 3d 161, 164 (Ill. App. Ct. 1988). In order to state a cause of action for a breach thereunder, a plaintiff must only allege that the bill does not meet one of the criteria.

The Plaintiffs have alleged that the prices that Resurrection charged them for services are more than what is charged to patients paying with insurance, which allegedly constitutes well over the majority of Resurrection patients. That Resurrection labels its charges to uninsured patients "usual and customary" bears no impact on the legal significance of their pricing scheme. If the allegations in the Plaintiffs' complaint are proven true, it would follow that Resurrection's practice of giving discounts to all insured patients operates as a *de facto* "usual and customary" charge, making that which is charged to uninsured payments above and beyond that and a breach of contract. The Court, therefore, denies Resurrection's motion to dismiss Count II because the Plaintiffs have alleged sufficient facts to state a claim that their hospital charges were unreasonable.

*Count III: Violation of the Illinois Revenue Code*

In Count III, the Plaintiffs allege that Resurrection, by failing to provide free or reduced cost to the Plaintiffs, as uninsured patients, breached its statutory duty under the Illinois Revenue Code ("Code"). The Code provides certain property tax exemptions for property owners who use their property "actually and exclusively" for "charitable and beneficent purposes." 35 Ill. Comp. Stat. 200/15-65. "[C]haritable exemptions are justified on the basis that the exempt entity

confers a public benefit—a benefit which the society or the community may not itself choose or be able to provide, or which supplements and advances the work of public institutions already supported by tax revenues. *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983). Nevertheless, the determination of that tax-exempt status is determined by the Illinois Department of Revenue, and is subject to challenge "by the owner of the property" via administrative, then judicial review. 35 ILL. COMP. STAT. 200/15-25. There is, however, no language anywhere in the Code that expressly or implicitly grants the individual taxpayer a private right of action, and the Illinois Supreme Court has explicitly ruled that private citizens do not have standing to challenge the tax-exempt status of their neighbors. *Schenz v. Castle*, 115 Ill. 2d 135, 144 (Ill. 1986). Allowing them to do so would turn them all in to "*de facto* special assistant State's Attorneys and would lead to chaos and confusion." *Schenz*, 115 Ill. 2d at 144.

Courts are reluctant to infer a private right of action in a statute that does not explicitly provide for one; litigants asserting a private right of action must meet four criteria before they may proceed: (1) the plaintiff is a member of the class whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to prevent, (3) a private right of action is consistent with the underlying purpose of the statute, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (Ill. 2004). The Plaintiffs fail to show, however, how their particular case meets the first and fourth factors. First, the Code's property tax exemptions are designed to encourage charity work in exchange for an exemption, but that charity work benefits the people of the State of Illinois as a political entity—a class so large that it is difficult to see how the General Assembly enacted the charitable exemption in section 15-65 to benefit any given class as small as that of which the Plaintiffs claim membership. From this it is difficult to infer that the

General Assembly intended to confer a private right of action upon every individual to challenge the tax-exempt status of a charitable organization simply because they were denied charitable services, which is a necessary finding in order to allow the Plaintiffs to proceed on Count III. Second, the Plaintiffs have provided the Court with no stated precedent or reasons otherwise showing why the Illinois Department of Revenue's enforcement procedures are insufficient to ensure that the charitable purpose exemptions in section 15-65 are insufficient. This fact stands in stark contrast to areas where the General Assembly has explicitly provided for a private right of action, such as with the Illinois Consumer Fraud Act. Finally, no reported Illinois decision has held that a private right of action is necessary to properly enforce a Code property tax exemption, charitable or not. Count III is, therefore, dismissed with prejudice.

*Count IV: Unconscionability*

Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *See e.g.* Corbin on Contracts, § 5.15 (2004). Whether a meaningful choice is present in a particular case can only be determined considering all circumstances surrounding the transaction. *Id.* In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made—it is a legal issue that is assessed as of time of contract formation, not contract performance. *Ahern v. Knecht*, 202 Ill. App. 3d 709 (Ill. App. Ct. 1990). The test is not simple, nor can it be mechanically applied. The terms are to be considered in the light of the general commercial background and the commercial needs of the particular trade or case. The party

alleging unconscionability has the burden of producing sufficient evidence of unconscionability. *Reuben H. Donnelly Corp. v. Krasny Supply Co.*, 227 Ill. App. 3d. 414 (Ill. App. Ct. 1991).

Unconscionability has two aspects, of which it is useful to think as procedural and substantive. Both elements of unconscionability must be met before a contract or clause will not be enforced. *Basselen v. GMC*, 341 Ill. App. 3d 278, 288 (Ill. App. Ct. 2003). On the procedural side, the question is how the provision made its way into the contract. Considerations such as unfair surprise and the relative bargaining strength of the parties are relevant here. *See e.g. J.D. Pavlak, Ltd. v. William Davies Co.*, 40 Ill. App. 3d 1, 4 (Ill. App. Ct. 1976). Procedural unconscionability "involves impropriety during the process of forming a contract that deprives a party of a meaningful choice." *Rosen v. SCIL, LLC*, 343 Ill. App. 3d. 1075, 1081 (Ill. App. Ct. 2003). Courts will often look to whether the parties had a meaningful choice when faced with unreasonably unfavorable terms. *Ahern v. Knecht*, 202 Ill. App. 3d. 709 (Ill. App. Ct. 1990). On the substantive side, the question is whether the terms of the contract are grossly one-sided. *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 191, (Ill. App. Ct. 1983). But the fact that contract terms are burdensome or appear to be unfair does not relieve the parties from their imprudence in entering into the contract. *See Bowler v. Metropolitan Sanitary Dist.*, 117 Ill. App. 3d 237 (Ill. App. Ct. 1969).

Unconscionability addresses defects in the formation process. *See Ahern*. In this case, formation occurred when the hospital performed emergency medical services—a very impractical time to negotiate a price and thus none was negotiated. In such circumstances, where the parties do not agree upon a price term, the Court is to imply a reasonable price. The gravamen of the Plaintiff's complaint is not that when they were brought into the emergency room the parties did not agree upon a reasonable price term, per se; the parties impliedly agreed

on a reasonable price. Rather, the Plaintiff's complaint challenges Resurrection's selection of price—its performance of its duty to select a reasonable price. It is true that two circumstances exist which sound in procedural unconscionability—an absence of meaningful choice and an allegedly grossly unfair price—but the proper cause of action in this instance is one for breach of contract and not for unconscionability, if it can be considered a cause of action at all. Count IV is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Resurrection's motion to dismiss is granted as to Count III and Count IV with prejudice, and denied as to the remaining counts.

IT IS SO ORDERED

JUDGE STUART A. NUDELMAN
JAN 0 6 2005
Circuit Court - 202

ENTERED:

_____
Hon. Stuart A. Nudelman
Circuit Judge