USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3\29\05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
KOLARI,                             :
                                    :
              Plaintiff,            :      04 Civ. 5506 (LAP)
                                    :
         -against-                  :
                                    :
NEW YORK-PRESBYTERIAN HOSPITAL,     :
et al.,                             :
                                    :
              Defendants.           :
------------------------------------x
BARBOUR,                            :
                                    :
              Plaintiff,            :      04 Civ. 5733 (LAP)
                                    :
         -against-                  :
                                    :
NEW YORK-PRESBYTERIAN HOSPITAL,     :
et al.,                             :
                                    :
              Defendants.           :
------------------------------------x
EROGLU,                             :
                                    :
              Plaintiff,            :      04 Civ. 7573 (LAP)
                                    :
         -against-                  :      OPINION AND ORDER
                                    :
NEW YORK-PRESBYTERIAN HOSPITAL,     :
et al.,                             :
                                    :
              Defendants.           :
------------------------------------x
```

**APPEARANCES:**

For Plaintiffs:

    BERNSTEIN LIEBHARD & LIFSHITZ, LLP
    Keith M. Fleischman
    Ronald J. Aranoff
    10 E. 40th Street, 22nd Floor
    New York, New York 10016
    Telephone:  (212) 779-1414
    Facsimile:  (212) 779-3218

    COUNSEL FOR SHKELQIM KOLARI

NAPOLI & BERN, LLP
Denise A. Rubin
115 Broadway, 12th Floor
New York, New York 10006
Telephone: (212) 267-3700
Facsimile: (212) 587-0031

COUNSEL FOR GLORIA EROGLU AND
GEORGE BARBOUR

For Defendants:

SILLS CUMMIS EPSTEIN & GROSS P.C.
James S. Frank
Jeffrey J. Greenbaum
James M. Hirschhorn
399 Park Avenue
New York, New York 10022
Telephone: (973) 643-7000
Facsimile: (973) 643-6500

        -and-

LATHAM & WATKINS LLP
James V. Kearny
Stuart S. Kurlander
885 Third Avenue
New York, New York 19922
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

COUNSEL FOR NEW YORK AND
PRESBYTERIAN HOSPITAL and NEW YORK-
PRESBYTERIAN HEALTHCARE SYSTEM

HOGAN & HARTSON, L.L.P.
Ty Cobb
Mitchell E. Zamoff
Catherine E. Stetson
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

        -and-

HOGAN & HARTSON, L.L.P.
Eric J. Stock
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

COUNSEL FOR THE AMERICAN
HOSPITAL ASSOCIATION


LORETTA A. PRESKA, United States District Judge:

## INTRODUCTION

        Plaintiffs here have lost their way; they need to
consult a map or a compass or a Constitution because Plaintiffs
have come to the judicial branch for relief that may only be
granted by the legislative branch.  This action is one of dozens
of similar bootless actions filed in twenty-three district courts
across the United States on behalf of uninsured and indigent
patients, wherein Plaintiffs argue, without basis in law, that
private non-profit hospitals are required to provide free or
reduced-rate services to uninsured persons.  More specifically,
Plaintiffs claim that the rates charged by the defendant hospital
to uninsured patients are unreasonable merely because various
insurers have negotiated with the hospital to pay lower rates--an
economically efficient outcome for both sides that is fully
sanctioned by New York law.

        To support these non-legal arguments, several pages of
the Complaint under the heading of "The Lack of Health Insurance

1

in New York" are devoted to statistics of the kind normally
associated with legislative hearings.  Plaintiffs note, for
example, that:

> The lack of health insurance is a major
> problem for many New Yorkers.  For example,
> in 2002, most uninsured New Yorkers (57% in
> New York City, and 59% in New York State)
> work full-time.  Some uninsured New Yorkers
> (10% in New York City, and 13% in New York
> State) work part-time, while 33% in New York
> City and 29% in New York State were
> unemployed. Am. Compl. ¶ 17.[1]

> During 2001-2002, 45% of non-citizens,
> compared to 20% of citizens in New York City
> were uninsured; and 43% of non-citizens,
> compared to 14% of citizens were uninsured in
> New York State. Am. Compl. ¶ 18.

> During the period 2000-2002, New York State's
> uninsured rate was higher than that of the
> United States.  For example, in 2002, New
> York State's uninsured rate was 18% (25% in
> New York City) versus 17% for the United
> States; and in 2000, New York State's
> uninsured rate was 18% (25% in New York City)
> versus 16% for the United States. Am. Compl.
> ¶ 20.

> Employer-based coverage is often unavailable
> or unaffordable.  Uninsured people who have
> jobs may face one or more of the following
> barriers:
>> a.   Smaller employers are less likely
>>      to offer health insurance to their
>>      employees because premiums are
>>      prohibitively expensive;
>> b.   Service and labor jobs are less
>>      likely to provide workers with

---

[1]"Am. Compl." refers to the Amended Complaint filed on
September 20, 2004 by plaintiff Shkelqim Kolari and Sarah Vail
[Docket No. 13] that serves as the lead complaint in this
consolidated action.

            health insurance;

c.     Part-time workers are often not
       eligible for insurance;

d.     Even when employers offer health
       insurance to low-wage workers, the
       premiums tend to be higher than for
       higher-paid workers.  Low-wage
       workers have a harder time
       affording these premiums, and are
       more likely to remain uninsured.
       Am. Compl. ¶ 22.

Further, people who lose their jobs often
lose health insurance. Am. Compl. ¶ 23.

Buying coverage in the private individual
market is often prohibitively expense. Am.
Compl. ¶ 25.

The health care safety net leaves many people
uncovered, especially adults. Am. Compl.
¶ 26.

Specifically, families in New York with
incomes at, or below, 200 percent of the
federal poverty level were much more likely
to be uninsured than families with incomes
above 200 percent of the federal poverty
level.  For example, in 2002, 85% (or 1.5
million) of the 1.8 million uninsured in New
York City were "low-income" individuals with
annual income no greater than 200% of the
federal poverty level.  In 2002, for
individuals, 200% of the federal poverty
level was $17,720.  For New York State, 84%
(or 2.5 million) of the 3.0 million uninsured
were low-income individuals. Am. Compl. ¶ 27.

These are all "facts" and arguments that should be
addressed to the political branches--perhaps, in this case, the
New York Legislature--not the judicial branch.  As set out below,
the arguments Plaintiffs attempt to dress up as judicial branch
arguments are all without merit.  Indeed, at oral argument in

3

this case, Plaintiffs' counsel conceded that two of Plaintiffs'

claims should be dismissed.  Plaintiffs around the country have

fared no better.[2]  This orchestrated assault on scores of non-

profit hospitals, necessitating the expenditure of those

hospitals' scares resources to beat back meritless legal claims,

is undoubtedly part of the litigation explosion that has been so

well-documented in the media. E.g., WALTER K. OLSON, THE LITIGATION

EXPLOSION: WHAT HAPPENED WHEN AMERICA UNLEASHED THE LAWSUIT (1991); PHILIP

K. HOWARD, THE COLLAPSE OF THE COMMON GOOD: HOW AMERICA'S LAWSUIT CULTURE

UNDERMINES OUR FREEDOM (2001).  Here, Plaintiffs' ritualistic

recourse to litigation will be rebuffed, leaving them to

---

[2]In October 2004, the Judicial Panel on Multidistrict
Litigation rejected a motion to transfer and consolidate the
actions pending around the country into one district. In re
Not-For-Profit Hospitals/Uninsured Patients Litig., 341 F. Supp.
2d 1354 (J.P.M.L. 2004).  As of the date of this Opinion and
Order, Plaintiffs had voluntarily dismissed thirty cases prior to
a ruling on a motion to dismiss.  In twenty-three additional
actions, the district courts granted defendants' motions to
dismiss. See, e.g., Peterson v. Fairview Health Servs., No. Civ.
A04-2973, 2005 WL 226168 (D. Minn. Feb. 1, 2005); Shriner v.
Promedica Health Sys., Inc., No. 3:04 CV 7435, 2005 WL 139128
(N.D. Ohio Jan. 21, 2005); Lorens v. Catholic Health Care
Partners, 04 CV 1151, 2005 WL 407719 (N.D. Ohio Jan. 13, 2005);
Ferguson v. Centura Health Corp., No. 04-M-1285, 2004 WL 3213447
(D. Colo. Dec. 29, 2004); Burton v. William Beaumont Hosp., 347
F. Supp. 2d 486 (E.D. Mich. 2004); Darr v. Sutter Health, No. C
04-02624 (WHA), 2004 WL 2873068 (N.D. Cal. Nov. 30, 2004); Amato
v. UPMC, No. 04-1025 (W.D. Pa. Nov. 23, 2004); Kizzire v. Baptist
Health Sys., Inc., 343 F. Supp. 2d 1074 (N.D. Ala. 2004).  In a
Cook County, Illinois case, the court granted defendants' motion
to dismiss with respect to two claims and denied the motion with
respect to the Illinois state law claims. Servedio v. Our Lady of
the Resurrection Med. Ctr., No. 04 L 3381 (Cir. Ct. Ill. Jan. 6,
2005) (Nudelman, S.).  No court has yet found for plaintiffs on
any substantive legal issue.

4

recalibrate their compass and seek relief, if they are so
advised, from the political branches.

### PROCEDURAL HISTORY

The above-captioned actions were consolidated on
November 8, 2004 upon joint motion of the parties [Docket No.
22].  The lead complaint in this case is the amended complaint
filed on September 20, 2004, by plaintiff Shkelqim Kolari
("Kolari") against defendants New York-Presbyterian Hospital (the
"Hospital"),[3] NY-Presbyterian Health Care System, Inc.
(together, the "NYP Defendants"), and the American Hospital
Association (the "AHA") (the "Amended Complaint") [Docket No.
13].  Plaintiffs George Barbour ("Barbour") and Gloria Eroglu
("Eroglu") filed amended complaints to reconcile their claims
with those in the Amended Complaint on October 27, 2004
(respectively, the "Barbour Amended Complaint" and the "Eroglu
Amended Complaint").

The NYP Defendants moved to dismiss counts 1-12 and 15

---

[3]The Amended Complaint identifies the hospital as "New York-
Presbyterian Hospital" but in its Motion to Dismiss, defendant
hospital identifies the proper name as "The New York and
Presbyterian Hospital."  The New York and Presbyterian Hospital
operates on four campuses, including Columbia Presbyterian
Medical Center, New York Weill Cornell Medical Center, the Allen
Pavillion, and the Westchester Division. See Memorandum of Law of
Defendants the New York and Presbyterian Hospital and New York-
Presbyterian Health Care System, Inc. in Support of Their Motion
to Dismiss the Amended Complaint for Lack of Subject Matter
Jurisdiction and Failure to State a Claim filed on October 12,
2004 [Docket No. 14] (hereinafter, "NY Def. Memo.") at n. 1.

of the Amended Complaint on October 12, 2004, pursuant to Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
[Docket No. 14]. Defendant AHA moved to dismiss counts 13 and 14
of the Amended Complaint on November 9, 2004 [Docket No. 19]. To
streamline the motion practice that was underway prior to the
AHA's being added as a defendant and prior to consolidation, the
Consolidation Order directed plaintiffs Barbour and Eroglu to
file amended complaints adding the new counts that were added by
Kolari in his amended complaint. In addition, because the AHA
had filed its motion to dismiss the Kolari amended complaint, the
AHA was instructed to file motions to dismiss the amended
complaints in the Barbour and Eroglu actions on or before
December 2, 2004. Plaintiffs in all three actions were
instructed to respond to the AHA's motions to dismiss by December
24, 2004, and the AHA was instructed to submit one reply brief to
the Plaintiff's several briefs in opposition to the motions.
Accordingly, the AHA filed its motion to dismiss the Barbour and
Eroglu complaints on December 12, 2004 [Docket No. 27]. I have
reviewed and considered the Plaintiffs' various amended
complaints and all of the moving papers and briefs filed by all
of the plaintiffs and all of the defendants. In addition, I have
considered the Notice of Supplemental Authority filed by Kolari
on January 19, 2005 [Docket No. 39]. Oral argument was held on
all motions to dismiss on January 12, 2005. For the following

6

reasons, the motions to dismiss are granted in their entirety.

## BACKGROUND[4]

### A.    Shkelqim Kolari and Sarah Vail

On or about October 30, 2000, plaintiff Shkelqim Kolari

("Kolari") was severely burned on his arm. Am. Compl. ¶ 63.

Although he did not have any health insurance, Kolari was taken

by ambulance to New York Weill Cornell Medical Center, one of

several hospitals comprising Defendant New York and Presbyterian

Hospital.  He was admitted on an inpatient basis and thereafter

transferred to the Hospital's Burn Center, where Kolari spent

eleven nights. Am. Compl. ¶¶ 63-65.  After Kolari's discharge on

November 10, 2000, he received a bill from the hospital for

approximately $58,000. Am. Compl. ¶ 65.  Kolari required

outpatient care from the Burn Center every two weeks after his

discharge. Am. Compl. ¶ 66.  At each visit, the NYP Defendants

required Kolari to pay $75 and sign a form concerning payment

prior to receiving care. Am. Compl. ¶ 66.  On many occasions,

Kolari was unable to pay the $75 fee, and the doctors refused to

treat him. Am. Compl. ¶ 67.  As a result, Kolari received

treatment for his burns monthly, instead of bi-monthly. Am.

Compl. ¶ 67.

---

[4]For purposes of the instant motions, the facts are viewed
in the light most favorable to the nonmoving party. See Yoder v.
Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir.
1985) (citing Conley v. Gibson, 355 U.S. 41, 47-48 (1957)).

In November 2002, Sarah Vail ("Vail") was admitted to
the New York Weill Cornell Medical Center due to complications
stemming from her pregnancy. Am. Compl. ¶ 69. At the time of her
admission, Vail did not have health insurance. Am. Compl. ¶ 69.
She was admitted for approximately two nights, for which she was
billed approximately $20,000. Am. Compl. ¶ 70.

Both Kolari and Vail have received numerous telephone
calls and/or letters demanding payment of their respective
hospital bills and threatening litigation. Am. Compl. ¶¶ 68, 71.
Plaintiffs do not know the identity of the individual and/or
entities who made the telephone calls attempting to collect on
the NYP Defendants' bills. Am. Compl. ¶¶ 14, 68, 71; Tr. 29:18-
30:3.[5] Instead, Plaintiffs allege that Network Recovery
Services, Inc. is a not-for-profit corporation acting at the
Hospital's urging. Am. Compl. ¶ 14.

**B.    George Barbour**

On a date not set forth in his amended complaint,
plaintiff George Barbour ("Barbour"), a resident of New York, New
York, sought and received medical treatment at New York
Presbyterian Hospital/New York Weill/Cornell Medical Center.[6]

---

[5]"Tr." refers to the transcript of oral argument held on
January 12, 2005.

[6]The proper name of the hospital where Barbour received
treatment is identified in footnote 1 above.

8

Barbour Am. Compl. ¶¶ 46, 47.[7]  Barbour was allegedly "charged
fees far in excess of those charges that would have been applied
to a bill presented to a private insurance carrier or
governmental medical reimbursement program such as Medicare."
Barbour Am. Compl. ¶ 47.  Barbour was unable to pay his hospital
bill, which led to the NYP Defendants' "repeated attempts to
collect such payment, including filing a lawsuit" against
Barbour. Barbour Am. Compl. ¶ 48.  The lawsuit, captioned
<u>Columbia Presbyterian Hospital v. George Barbour</u>, was filed in
the Civil Court of the City of New York, New York County on June
9, 2004 under index number 031169/04. <u>See</u> Barbour Am. Compl.
¶ 48.

     C.   **Gloria Eroglu**

     On a date not set forth in her amended complaint,
plaintiff Gloria Eroglu ("Eroglu"), a resident of New York, New
York, sought and received medical treatment at New York
Presbyterian Hospital/New York Weill/Cornell Medical Center.[8]
Eroglu Am. Compl. ¶¶ 46, 47.[9]  Eroglu was allegedly "charged fees

---

    [7]"Barbour Am. Compl." refers to the Amended Complaint filed
by George Barbour on October 27, 2004, which appears as docket
number 11 in 04 Civ. 5733.

    [8]The proper name of the hospital where Eroglu received
treatment is identified in footnote 1 above.

    [9]"Eroglu Am. Compl." refers to the Amended Complaint filed
by Gloria Eroglu on October 27, 2004, which appears as docket
number 5 in 04 Civ. 7573.

far in excess of those charges that would have been applied to a
bill presented to a private insurance carrier or governmental
medical reimbursement program such as Medicare." Eroglu Am.
Compl. ¶ 47.  Eroglu was unable to pay her hospital bill, which
led to the NYP Defendants' "repeated attempts to collect such
payment, including harassing letters and telephone calls" to
Eroglu. Eroglu Am. Compl. ¶ 48.  Eventually, defendant New York-
Presbyterian Hospital filed a lawsuit captioned <u>Columbia
Presbyterian Hospital v. Gloria Eroglu</u> in the Civil Court of the
City of New York, New York County,[10] under index number 65298/03.
<u>See</u> Eroglu Am. Compl. ¶ 48.


<b>DISCUSSION</b>

**A.   The Standard for Dismissal Under Rule 12(b)(1) and
      Rule 12(b)(6)**

        A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it. <u>Makarova
v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  "[T]he
plaintiff asserting subject matter jurisdiction has the burden of
proving by a preponderance of the evidence that it exists."
<u>Luckett v. Bure</u>, 290 F.3d 493, 497 (2d Cir. 2002) (citing

---

[10]The Amended Complaint erroneously identifies the site of
this action as Kings County.  The action was brought in New York
County.

10

Makarova, 201 F.3d at 113).  District courts lack subject matter
jurisdiction in cases brought to enforce the Internal Revenue
Code where such cases have not been authorized by the Secretary
of the Treasury and the Attorney General. See 26 U.S.C. § 7401
(1976) ("No civil action for the collection or recovery of taxes,
or of any fine, penalty, or forfeiture, shall be commenced unless
the Secretary authorizes or sanctions the proceedings and the
Attorney General or his delegate directs that the action be
commenced.").  In considering challenges to subject matter
jurisdiction under Rule 12(b)(1), a court may consider evidence
extrinsic to the pleadings, such as affidavits. See Antares
Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d
Cir. 1991), vacated for reconsideration on other grounds, 505
U.S. 1215 (1992), reaff'd on remand, 999 F.2d 33 (2d Cir. 1993).

        In deciding a motion to dismiss under Rule 12(b)(6), I
must view the complaint in the light most favorable to the
plaintiff. Yoder v. Orthomolecular Nutrition Inst., Inc., 751
F.2d 555, 562 (2d Cir. 1985) (citing Conley v. Gibson, 355 U.S.
41, 47-48 (1957)).  I must accept as true the factual allegations
stated in the complaint, Zinermon v. Burch, 494 U.S. 113, 118
(1990), and draw all reasonable inferences in favor of the
plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Hertz
Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).  A motion
to dismiss can only be granted if it appears beyond doubt that

11

the plaintiff can prove no set of facts in support of its claim

which would entitle plaintiff to relief. <u>Conley v. Gibson</u>, 355

U.S. 41, 45-46 (1957).

**B.    Application**

### Federal Law Claims

1.    **Claims Arising From 26 U.S.C. § 501(c)(3)**

Plaintiffs bring a breach of contract claim as

purported third party beneficiaries to the "express and/or

implied contract[]" between the NYP Defendants, as charitable

entities, and the United States Government pursuant to 26 U.S.C.

§ 501(c)(3). Compl. ¶ 88.  Section 501(c)(3) provides, in

pertinent part, that organizations formed and operated

exclusively for charitable purposes shall be exempt from

taxation. <u>See</u> 26 U.S.C. § 501(c)(3).  Plaintiffs argue that this

provision has essentially created a contract between the United

States Government and the NYP Defendants. Am. Compl. ¶ 88, 89.

Plaintiffs claim to be third party beneficiaries to this

contract. Am. Compl. ¶ 91.

As a threshold matter, a plaintiff lacks standing to

enforce rights allegedly created by another person's tax

exemption, either in suits against the federal government or

against the exempt entity. <u>See, e.g.</u>, <u>Selman v. Harvard Med.</u>

<u>Sch.</u>, 494 F. Supp. 603, 616-17 (S.D.N.Y. 1980) (finding student

12

at foreign medical school attacking § 501(c)(3) status of
domestic medical school lacked standing). To the extent that
Plaintiffs seek to enforce any real or imagined rights created by
§ 501(c)(3), Plaintiffs lack standing to do so.

In addition, the clear language of 26 U.S.C. § 7401
precludes me from enforcing any section of the Internal Revenue
Code without the authorization of the Secretary of the Treasury
and the United States Attorney General. 26 U.S.C. § 7401. As
Plaintiffs have not satisfied their burden of establishing
subject matter jurisdiction, see Luckett v. Bure, 290 F.3d 493,
497 (2d Cir. 2002) (citing Makarova, 201 F.3d at 113), to the
extent that Plaintiffs seek to enforce the Internal Revenue Code,
such claims are dismissed pursuant to Federal Rule of Civil
Procedure Rule 12(b)(1).

Plaintiffs attempt to circumvent the issues of standing
and subject matter jurisdiction by claiming to be third party
beneficiaries of the contract that allegedly arose out of the NYP
Defendants' tax exempt status. Such an argument is untenable
because the IRS does not grant tax exempt status by contract.
Instead, it makes determinations or administrative rulings as to
whether entities comply with § 501(c)(3) and are therefore
exempt. See 26 C.F.R. §§ 1.501(c)(3)-1(b)(6), (c)(3)(iv), (e).
The Internal Revenue Code allows an entity seeking exempt status,
and only that entity, to obtain judicial review of the IRS

13

determination. <u>See</u> 26 U.S.C. § 7428(b). An IRS determination no more creates a contract than does any other judicial or administrative determination.  Without language in § 501(c)(3) to indicate that Congress intended to create a contract, the presumption is that statutes are not, and do not create, contracts. <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 470 U.S. 451, 465-66 (1985).  An examination of § 501(c)(3) indicates it does not contain any such language.

        Even if Plaintiffs were third party beneficiaries of a contract between the NYP Defendants and the United States Government, a third party beneficiary has no more rights under the contract than the party who has allegedly contracted on that person's behalf. <u>See</u> <u>United Steelworkers of Am., AFL-CIO-CLC v. Rawson</u>, 495 U.S. 362, 375 (1990); <u>Benson v. Brower's Moving & Storage, Inc.</u>, 907 F.2d 310, 313 (2d Cir. 1990), <u>cert. denied</u>, 498 U.S. 982 (1990).  The only right of the United States, which conferred the tax exemption, is to assess and collect the taxes due if an entity fails to comply with the terms of the exemption. <u>See</u> 26 U.S.C. §§ 4958, 6201, 6212-13; <u>United States ex rel. United States - Namibia (Southwest Africa) Trade and Cultural Council, Inc. v. Africa Fund</u>, 588 F. Supp. 1350, 1351 (S.D.N.Y. 1984) ("If the [Defendant] improperly obtained tax exempt status, the government's [only] recourse would be to revoke such status

14

through administrative action and then to proceed to make a tax liability assessment and to issue a Notice of Deficiency for taxes due."). Even as third party beneficiaries, Plaintiffs would be unable to obtain the relief they are seeking.

In a final attempt to substantiate their argument that § 501(c)(3) creates a contract, Plaintiffs analogize § 501(c)(3) to the Hill-Burton Act, 42 U.S.C. § 291, a government program that awarded funds to hospitals servicing uninsured or indigent patients. Plaintiffs argue that because courts recognized the Hill-Burton Act as an enforceable contract between hospitals and the Government, § 501(c)(3) should also be read as forming a contract. Pl. Memo. at 6;[11] see Flagstaff Med. Ctr., Inc., 962 F.2d 879 (9th Cir. 1992). However, neither in their many moving papers nor at oral argument were Plaintiffs able to articulate a single legal basis for this analogy. In fact, as Judge Oliver in Lorens v. Catholic Health Care Partners, 2005 WL 407719, at *3 (N.D. Ohio 2005), recently noted, the Hill-Burton Act is substantially different from 26 U.S.C. § 501(c)(3) for the following reasons:

> The Hill-Burton Act provided direct funds to hospitals; § 501(c)(3) provides tax exemptions. The Hill-Burton Act required applicants to sign a "Memorandum of

---

[11]"Pl. Memo." refers to Plaintiffs' Memorandum in Opposition to the Motion by The New-York Presbyterian Hospital and New York Presbyterian Health Care System, Inc. to Dismiss the Amended Complaint filed on November 3, 2004.

> Agreement" containing express contractual
> language; § 501(c)(3) recognition is accorded
> by the IRS with no such contractual
> agreement. See Euresti v. Stenner, 458 F.2d
> 1115, Appx. (10th Cir. 1972). The
> Hill-Burton Act provided funds for
> organizations performing specific,
> pre-negotiated purposes; § 501(c)(3) provides
> tax exemptions to organizations for multiple
> permissible purposes. The Hill-Burton Act
> provided for a private cause of action to
> enforce the Act, see 42 U.S.C. § 300s-6;
> § 501(c)(3) only permits the IRS or the
> organization seeking tax exemption to
> challenge a determination on § 501(c)(3)
> eligibility. See 26 U.S.C. § 7428(a).

2005 WL 407719, at *3. For all of these reasons, Plaintiffs'

analogy to the Hill-Burton Act fails.

It is clear that the NYP Defendants' § 501(c)(3) tax-

exempt status does not create a contract between the United

States of America and the NYP Defendants. Accordingly,

Plaintiffs cannot be third party beneficiaries thereof. This

claim is dismissed for lack of standing, lack of subject matter

jurisdiction, and failure to state a claim upon which relief can

be granted.

### 2.    Implied Right of Action Under Section 501(c)(3)

Plaintiffs allege that they have an implied right of

action for the NYP Defendants' failure to operate for charitable

purposes pursuant to § 501(c)(3). For the same reasons set out

above in dismissing Plaintiffs' claim for breach of contract,

this count is dismissed.

16

**3.    Violation of the Fair Debt Collection Practices Act**

Plaintiffs assert that the NYP Defendants and the John Doe defendants are debt collectors, as defined by 15 U.S.C. § 1692, and that they violated the Fair Debt Collection Practices Act ("FDCPA") by engaging in "aggressive, abusive, and humiliating collection practices." See Am. Compl. ¶¶ 122-124. The Amended Complaint also states that outside collection agencies, including First Consulting Group and Network Recovery Services, acted as agents for the NYP Defendants in collecting outstanding bills from uninsured patients. Am. Compl. ¶ 123.

> The FDCPA defines a "debt collector," in part, as: [A]ny person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.
>
> The term does not include--
>
>    . . .
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
>
>    . . .

17

15 U.S.C. § 1692a(6).

A plain reading of the statute makes clear that, as a matter of law, the NYP Defendants are not debt collectors subject to the FDCPA. See Maguire v. CitiCorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998). In addition, a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts. Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir. 1996). Plaintiffs have not named as parties the collection agencies it identifies in the Amended Complaint. On the face of the Amended Complaint, Plaintiffs fail to state a claim under the FDCPA upon which relief can be granted.

At oral argument, Plaintiffs attempted to argue that the NYP Defendants' relationship with National Recovery Service brings the NYP Defendants within the false name exception of the FDCPA. Under this exception, "a creditor may be deemed a debt collector under the false name exception if, 'in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts,' 15 U.S.C. § 1692a(6), if it 'pretends to be someone else' or uses 'a pseudonym or alias,' Maguire, 147 F.3d at 235 (quoting Villarreal v. Snow, No. 95-2484, 1996 WL 473386, at *3 (N.D. Ill. Aug. 19, 1996)), or if it owns and controls the debt collector, rendering it the

18