creditor's alter ego." Mazzei v. Money Store, 349 F. Supp. 2d 651, 659 (S.D.N.Y. 2004) (citing Maguire, 147 F.3d at 234-35).

Plaintiffs have not proffered a single fact in support of their allegation, first introduced at oral argument, that the NYP Defendants fall within the false name exception. Accordingly, Plaintiffs' FDCPA claim is dismissed with prejudice.

### 4. Violation of the Emergency Medical Treatment and Active Labor Act

The Amended Complaint asserts that the NYP Defendants conditioned emergency hospital treatment on Plaintiffs' ability to pay in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"). The EMTALA provides that a hospital participating in Medicare must provide a medical screening examination to any individual who comes into its emergency room for an emergency medical condition to determine whether such emergency medical condition exists. 42 U.S.C. § 1395dd. An emergency medical condition is defined, in relevant part, as:

> "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in-- (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy, (ii) serious impairment to bodily functions, or (iv) serious dysfunction of any bodily organ or part."

42 U.S.C. § 1395dd(e)(1).

If such a condition exists, the hospital is required to

provide sufficient medical treatment to stabilize the condition. 42 U.S.C. § 1395(dd)(b).

> In order to state a claim under the EMTALA, a plaintiff must allege that he went to the emergency room of a participating hospital seeking treatment for a medical condition, and that the hospital did not adequately screen him to determine whether he had an emergency medical condition, or discharged or transferred him before such a condition had been stabilized.

<u>Fisher by Fisher v. New York Health and Hosps. Corp.</u>, 989 F. Supp. 444, 448 (E.D.N.Y. 1998).

Plaintiffs' EMTALA claim fails because, in addition to not alleging a refusal of services or screening, Plaintiffs do not allege that they suffered "personal harm as a direct result of a participating hospital's violation of a requirement section." <u>See</u> 42 U.S.C. § 1395dd(2)(A). Participating hospitals are permitted to use "reasonable registration processes" which include asking whether an individual is insured, as long as registration does not delay screening or treatment. 42 C.F.R. § 489.24(d)(4). Plaintiffs have not alleged any such delay. The Amended Complaint states:

> Prior to the NYP Defendants' admission of any patient, including uninsured patients, into their hospitals and/or emergency rooms for emergency medical care, the NYP Defendants require their patients to sign a form contract promising to pay, in full, for unspecified and undocumented charges for medical care that are pre-set by the NYP Defendants in their sole discretion.

20

Am. Compl. ¶ 44. However, Kolari's specific allegations indicate that he was not required to sign such a form contract prior to his ten-day admission at the Hospital; instead, he was required to sign a form contract prior to his follow-up visits in the Burn Center. See Am. Compl. ¶¶ 64-66; Tr. 55:1-55:3 ("But in the case of Mr. Kolari, he signed the form contract during his aftercare program. When he went for aftercare he signed the contract."). Plaintiff Vail does not allege that she was ever required to sign a contract or that her treatment was delayed as a result of the Hospital's registration process. Am. Compl. ¶¶ 69-73. Similarly, neither Barbour nor Eroglu allege that he or she was ever required to sign such a contract or that his or her treatment was delayed as a result of the Hospital's registration process. See Barbour Am. Compl. ¶¶ 46-49; Eroglu Am. Compl. ¶¶ 46-49. Plaintiffs' conclusory allegations unsupported (and, in the case of Kolari, contradicted) by factual assertions "fail[] even the liberal standard of Rule 12(b)(6)." See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (internal citations omitted).

Moreover, the EMTALA authorizes the recovery of damages for personal injury under the law of the state in which the hospital is located; the EMTALA does not authorize the injunctive or declaratory relief sought by Plaintiffs. See 42 U.S.C. § 1395dd(2)(A).

21

5.  **Violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution**

In a particularly stunning statement that demonstrates that Plaintiffs should be addressing the political branches, not the judiciary, Plaintiffs allege that the NYP Defendants have assumed the role of providing the "essential public and government function of health care for uninsured indigent patients" and that the NYP Defendants have overcharged such patients with the assistance of state procedures and laws. See Am. Compl. ¶¶ 156, 157. Plaintiffs further allege that the NYP Defendants' billing and collection practices have a disparate impact on racial minorities who are disproportionately represented among the uninsured population amounting to invidious discrimination. Am. Compl. ¶ 158. Accordingly, Plaintiffs assert that the NYP Defendants have engaged in invidious discrimination against uninsured patients.

"To state a claim for relief in an action brought under § 1983, [Plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). Because, as Plaintiffs' counsel well knows (having conceded at oral argument that this count should be dismissed, Tr. 45:6-8), there is no constitutional right to free health care and because the NYP Defendants are not state actors,

22

see Purgess v. Sharrock, 806 F. Supp. 1102, 1111 (S.D.N.Y. 1992) (not-for-profit hospital not state actor in discharge of physician), this count is dismissed.

### 6. Breach of Charitable Trust

The Amended Complaint alleges that by accepting federal tax exemptions, "the NYP Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients." Am. Compl. ¶ 117. However, charitable trusts are express trusts that arise and exist only pursuant to an expression by the settlor to create a trust. See Orentreich v. Prudential Ins. Co. of Am., 713 N.Y.S.2d 330, 332 (1st Dept. 2000) (stating that the essential elements of a trust include a designated beneficiary, a designated trustee, a clearly identifiable res, and delivery of res by the settlor with the intent of vesting legal title in the trustee). Defendants have failed to demonstrate the existence of these basic requirements for the creation of a charitable trust. Accordingly, this count is dismissed.

### State Law Claims

The supplemental jurisdiction conferred by 28 U.S.C. § 1367(a) permits me to adjudicate the state law claims raised by Plaintiffs because those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United

23

States Constitution." 28 U.S.C. § 1367(a) (1990). Where, as here, the state claims are "so closely tied to questions of federal policy," the argument for exercise of supplemental jurisdiction "is particularly strong." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 727 (1966).

At oral argument, Plaintiffs acknowledged that "the heart and soul of [their] case is the fact that the hospitals are charging rates, discriminatory rates, that are much higher for their uninsured patients than they are for their patients who have either private health insurance or are eligible for Medicare of Medicaid." Tr. 9:14-19. Plaintiffs' state law claims, like their federal claims, are largely premised on Plaintiffs' baseless assertions that hospitals designated as charitable institutions are required to provide free health care to the uninsured and indigent. The state claims clearly raise questions of federal health care policy, especially when viewed in the context of the dozens of nearly identical state law claims in the dozens of similar lawsuits filed in courts all over the United States. For the reasons set forth below, Plaintiffs' state law claims are dismissed with prejudice.

24

### 1. Tax Exemption Claims

Plaintiffs claim to be third party beneficiaries of the contracts that were purportedly created between the NYP Defendants and the New York State and City Governments by virtue of the New York Not-For Profit Corporation Law § 402 and New York Real Property Law § 420(a), et seq, the state and local versions of § 501(c)(3). A not-for-profit hospital in New York is not required to provide free or reduced cost care as a condition of its tax exemption. People ex rel. Doctors Hosp. v. Sexton, 267 A.D. 736, 48 N.Y.S.2d 210 (1st Dept. 1944), aff'd o.b., 295 N.Y. 593 (1945). For that reason and the many reasons Plaintiffs' claims arising out of § 501(c)(3) were dismissed, Plaintiffs' breach of contract claims arising out of the NYP Defendants' state and local tax-exemptions are dismissed.

Similarly, the Amended Complaint alleges that by accepting state and local tax exemptions, "the NYP Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients." Am. Compl. ¶ 117. As is the case with Plaintiffs' charitable trust claim arising out of the NYP Defendants' federal tax exemption, Plaintiffs have failed to allege the basic elements of a trust with respect to their claim that a charitable trust has been formed by virtue of the NYP Defendants' state and local tax exemptions. Accordingly, this count is dismissed.

25

### 2. Breach of Contract

Plaintiffs contend that the NYP Defendants breached the contracts Plaintiffs were required to sign prior to their hospital admission, in which the NYP Defendants promised to charge Plaintiffs a fair and reasonable fee for the services provided. See Am. Compl. ¶¶ 95-97. At oral argument, it became crystal clear that Plaintiffs' only basis for alleging that the rates charged by the NYP Defendants were inflated is a comparison with the rates charged to health insurance companies and Medicare. Tr. at 26:10-26:23. It is undisputed that under New York law a hospital's charges to an uninsured patient are not unreasonable merely because a lower price is charged to government programs or other insurers. See Huntington Hosp. v. Abrant, 4 Misc. 3d 1, 779 N.Y.S.2d 891 (2d Dept. 2004); Albany Med. Ctr. Hosp. v. Huberty, 76 A.D.2d 949 (3d Dept. 1980).

When asked at oral argument for an example of a rate charged to Plaintiffs by the NYP Defendants that is objectively inflated, Plaintiffs' counsel suggested that the NYP Defendants would be charging an objectively inflated rate were they to charge $1 million for a single aspirin. Tr. 20:20-20:24. Counsel's ability to conceive of an objectively inflated rate does not amount to an allegation of such a rate in this case. In fact, counsel never argued that the rates charged to the named plaintiffs were objectively unreasonable, much less alleged it.

26

Instead, and despite my many attempts to extract a single, independent basis for this claim, Plaintiffs' counsel repeatedly insisted that a comparison of the rates charged to Plaintiffs with the rates charged to insured and Medicare- or Medicaid-eligible patients demonstrated the price inflation. Tr. at 26:10-26:17; 39:21-40:5; 65:17-22. Relying on such a comparison, however, would directly contravene established New York law. Because the Amended Complaint alleges no other facts which, if proven, would render the Hospital's charges unreasonable and because it was apparent at oral argument that counsel is unable to plead any additional facts, Plaintiffs' breach of contract claim is dismissed.

### 3. Breach of Duty of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the duty of good faith and fair dealing that is implied in all contracts in New York stems from the alleged contracts formed between the NYP Defendants and the State and City of New York by virtue of the NYP Defendants' tax exemptions as charitable organizations. See Am. Compl. ¶¶ 109-114. This count necessarily depends on Plaintiffs' ability to demonstrate the existence of a contract between the NYP Defendants and the aforementioned governmental entities. Because Plaintiffs cannot do so, as discussed more fully above, this claim is dismissed.

### 4. Violation of the New York General Business Law § 349

Plaintiffs assert that the NYP Defendants and John Does 1-10 violated New York General Business Law § 349 by charging Plaintiffs unreasonably high rates for medical care despite their representations to the contrary and by aggressively pursuing the collection of these bills. See Am. Compl. ¶¶ 132-134. Section 349 of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). A prima facie case under this statute requires "a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995). A non-deceptive act or practice does not violate the statute. Varela v. Investors Ins. Holding Corp., 81 N.Y.2d 958, 961 (1993).

The fact that the NYP Defendants charged uninsured patients higher rates than other patients does not render the Hospital's statements deceptive. The Hospital had no obligation to disclose to Plaintiffs the rates other patients would be charged. See Gershon v. Hertz Corp., 215 A.D.2d 202, 626 N.Y.S.2d 80 (1st Dept. 1995) (holding defendant not liable under GBL § 349 for failing to inform plaintiff of ways he could have secured a

28

lower rate for a rental car); Ho v. Visa U.S.A., Inc., 2004 WL 1118534, *4 (Sup. Ct. N.Y. Cty. 2004) (finding no liability under GBL § 349 for allegedly excessive debit card fees). There is, therefore, no basis in the law for Plaintiffs' GBL claim.

In addition, the Plaintiffs have not alleged any injury as a result of Defendants' alleged violation of § 349. In the absence of well-pled allegations of some type of injury, not necessarily pecuniary, see Bildstein v. Mastercard Int'l, Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004), caused by the alleged deceptive practice, Plaintiffs' GBL claim is dismissed. See Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000); Petitt v. Celebrity Cruises, Inc., 153 F. Supp. 2d 240, 266 (S.D.N.Y. 2001).

Furthermore, Kolari's claim is barred by the three-year limitations period applicable to § 349 claims. See CPLR 214(2); Soskel v. Handler, 736 N.Y.S. 2d 853 (Nassau Co. Sup. Ct. 2001).

5. **Unjust Enrichment/Constructive Trust**

Plaintiffs claim that the NYP Defendants have been unjustly enriched at Plaintiffs' and the class members' expense by failing to utilize their assets and revenues to provide affordable medical care to Plaintiffs and class members. See Am. Compl. ¶ 137. Plaintiffs allege they are entitled to the imposition of a constructive trust in the amount of the NYP Defendants' federal, state, and local tax exempt savings and net

29

assets. See Am. Compl. ¶¶ 138-139.

To state an unjust enrichment claim under New York law, Plaintiffs must allege: (1) that the NYP Defendants were enriched; (2) that the enrichment was at the Plaintiffs' expense; and (3) that the circumstances are such that in equity and good conscience the NYP Defendants should return the money or property to Plaintiffs. See Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 79 (2d Cir. 1986); Nakamura v. Fujii, 677 N.Y.S.2d 113, 116 (1st Dept. 1998). The imposition of a constructive trust requires a transfer of property belonging to the plaintiffs. Sharp v. Kosmalski, 40 N.Y.2d 119 (1976); Valvo v. Spitale, 761 N.Y.S.2d 236 (2d Dept. 2003).

Because Plaintiffs assert that they have not paid for any of the services they received from the NYP Defendants, Plaintiffs have not conferred a benefit upon the NYP Defendants. Thus, passing considerations of equity and good conscience, Plaintiffs have not even stated the objective elements of a claim for unjust enrichment.

6.  **Fraud**

Plaintiffs' fraud claim is rooted in the agreement Defendants allegedly required Plaintiffs to sign as a condition of receiving medical treatment. See Am. Compl. ¶¶ 171-173.[12]  It

---

[12] At oral argument, Plaintiffs' counsel revealed to the Court that Mr. Kolari was treated for his burns by Cornell Weill Medical Center prior to executing the above-referenced agreement;

30

was in this agreement, Plaintiffs argue, that the Hospital falsely represented that it would charge fair, reasonable, just, and customary rates. Am. Compl. ¶ 174. "Plaintiffs were never told that they would be charged multiple times more than other patients for the same services." Am. Compl. ¶ 174. The Amended Complaint further alleges that the NYP Defendants knew they falsely represented themselves as charitable organizations with the intent that they continue to receive tax-exempt status and other valuable government subsidies. Am. Compl. ¶¶ 176, 177. Plaintiffs claim that they relied on such misrepresentations and suffered economic and other damages (none of which are specified in the Amended Complaint). Am. Compl. ¶¶ 179-180.

Plaintiffs have failed to plead <u>any</u> of the elements of fraud with the particularity required by Fed. R. Civ. P. 9(b). Plaintiffs have entirely omitted from their Amended Complaint the "who, what, where and why." See <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 347 (2d Cir. 1996). Plaintiffs have not pled that the NYP Defendants had the intent to commit fraud. Indeed, in response to inquiry at oral argument about the intent element, Plaintiffs' counsel retreated to the mantra that insured patients are charged less than uninsured patients. Tr. 48:12-49:25. It is clear from this exchange that Plaintiffs are unable to plead fraudulent

---

Mr. Kolari executed this agreement prior to his $75 aftercare sessions. Tr. 55:8-55:16.

intent. Plaintiffs have also failed to plead reliance. Although they allege that the hospital bombarded the public with propaganda and misinformation about its charitable practices, see Am. Compl. ¶ 179, they do not allege that Plaintiffs saw, heard, or read any of the alleged misrepresentations. Accordingly, Plaintiffs could not have relied on any such misrepresentations. For these reasons, Plaintiffs fail to state a cognizable fraud claim upon which relief can be granted.

### 7. Constructive Fraud

Plaintiffs contend that the NYP Defendants have engaged in overpricing, which inherently deceived Plaintiffs and other uninsured patients who are entitled to assume that they are not being charged at rates higher than those paid by patients covered by insurance. Am. Compl. ¶¶ 191-192.

A claim for constructive fraud must set forth the four elements of fraud and it must plead that the defendant had a duty to speak instead of keeping silent. See Banque Arabe Internationale et d'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1994). In addition to failing to plead intent to defraud, Plaintiffs do not plead facts which, if proven, would establish a duty to speak.

A defendant has a duty to speak if it is in a confidential or fiduciary relationship with the plaintiff. Republic of Croatia v. Trustee of Marquees of Northampton 1987

32

Settlement, 203 A.D.2d 167 (1st Dept. 1994). Such a relationship must have arisen before the transaction complained of, and it cannot be formed merely by a plaintiff's subjective decision to repose trust in the defendant. See SNS Bank, N.V. v. Citibank, N.A., 7 A.D.3d 352, 355-56, 777 N.Y.S.2d 62, 65 (1st Dept. 2004). The Amended Complaint suggests that Plaintiffs commenced their relationships with the NYP Defendants by receiving the medical care for which they were charged. As a matter of law, this cannot create a fiduciary relationship.

Plaintiffs have also not pled facts sufficient to establish the duty to speak by virtue of the special facts doctrine. Under this test, a party in an arms-length transaction has a duty to disclose information to the other if (1) it has superior knowledge, (2) that is not available to the other party by reasonable inquiry, (3) it knows the other party is acting on the basis of mistaken belief, and (4) the transaction is unfair. See Banque Arabe, 57 F.3d at 157. Plaintiffs have not alleged that they could not have learned of the NYP Defendants' charging practices through reasonable inquiry. Moreover, they have not contended that the NYP Defendants knew Plaintiffs were acting on the basis of a mistaken belief. Nor have they alleged that the transaction was unfair. See supra p. 19-21. For all of these reasons, the constructive fraud count is insufficient.

8.  **Civil Conspiracy/Concert of Action and Aiding and Abetting Claims Against the AHA**

The actions that form the basis of Plaintiffs' allegations against the AHA are threefold: (1) the AHA provided information and guidance to its members by way of "White Papers"; (2) the AHA petitioned the government on behalf of its members to clarify or change regulations; and (3) the AHA reported publicly the amount of uncompensated care the AHA member hospitals bear each year. Plaintiffs assert that these actions amounted to the AHA's conspiring with, aiding, and abetting the NYP Defendants' wrongful actions as laid out in the preceding counts of the Amended Complaint. As I have discussed above, Plaintiffs have failed to satisfy the liberal Rule 12(b)(6) standard in any of their federal or state claims. Accordingly, the AHA cannot be found to have aided or abetted any of the NYP Defendants' allegedly wrongful actions. The claims against the AHA must, therefore, be dismissed with prejudice.

Plaintiffs' many arguments all rest upon the premise that a charitable hospital is compelled by law to provide free services to all who cannot, or claim they cannot, afford to pay for those services. However, no federal or state statute and no principal of common law requires a private not-for-profit hospital to charge uninsured patients the same, or less, than the rates it charges to members of health insurance plans or the rates such a hospital accepts from Medicare and Medicaid.

34

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss the above-captioned actions are granted in their entirety with prejudice. The Clerk of the Court shall mark these actions closed and all pending motions denied as moot.

SO ORDERED

March 29, 2005

_Loretta A. Preska_
LORETTA A. PRESKA, U.S.D.J.